JUDGE CAPRONI



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-------------------------------------------------------------------X

MICHAEL HARRELL, SUSAN CALVO, JOHN
PETERS PROFESSIONAL LIMOUSINES, INC.,
JACKLYN RESTREPO and PEDRO CAMACHO
individually and on behalf of all others similarly
situated,

No. 14 Civ _____

**CLASS ACTION
COMPLAINT**

Plaintiffs,

-against-

THE CITY OF NEW YORK, MEERA JOSHI,
DAVID YASSKY and RAYMOND SCANLON,

Defendants.

X-------------------------------------------------------------------X

Plaintiffs Michael Harrell and John Peters Professional Limousines, Inc., by and through

their attorneys, Daniel L. Ackman and Andrew J. Frisch, for their Complaint allege as follows:

## NATURE OF THE ACTION

1.      This action concerns the policy and practice of the New York City Taxi and

Limousine Commission (the "TLC") of seizing vehicles, without a warrant, based solely on its

unadjudicated claim that an alleged first-time violator used the vehicle or allowed it to be used as

an unlicensed taxi.  This policy and practice is unconstitutional for two independent reasons.

2.      First, it violates the Fourth Amendment.  Neither Plaintiffs nor any of the class

members was charged with a crime in connection with the warrantless seizure of their vehicles.

The TLC claimed only that their conduct rendered them liable for a civil penalty.  Importantly,

the TLC is authorized by statute to collect such a civil penalty if it proves its claim at a hearing,

but the statute does *not* subject Plaintiffs' or the class members' vehicles to civil forfeiture even

if the TLC's civil claim is proven.  Because the vehicles are not subject to civil forfeiture, and because no other exception to the Fourth Amendment's warrant requirement applies, the TLC's warrantless seizure of Plaintiffs' and the class members' vehicles was unconstitutional.

3.     Second, the TLC's seizure policy and practice violates the Due Process Clause of the Fourteenth Amendment.  No judicial process was afforded before the TLC's inspectors seized Plaintiffs or the class members' vehicles.  Moreover, the primary justification the TLC asserts for seizing vehicles without judicial process is the ostensible concern that owners of seized cars might not pay the applicable civil penalty if they subsequently were found liable after a hearing.  Thus the TLC demands that drivers post a $2,000 "bond" (which is, in reality, just a cash payment) in order to retrieve their vehicles from impound. The Due Process Clause does not permit the TLC to seize property without judicial process, and hold the property hostage, based on speculation that a person who has been issued a civil notice of violation might not pay the fine if he or she is later found liable – especially where, as here, the TLC had no factual basis to believe that either Plaintiffs or any class member would not have paid the civil penalty if found liable.

4.     The TLC seizes more than 9,000 vehicles annually.  These widespread constitutional violations must stop, and Plaintiffs and the class members must be compensated for the significant monetary harm the TLC's unconstitutional policy and practice has caused them to incur.

## JURISDICTION AND VENUE

5.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

6.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, and 2201.

7.     Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this District and because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

8.     Plaintiff Michael Harrell is resident of Pennsylvania who attends college in New York County.

9.     Plaintiff John Peters Professional Limousine, Inc. is a New Jersey Corporation with headquarters in Norwood, New Jersey.

10.    Plaintiff Susan Calvo is a resident of Queens County.

11.    Plaintiff Jacklyn Restrepo is a resident of Suffolk County.

12.    Plaintiff Pedro Camacho is a resident of New Jersey.

13.    Defendant City of New York (the "City") is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York.  The TLC is an administrative agency for the City of New York, created by § 2300 of the New York City Charter.  At all times relevant hereto, the TLC was and remains responsible for formulating, proposing, promulgating, and enforcing the Fare Deduction Rules challenged in this proceeding.

14.    Defendant Meera Joshi is the chairman of the TLC.

15.    Defendant David Yassky was the chairman of the TLC from 2010 to early 2014.

16.    Defendant Raymond Scanlon is the deputy commissioner for enforcement of the TLC with authority over the TLC's uniformed officers.

## JURY DEMAND

17.     Plaintiffs demand a jury trial.

## FACTS

### The Statutory Scheme

18.     Section 19-506 of the New York City Administrative Code ("NYC Code") provides that it is unlawful to operate a taxi or for-hire vehicle in the City of New York without a TLC license.

19.     NYC Code § 19-506(b)(1) provides that it is a criminal violation to knowingly operate or to permit another to operate an unlicensed taxi or for-hire vehicle. A person who is convicted of such violation in criminal court shall be fined between $1,000 and $2,000 and may be imprisoned for up to 60 days.

20.     NYC Code § 19-506(b)(1) provides that such criminal prosecutions only may be brought in criminal court. The TLC has no jurisdiction to bring criminal charges before an administrative court, whether the TLC's own tribunal (a/k/a TLC Court or OATH/TLC) or the NYC Office of Administrative Trials and Hearings ("OATH").

21.     NYC Code § 19-506(b)(2) provides that it is a criminal violation to knowingly operate or to permit another to operate a taxi or for-hire vehicle in a manner that is beyond the scope of such vehicle's license. A person who is convicted of such violation in criminal court shall be fined between $400 and $1,000 and may be imprisoned for up to 60 days.

22.     As with subsection (b)(1), subsection (b)(2) provides that such criminal prosecutions only may be brought in criminal court, not TLC Court.

23.     NYC Code § 19-506(e)(1) provides that, "as an alternative to the [criminal] penalties provided in [subsection (b)(1)]," a person who operates or permits another to operate an

unlicensed taxi shall be "liable for a civil penalty" of $1,500 for a first violation and $2,000 for a second violation committed within a thirty-six month period.

24.     NYC Code § 19-506(e)(2) provides that, "as an alternative to the [criminal] penalties provided in [subsection (b)(2)]," a person who operates or permits another to operate a taxi or for-hire vehicle in a manner that is beyond the scope of such vehicle's license shall be "liable for a civil penalty" of between $200 and $1,500 for each violation.

25.     NYC Code § 19-506(e)(3) provides that a "proceeding to impose a civil penalty prescribed in" subsections (e)(1) or (e)(2) "shall be commenced by the service of a notice of violation returnable before the [TLC] or an administrative tribunal of the [TLC]," such as OATH.

26.     NYC Code § 19-506(h)(2) provides that, if the owner of a vehicle is found liable for violating subsections (b)(1) or (b)(2) two or more times within a 36-month period, "the interest of such owner in any vehicle used in the commission of any such second or subsequent violation shall be subject to forfeiture upon notice and judicial determination." Forfeiture based on a second offense must be pursued in a separate proceeding "in accordance with the provisions of the civil practice law and rules [CPLR]."

27.     Neither the TLC nor its inspectors is authorized to pursue civil forfeiture for first-time violations of subsections (b)(1) or (b)(2).

28.     NYC Code § 19-506(h)(1) provides that a TLC inspector may seize a vehicle if such inspector has probable cause to believe the vehicle has been operated without a taxi license or beyond the scope of its taxi license in violation of subsections (b)(1) or (b)(2).

29.     Subsection (h)(1) further provides that the TLC may, in its discretion, seek to prove its claim that the vehicle has been operated without a taxi license or beyond the scope of

its taxi license in violation of subsections (b)(1) or (b)(2) either in criminal court or before OATH.

30.     Subsection (h)(1) further provides that, unless the notice of violation has been dismissed, a seized vehicle shall not be released until all towing and storage charges and all civil penalties have been paid or unless a bond has been posted in an amount satisfactory to the TLC.

**Enforcement**

31.     The TLC seized more than 9,000 vehicles in 2013 based on allegations of violations of NYC Code § 19-506.

32.     Upon information and belief, the TLC seized more than 20,000 vehicles in the last three years based on allegations of violations of NYC Code § 19-506.

33.     Upon information and belief, the vast majority of these cases were brought against alleged first-time violators whose vehicles were not subject to civil forfeiture even if the TLC's claims against them were proven.

34.     Upon information and belief, all of these cases were brought before OATH, and none of them was brought in criminal court.

35.     The TLC did not obtain a warrant before seizing any of these vehicles.

36.     None of the exceptions to the Fourth Amendment's warrant requirement applies in any of these cases.

37.     TLC inspectors routinely seize vehicles of drivers who, they allege, have violated NYC Code § 19-506.

38.     The TLC inspectors issue notices of violation to the drivers and inform them to appear, or have the vehicle's owner appear, at the TLC's office in Long Island City if they wish to attempt to retrieve the vehicle.

39.     The TLC inspectors inform the drivers that, if they appear at the TLC's office in Long Island City, they will be offered the option of admitting liability and paying a $600 penalty plus towing and storage fees, in which case the seized vehicle will be returned to them.

40.     The TLC inspectors inform the drivers that, if they opt to deny liability, they will be given a hearing date, and the vehicle will not be returned to them prior to the hearing.

41.     The TLC has no statutory authority to accept a $600 penalty in exchange for an admission of liability.  NYC Code § 12-506(e)(1) requires a $1,500 penalty and provides the TLC with no discretion to deviate from that amount.

42.     The TLC inspectors who seize the vehicles and issue the notices of violation routinely inform the drivers that this option – admitting liability and paying $600 plus towing and storage costs – is the best way to retrieve the vehicle.

43.     The TLC inspectors who seize the vehicles and issue the notices of violation routinely inform the drivers that, if they contest the notices of violation, they will have to post a $2,000 cash bond in order to retrieve the seized vehicle prior to the hearing, and that if they lose the hearing, will forfeit the $2,000.  The inspectors further routinely inform the drivers that, even if they prevail at the hearing, they will have to take additional steps, and it will take months to cause the TLC to return the $2,000 cash bond.

44.     Thus, if the vehicle's owner chooses to contest the allegation, he will have to pay $2,000 immediately and then, if he is found not guilty, apply for reimbursement.

45.     In all cases, the TLC will not return a seized vehicle to its owner unless the owner pays towing and storage fees of at least $280.

46.    TLC inspectors have publicly stated that they are pressured by supervisors to issue notices of violation and seize vehicles and that, as a result of this pressure, they often issue notices of violation without adequate evidence.

47.    In many cases, the TLC inspectors issue notices of violation and seize vehicles without probable cause to believe that the driver has committed a violation.

48.    Even where there is probable cause to believe that a driver has committed a violation, the warrantless seizure of vehicles operated by alleged first-time violators, whose vehicles are not subject to civil forfeiture, is unconstitutional.

49.    The TLC inspectors rarely if ever have probable cause to believe, based on their observations of the driver's conduct, that the owner of the vehicle knowingly allowed the driver to operate the vehicle without a license or beyond the scope of its license.

50.    Despite this absence of probable cause, the TLC's policy and practice is to issue notices of violation to the vehicle's owner, even where the owner was not present at the scene, and even where there is no evidence that the owner knowingly allowed the driver to operate the vehicle without a license or beyond the scope of its license.

51.    In order to permit this practice, the TLC Chairperson has issued a decision on "appeals" filed by the TLC itself from its own tribunal in which the Chairperson has ruled that there is a "rebuttable presumption" that the owner gave the driver permission. *See In the Matter of New York City Taxi & Limousine Commission Petitioner v. Allsta Inc.* (TLC Chair Dec. March 2013)

52.    The administrative law judges in OATH's appellate unit have consistently rejected these purported rulings by the TLC Chairperson, finding them unjustified by the language of the Administrative Code, and holding that the Chairperson's "presumption" orders

are entitled to no deference and that no presumption against the owner applies. *See Taxi &*

*Limousine Commission v. Angels Limo LLC* (TLC Appeal Unit Dec. April 2, 2013).

53.     Despite these rulings by OATH's appellate administrative law judges, the TLC

persists in issuing notices of violations to owners without probable cause and without any

judicial imprimatur.

## The Individual Plaintiffs

54.     On or around December 18, 2013, TLC inspectors seized Plaintiff Michael

Harrell's vehicle as it was being driven by a friend of Harrell's on Livonia Avenue in the East

New York section of Brooklyn.

55.     The notice of violation alleges that Harrell "allowed this vehicle to be operated

for hire illegally" in violation of NYC Code § 19-506.

56.     The inspector who issued the summons had never met or spoken to Harrell and

had no basis for making this allegation.

57.     Harrell had never previously been found liable for a violation of NYC Code § 19-

506.

58.     The TLC inspectors did not seek or obtain a warrant prior to seizing Harrell's

vehicle.

59.     A hearing was scheduled for December 23, 2013.  Harrell was sick that day and

therefore asked his stepfather to appear on his behalf.

60.     Because Harrell's stepfather is not a lawyer, the administrative law judge would

not let him represent Harrell at the hearing.  As a result, a default judgment was entered.  In

addition, no one informed Harrell or his stepfather how Harrell might retrieve his vehicle, which

remained in possession and control of the TLC.

61.     On February 12, 2014, Harrell's motion to vacate the default decision was granted, and he was afforded a new hearing date of June 18, 2014.

62.     At the June 18, 2014 hearing, the administrative law judge dismissed the summons, finding that the TLC "did not have any evidence" that Harrell permitted the driver to use the vehicle as a for-hire vehicle, and ruling that the TLC had failed to make even a "prima facie case of the violation."

63.     When Harrell attempted to retrieve his vehicle, he was informed that it had already been sold.  The TLC did not offer any restitution or other financial compensation.

64.     On or around June 4, 2014, Susan Calvo was driving her SUV at JFK Airport, where she was dropping off some friends at around 7 AM.

65.     Ms. Calvo, who is handicapped and uses an electric scooter to get around, was approached by a plain-clothes officer.  The officer identified himself as part of the New York City Police Department, but was in fact a TLC inspector.

66.     The inspector ordered her out of the car and seized it.

67.     Ms. Calvo was left on the sidewalk without her electric scooter—the inspector refused to let her take it out of the vehicle —or means of transportation home.  Thus, she had to call her nephew to drive to JFK and give her a ride home.

68.     In order to retrieve possession of the car, Ms. Calvo paid a $2,000 "bond," that is, a cash payment.

69.     The "vehicle release" document issued to Ms. Calvo states that Ms. Calvo had "no outstanding judgments on [sic] summonses" issued by TLC.

70.     In addition to the bond, Ms. Calvo was required to pay a towing fee (though the vehicle was not towed) and a storage fee.

71.     Ms. Calvo was issued a summons, which commanded her to appear at a hearing at the TLC court on June 17, 2014.

72.     Ms. Calvo appeared on that date, but was told that there would be no hearing because no charges were pending.

73.     On or around January 9, 2014, Pedro Camacho was driving his Buick Verano at JFK Airport, where he was dropping off his niece, who had been spending the holidays with the Camacho family in Belleville, NJ.

74.     At the Jet Blue terminal, Mr. Camacho dropped off his niece. He helped her with her luggage. They embraced and she went into the terminal to catch her flight.

75.     Soon after, Mr. Camacho was approached by a TLC inspector, who took Mr. Camacho's car keys, and then entered the terminal, supposedly to interview Mr. Camacho's passenger.

76.     The inspector issued Mr. Camacho a summons which stated that Mr. Camacho had dropped off "1 asian female" who had told the inspector that she had paid $45 for the trip.

77.     In fact, Mr. Camacho's niece is Hispanic, not Asian. She had not paid for the trip, and she was never, in fact, questioned by any TLC inspector.

78.     Mr. Camacho appeared for a hearing on January 21, 2014, having lost the use of his vehicle in the interim. Before the hearing, the inspectors tried to convince Mr. Camacho that the best course of conduct was to pay $600 and plead guilty. Mr. Camacho refused that advice.

79.     At the hearing that immediately followed, the TLC withdrew the charges.

80.     In response to a complaint by Mr. Camacho's wife to the Office of the NYC Public Advocate, a Constituent Services / Outreach Coordinator for that office e-mailed Ms. Camacho, writing, "Today, our office received a response to our inquiry from the Taxi &

Limousine Commission (TLC) regarding the sad incident experienced by your husband, Mr. Pedro Camacho. We were informed that the matter regarding the TLC terminated with an 'official TLC reprimand included permanently in the employee's record' of the TLC."

81.   On or around December 17, 2013, TLC inspectors seized a vehicle owned by Plaintiff John Peters Professional Limousines, Inc. ("JPPL") in Manhattan and issued a notice of violation pursuant to NYC Code § 19-506.

82.   The inspectors issued the summons and proceeded with the seizure despite offers by a company official to provide documentation confirming that the trip began and was to end in Rockland County, meaning that no TLC license was required.

83.   The TLC inspectors did not seek or obtain a warrant prior to seizing the vehicle.

84.   On December 23, 2013, the case was heard, and an administrative law judge dismissed the notice of violation on the ground that the trip began and was to end in Rockland County.

85.   The TLC appealed the dismissal to its appeals unit, arguing that, among other things, there is a "rebuttable presumption of owner's permission if unlicensed for-hire activity shown." The TLC appeals unit affirmed, holding, as many prior appeals unit decisions have held, that "Section 19-506B(1) does not contain a rebuttable presumption."

86.   On or around July 23 2013, TLC inspectors seized Jacklyn Restrepo's Chevrolet Suburban SUV when it was being driven by her boyfriend on Lexington Avenue in Manhattan.

87.   Both Ms. Restrepo and her boyfriend were given summonses citing Section 19-506B(1), the boyfriend as the driver and Ms. Restrepo as the owner.

88.     Ms. Restrepo was required to post a $2,000 cash "bond" to retrieve the vehicle. The vehicle release form stated that "the owner has no outstanding judgments on summonses" issued by the TLC.

89.     At later hearings in TLC Court, both Ms. Restrepo and her boyfriend were found not guilty and the summonses were dismissed.

90.     On or around July 23, 2014, TLC inspectors again seized Jacklyn Restrepo's Chevrolet Suburban SUV when it was being driven by her boyfriend on Ditmars Boulevard in Queens.  Again, both Ms. Restrepo and her boyfriend were given summonses citing Section 19-506B(1), the boyfriend as the driver and Ms. Restrepo as the owner.

91.     At a later hearing in the TLC tribunal, Ms. Restrepo's boyfriend was found not guilty on the ground that when the inspector pulled him over, the inspector did not have "reasonable suspicion of for hire activity," and because the boyfriend credibly testified that the passenger in the car at the time was a friend of a friend, and that he was not working for hire.

92.     Although the TLC court found that there was no for-hire activity by the driver, at an earlier hearing, Ms. Restrepo was found guilty based on a "presumption" that the vehicle owner allowed the driver to use the vehicle for for-hire activity. Though the TLC ALJ found that Ms. Restrepo had rebutted the presumption, she "did not do it with substantial evidence."

93.     The TLC's seizure of each of the plaintiffs' vehicles was unconstitutional.

**Class Action Allegations**

94.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities whose vehicles have been seized by the TLC based on allegations of first-time violations of NYC Code § 19-506.

95.     Plaintiffs propose that the class be certified with two subclasses:  (a) a subclass consisting of alleged-first time driver-violators; and (b) a subclass consisting of alleged-first time owner-violators.

96.     This case is appropriate for treatment as a class action under Rule 23(b)(1)(A) because the prosecution of separate actions by or against will create the risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendants.

97.     This case also should be certified as an injunctive class under Rule 23(b)(2) because Defendants have acted, or failed to act, on grounds generally applicable to the putative class, thereby making appropriate final injunctive relief with respect to the Rule (b)(2) class as a whole.

98.     This case also is appropriate for treatment as a damages class under Rule 23(b)(3) because common issues predominate over individual issues, and a class action resolving the claims of this putative damages class is superior to any other method of fair and efficient adjudication.

99.     The class is so numerous that joinder of all members would be impractical.  The TLC admits it seized more than 9,000 vehicles in 2013 alone, and the rate of seizures is increasing.  Upon information and belief, the putative class includes over 20,000 members.

100.    Joinder also is impracticable because, upon information and belief, many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

101.    There are questions of law and fact common to the class that predominate over questions affecting only individual members, including the core question of the constitutionality of the TLC seizure program.

102.    The claims of the class representative are typical of the claims of the class members.

103.    The entire class will benefit from the remedial and monetary relief sought by the putative class representatives.

104.    The class representatives will fairly and adequately protect the interests of the class. There are no conflicts of interest between the class representatives and the absent class members, and the class representatives will vigorously prosecute this action on behalf of the class.

105.    Defendants have consistently acted and refused to act in ways generally applicable to the class.

106.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of thousands of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class are scattered throughout New York City and beyond and are not likely to be able to vindicate and enforce their constitutional rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendants which would establish incompatible standards of conduct for Defendants; (f) Defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the class, especially on

issues of liability predominate over any question, such as that of individual damages, that affect individual members.

107.    There will be no extraordinary difficulty in the management of the class action.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – Fourth Amendment – Warrantless Seizure)

108.    Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

109.    The warrantless seizure of Plaintiffs' vehicles violated the Fourth Amendment to the United States Constitution.

110.    The warrantless seizure of Plaintiffs' vehicles violated the Fourth Amendment to the Constitution regardless of whether there was probable cause to believe that there had been a violation of NYC Code § 19-506.

111.    The warrantless seizure of Plaintiffs' vehicles was unreasonable and was not justified.

112.    Defendants have an official policy, practice, and custom of effecting warrantless seizures of vehicles in connection with issuing notices of violation to alleged first-time violators of NYC Code § 19-506, even though such vehicles are not subject to civil forfeiture.

113.    Defendants' policy, practice, and custom of effecting warrantless seizures of vehicles in connection with issuing notices of violation to alleged first-time violators of NYC Code § 19-506 caused Plaintiffs and the class members to be deprived of their Fourth Amendment rights.

114.    Defendants acted under color of state and local law.

115.    By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which TLC inspectors routinely seize vehicles without a warrant, without

an exception to the warrant requirement, and without any claim of right to possess the vehicle, Defendants have deprived and will continue to deprive each and every Plaintiff and members of the Plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

116.    Defendants' actions were deliberate, reckless, and indifferent to Plaintiffs' constitutional rights.

117.    As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (New York Constitution Article I, § 12)

118.    Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

119.    The taking of Plaintiffs' vehicles constitutes a seizure under the New York Constitution.

120.    Defendants' warrantless seizures without any claim of right to possess the vehicles violates the Article I, § 12 of the State Constitution.

121.    Defendants have acted under pretense and color of state and local law.

122.    Said acts by said Defendants were without authority of law, and in abuse of their powers and with the specific intent to deprive Plaintiffs of their constitutional rights secured by the New York Constitution.

123.    Defendants' actions were deliberate, reckless, and indifferent to Plaintiffs' constitutional rights.

124.    As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
(42 U.S.C. § 1983 – Fourteenth Amendment – Due Process Clause)

125.    Plaintiffs hereby incorporate each of the foregoing paragraphs as if fully set forth herein.

126.    The seizure of Plaintiffs' vehicles violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

127.    No judicial process was afforded before the TLC's inspectors seized Plaintiffs or the class members' vehicles.

128.    The primary justification for the TLC's policy and practice of seizing vehicles without judicial process is the ostensible concern that Plaintiffs and the class members might not pay the applicable civil penalty if they subsequently were found liable after a hearing.

129.    The Due Process Clause does not permit the TLC to seize property without judicial process, and hold the property hostage, based on speculation that a person who has been issued a civil notice of violation might not pay the fine if he or she is later found liable – especially where, as here, the TLC had no factual basis to believe that either Plaintiff or any class member would not have paid the civil penalty if found liable.

130.    Defendants' policy, practice, and custom of seizing vehicles without judicial process in connection with issuing notices of violation to alleged first-time violators of NYC Code § 19-506 caused Plaintiffs and the class members to be deprived of their rights under the Due Process Clause of the Fourteenth Amendment.

131.    Defendants acted under color of state and local law.

132.    By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which TLC inspectors routinely seize vehicles without judicial process in order to secure the payment of an alleged but unadjudicated violation, Defendants have deprived and will continue to deprive each and every Plaintiff and members of the Plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

133.    Defendants' actions were deliberate, reckless and indifferent to Plaintiffs' legal rights.

134.    As a direct and proximate result of the misconduct and constitutional violations detailed above, Plaintiffs and the class members have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs and the class members request that the Court grant the following relief:

a.    An order certifying this action as a class action;

b.    A judgment declaring that the seizure of Plaintiffs' vehicles violated the federal and New York Constitutions;

c.    An injunction prohibiting Defendants from engaging further in the policies, practices, and customs complained of herein;

d.    Compensatory damages in an amount to be determined at trial, including without limitation all towing and storage costs and other damages proximately caused by the deprivation of Plaintiffs' and the class members' vehicles;

e.    Punitive damages in an amount to be determined at trial;

f.        An order awarding disbursements, costs, and attorneys' fees; and

g.        Such other and further relief as this Court may deem just and proper.


Dated: New York, New York
          September 8, 2014

Daniel L. Ackman (DA 0103)
222 Broadway, 19th Floor
New York, NY 10013
Tel: (917) 282-8178
d.ackman@comcast.net

Andrew J. Frisch
The Law Offices of Andrew J Frisch
40 Fulton Street
23rd Floor
New York, NY 10038
Tel: (212) 285-8000
afrisch@andrewfrisch.com

*Attorneys for Plaintiffs*