UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   9/30/2015
```

-------------------------------------------------------------X
MICHAEL HARRELL, SUSAN CALVO,              :
JOHN PETERS PROFFESIONAL                   :
LIMOUSINES, INC., JACKLYN RESTREPO,        :
and PETER CAMACHO, individually and on     :          14-CV-7246 (VEC)
behalf of all others similarly situated,   :
                                           :          OPINION & ORDER
                              Plaintiffs,  :
                                           :
              -against-                    :
                                           :
CITY OF NEW YORK, MEERA JOSHI, DAVID        :
YASSKY, and RAYMOND SCANLON,               :
                                           :
                             Defendants.   :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

New York City routinely seizes, without a warrant, automobiles that are suspected of

being unlawfully operated for hire in order to ensure that the vehicle owner pays any fine that

may subsequently be imposed.  Plaintiffs, whose vehicles were seized, assert that the City's

actions violated their Fourth Amendment right to be secure from unreasonable seizures and their

Fourteenth Amendment right not to be deprived of property without due process of law.  The

Court agrees that the City's procedure of seizing vehicles that are suspected of being used for

hire without proper licensing is unconstitutional under the Fourth and Fourteenth Amendments

as it applies to vehicle owners with no prior violations in the preceding 36 months.  Accordingly,

Plaintiffs' motion for summary judgment on liability as to New York City is GRANTED.

## FACTS

Between September 2013 and July 2014, a vehicle belonging to each of the plaintiffs was

seized because a Taxi and Limousine Commission ("TLC") inspector had probable cause to

believe the vehicle was being operated as an unlicensed vehicle for hire in violation of N.Y. City

Administrative Code § 19-506(b)(1).[1]  Pl. 56.1 Stmt. ¶ 11.  Two of the plaintiffs – Pedro

Camacho and Susan Calvo – were operating the seized vehicles at the time of the seizure.  *Id.* ¶¶

27, 31.  Three of the plaintiffs – Michael Harrell, Jacklyn Restrepo, and John Peters Professional

Limousines, Inc. – owned vehicles that were seized while being operated by others.  *Id.* ¶¶ 20,

37, 42.  Some of the plaintiffs were ultimately found guilty of violating § 19-506(b)(1), others

were not.[2]

---

[1]        Section 19-506(b)(1) provides:

> [A]ny person who shall permit another to operate or who shall knowingly operate . . . for hire any
> vehicle as a . . . for-hire vehicle in the city, without first having obtained or knowing that another
> has obtained a license for such vehicle . . . shall be guilty of a violation, and upon conviction in the
> criminal court shall be punished by a fine of not less than one thousand dollars or more than two
> thousand dollars or imprisonment for not more than sixty days, or both such fine and
> imprisonment.  This paragraph shall apply to the owner of such vehicle and, if different, to the
> operator of such vehicle.

Section 19-506(e)(1) provides that "[i]n addition to or as an alternative to the [criminal] penalties provided" in § 19-
506(b)(1), "any person who shall violate [§ 19-506(b)(1)] shall, for the first violation, be liable for a civil penalty of
one thousand five hundred dollars, and for the second violation committed within a thirty six month period, for a
civil penalty of two thousand dollars."

[2]        Restrepo's vehicle was seized on or around September 9, 2013, when it was being driven by her boyfriend.
Pl. 56.1 Stmt. ¶ 41.  She posted a $2000 bond to secure the release of her vehicle the same day and was ultimately
found not guilty of the violation. *Id.* ¶¶ 42-44.  Her vehicle was seized a second time on July 23, 2014, also when
being driven by her boyfriend. *Id.* ¶ 45.  She posted a pond and secured release of the vehicle the following day.
Curiously, she was found guilty of violating § 19-506 because she permitted her vehicle to be used for-hire, but the
driver was found not guilty of using the vehicle for hire. *Id.* ¶¶ 46-47.

A vehicle owned by Plaintiff John Peters Professional Limousines, Inc., was seized on December 5, 2013,
after the driver offered documentation that the trip was outside of TLC's jurisdiction. *Id.* ¶¶ 37-38.  John Peters
posted a cash bond to secure the release of the vehicle and was found not guilty. *Id.* ¶ 39.  In its response to
Plaintiffs' motion, the City submitted evidence indicating that John Peters had, however, pleaded guilty to violating
§ 19-506 on three occasions prior to the December 5 seizure.  Selvin Reply Decl. ¶ 9; Dkt. 44.  Plaintiffs did not
dispute this evidence.

Plaintiff Michael Harrell's vehicle was seized on December 18, 2013, while it was driven by a friend.  Pl.
56.1 Stmt. ¶¶ 20-21.  Harrell was unable to appear at the hearing and a default judgment was entered against him;
his friend, the driver, pleaded guilty. *Id.* ¶¶ 22-23.  Harrell moved to vacate the default judgment.  By the time his
motion was granted and he was found not guilty, the TLC had sold his vehicle. *Id.* ¶¶ 24-26.

Plaintiff Pedro Camacho's vehicle was seized at JFK Airport on January 9, 2014, when the TLC inspector
disbelieved his story that his passenger was his niece. *Id.* ¶¶ 31, 33-34.  Camacho did not post a bond, and the TLC
withdrew the violation at his scheduled hearing. *Id.* ¶¶ 35-36.

Plaintiff Susan Calvo's vehicle was seized at JFK Airport on June 4, 2014. *Id.* ¶ 27.  She posted the $2000
bond to secure the release of her vehicle, but was told that no charges were pending against her when she appeared
at her scheduled hearing, apparently because of a glitch in TLC's recordkeeping system. *Id.* ¶¶ 28-30.  In its

If a police officer or designated TLC employee has "probable cause" to believe a "straight tag vehicle"[3] is being operated for hire, he or she may summarily seize the vehicle and issue a summons to the driver and owner to appear before an administrative tribunal for a hearing that will occur within 14 days.  N.Y.C. Admin. Code § 19-506(h)(1);[4] 35 R.C.N.Y. §§ 68-23(b)(2), (c)(2).  After seizure, the vehicle will not be released until the hearing unless the owner either pleads guilty to the violation and pays the fine or posts a bond equal to the maximum penalty that could be assessed.  N.Y.C. Admin. Code § 19-506(h)(1); 35 R.C.N.Y. § 68-23(d)(2).[5]

The City Council enacted § 19-506(h)(1) in 1990 based on a finding that seizure of vehicles was necessary to "compel compliance" with § 19-506(b)(1) because the "overwhelming majority of summonses" had "resulted in unsatisfied default judgments," making "more stringent enforcement mechanisms" necessary.  N.Y.C. Admin. Code § 19-506 Note L.L. 90/1989 § 1.[6]

---

response to Plaintiffs' motion for summary judgment, the City submitted evidence indicating that Calvo had either pleaded guilty or been found guilty of violating § 19-506(b)(1) three times before the June 4 seizure.  Selvin Reply Decl. ¶ 8.  Plaintiffs did not dispute this evidence.

[3]     A "straight tag vehicle" is a vehicle that is not licensed for hire.

[4]     Section 19-506(h)(1) provides that "[a]ny officer or employee of the commission designated by the chairperson of the commission and any police officer may seize any vehicle which he or she has probable cause to believe is operated or offered to be operated without a vehicle license in violation of" § 19-506(b)(1), and "thereafter" either the civil tribunal or criminal court "shall determine whether a vehicle seized pursuant to this subdivision was operated or offered to be operated in violation of any such subdivision."

[5]     The maximum civil penalty for first-time violators is $1500, and the maximum civil penalty for two or more violations within a 36-month period is $2000.  N.Y.C. Admin. Code § 19-506(e)(1).

[6]     The legislative history exhibits a particular concern with the character of drivers who allegedly operate unlicensed for-hire vehicles.  The then-chairman of the TLC Taxi Advisory Board Howard Fogel made clear that the proposed bill was "directed against" such drivers, whom he called "hustlers, sharpshooters and lawbreakers" in his remarks to the City Council on September 23, 1988.  Selvin Reply Decl. Ex. H-2 at 11.  He went on to opine that "frequently," the drivers were "unfit and unqualified to provide public transportation," and that "many" had "serious criminal records, many [were] drunkards, still others [were] drug addicts.  If they did not possess these serious character defects, in all likelihood they would be working legally and legitimately for medallion taxicab companies or responsible private livery firms."  *Id.*  The Court has no doubt that ensuring that livery drivers do not present a danger to the people to whom they provide transportation is a legitimate public concern.  The issue before the Court is whether the City Council chose a lawful means to solve the problem identified somewhat hyperbolically by Mr. Fogel.

In 2012, the City Council increased penalties for violations of § 19-506(b)(1)[7] and reduced the number of violations within a 36-month period that could trigger vehicle forfeiture from three to two.[8]  *See* Selvin Reply Decl. Ex. I at 10; Def. Reply at 13 n.13.  The City conceded, however, that as a matter of policy TLC does not pursue criminal prosecutions for stand-alone § 19-506(b)(1) violations, Transcript of Oral Argument ("Tr.") at 17-18, and that, regardless of the City Council's grant of authority to forfeit cars of two-time violators, TLC has a "uniform" policy to offer all first-, second-, and third-time violators the option to settle the claim and pay a fine; it does not pursue forfeiture, Mulero Decl. ¶ 9-11.[9]  In short, § 19-506(b)(1) is enforced, almost exclusively, through civil penalties.[10]

Plaintiffs brought suit under 42 U.S.C. § 1983 against the City and three individual defendants, in their official and individual capacities: Meera Joshi and David Yassky, the current and former chairmen of the TLC, Am. Compl. ¶¶ 16 and 17, and Raymond Scanlon, deputy commissioner of the TLC with supervisory authority over enforcement, *id.* ¶ 18.[11]

---

[7]     The civil penalty increased from between $200 and $1500 per violation to a set penalty of $1500 for the first violation and $2000 for two or more violations within a 36-month period. *See* Local Law 2012/32, A Local Law to amend the administrative code of the city of New York, in relation to increasing the penalties for illegally operating vehicles for hire, *available at* http://legistar.council.nyc.gov/LegislationDetail.aspx?ID=1017898&GUID=DB2508B8-4ADC-439C-9FFA-4CECCA5D5A0D&Options=ID|Text|&Search=32. The range of criminal penalties increased from $400 to $1000 to a range of $1000 to $2000.  *See id.*

[8]     The violations attach to the owner, not the vehicle, but the vehicle involved in a subsequent violation is subject to forfeiture.  N.Y.C. Admin. Code § 19-506(h)(2).

[9]     Currently, TLC gives alleged violators the option to "plead guilty" to the violation and "settle" the claim for $750 (first violation), $950 (second violation), and $1150 (third violation).  Mulero Decl. ¶¶ 10, 12.  When Plaintiffs' vehicles were seized, the standard settlement offers were $600 (first violation), $800 (second violation), and $1000 (third violation).  *Id.* ¶ 11.  The standard settlement amounts increased in August 2014.  *Id.* ¶ 12.

[10]    The City was aware of no criminal cases where § 19-506(b)(1) was prosecuted criminally as a stand-alone offense.  Tr. at 17.

[11]    Plaintiffs brought this suit as a putative class action consisting of two classes: a class consisting of all plaintiffs who were owners of vehicles that were seized by TLC employees for first-time violations pursuant to § 19-506(h)(1) (the "owner class"); and a subclass of plaintiffs who were not driving the vehicles at the time of seizure (the "non-driver class"), who challenge the statute under the Fourteenth Amendment because it fails to provide procedures sufficient to protect the interests of innocent owners.  Plaintiffs have not moved for class certification.  In

Plaintiffs challenge § 19-506(h)(1) pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 12 of the New York State Constitution.[12] Plaintiffs argue that the statute is invalid under the Fourth Amendment as applied to alleged first-time violators because it authorizes TLC employees to seize and retain vehicles prior to any adjudication of liability, without a warrant or a valid exception to the warrant requirement, and without a claim of right to possess the vehicle.  Am. Compl. ¶¶ 113, 115, 120.  Plaintiffs argue that the statute is invalid under the Due Process Clause of the Fourteenth Amendment as applied to alleged first-time violators because it does not provide pre-seizure notice and opportunity to be heard and allows (indeed, requires) the TLC to "hold the property hostage," for purposes of securing penalties for the as yet-to-be-adjudicated violations.  *Id.* ¶¶ 127-30, 136-37.[13]

## ANALYSIS

Plaintiffs moved for summary judgment on liability only as to their claims that N.Y. City Administrative Code § 19-506(h)(1), the City's codified policy of seizing vehicles suspected of violating § 19-506(b)(1) without a warrant or pre-deprivation hearing, violates the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 12 of the New York

---

its response to Plaintiffs' motion, the City submitted evidence creating a question of fact as to certain plaintiffs' individual claims.  *See* Selvin Reply Decl. ¶¶ 8-9.  Because the motion does not adjudicate the individual claims, those questions of fact are not material for this motion.

[12]     The City claimed, and the Plaintiffs did not dispute, that Plaintiffs' claims under the New York State Constitution are "duplicative" of their Fourth Amendment Claims.  Def. Mem. at 1 n.1; *see* Pl. Mem. at 10-12.  "[T]he proscription against unlawful searches and seizures" in the Article I, Section 12 of the New York State Constitution "conforms with that found in the [Fourth] Amendment."  *People v. Johnson*, 66 N.Y.2d 398, 406 (1985).  Accordingly, to the extent the Fourth Amendment is violated by the City's policy, the New York Constitution is also.  In that sense, the claims are duplicative.  The New York Court of Appeals has indicated, however, that remedies available for violations of the State constitution may be broader than those available under 42 U.S.C. § 1983.  *See Brown v. State of New York*, 89 N.Y.2d 172, 193-94 (1996).  Because Plaintiffs' motion for summary judgment did not address remedies, the distinction is not currently at issue.

[13]     Finally, the City requested that the Court decline to exercise jurisdiction over Plaintiffs' claim that the TLC has adopted a *de facto* rule that an owner is presumed to have consented to the unlawful use of his car in violation of the City Administrative Procedure Act.  *See* 28 U.S.C. § 1367(c).  Because that claim raises a novel issue of City law and is factually and legally distinct from the constitutional seizure and due process claims, pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over Count Five.

Constitution.  Pl. Mem. at 1.  The City cross-moved for summary judgment, arguing that a

warrant is not required to seize vehicles in public places based on probable cause to believe a

§ 19-506(b)(1) violation has occurred, or, alternatively, that the seizures fall within an exception

to the warrant requirement.[14]  Def. Reply at 1.

At the outset, it is useful to address what this case is not about.  The relevant probable

cause in § 19-506(h)(1) is not probable cause to believe that the vehicle to be seized is subject to

civil forfeiture in conjunction with its driver's arrest, and the cars are not retained by the

government pending forfeiture proceedings.  *Cf., generally*, *Krimstock v. Kelly*, 306 F.3d 40 (2d

Cir. 2002) (Sotomayor, J.), *cert. denied*, 539 U.S. 969 (2003) (setting forth minimal process that

is due when the City seizes forfeitable vehicles operated by drivers who are arrested for driving

while intoxicated and wishes to maintain possession of the vehicles pending the outcome of the

criminal proceedings, establishing what has come to be known as a "*Krimstock* hearing," *see*

*Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 188 (2d Cir. 2007)).  Nor does this

case involve the seizure of a vehicle based upon probable cause to believe that it was used as an

instrumentality of crime and retained by the government to preserve evidence of the crime to be

used at trial.  *Cf. Ford Motor Credit Co.*, 503 F.3d at 188 (under *Krimstock* and its progeny, the

"City can justify the continued retention of a seized vehicle, either because it is likely to prevail

in the eventual forfeiture action or because it wishes to retain the vehicle as evidence against the

owner or driver").  By the City's own admission, it does not forfeit vehicles belonging to first-,

second-, or third- time violators and does not pursue criminal charges for § 19-506(b)(1)

violations.  Mulero Decl. ¶¶ 10-12; Tr. at 17.  And even if it changed its policy to pursue

---

[14]     For either party to prevail, they must show that there is no genuine dispute as to any material fact and that
they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court may consider "the pleadings,
depositions, answers to interrogatories and admissions on file, together with any other firsthand information
including but not limited to affidavits."  *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011).  With few exceptions
noted, there is no dispute as to any material fact for purposes of summary judgment.  *See* Def. Reply at 1 n.1.

forfeiture against repeat offenders, forfeiture of vehicles belonging to first-time violators is not authorized. *See* N.Y.C. Admin. Code § 19-506(h)(2).

The statute's legislative purpose, structure, and the TLC's enforcement policies make clear the obvious: New York City summarily seizes private property, prior to any adjudication of liability, to ensure that those who are guilty will pay the fine that may later be imposed.

### A. Seizures Pursuant to § 19-506(h)(1) of Vehicles That Cannot Be Forfeited Violate the Fourth Amendment

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It is settled law that "[a] 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The "general rule" is that "absent an 'extraordinary situation' a party cannot invoke the power of the state to seize a person's property without a *prior* judicial determination that the seizure is justified." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562 n.12 (1983). "It is familiar history that indiscriminate searches and seizures conducted under the authority of 'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). "[I]n the 'ordinary case,' seizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless . . . accomplished pursuant to a judicial warrant,' issued by a neutral magistrate after a finding of probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)).

The "ultimate standard" of the Fourth Amendment is reasonableness; whether a particular seizure violates the Fourth Amendment therefore typically depends on an analysis that reflects a "careful balancing of governmental and private interests." *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992) (citations omitted). There are recognized exceptions under which warrantless seizures will be considered "reasonable." *See McArthur*, 531 U.S. at 330 (citing examples).[15] To be valid, however, "[a] warrantless seizure must meet one of the recognized exceptions to the [F]ourth [A]mendment's warrant requirement." *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015) (citation omitted).

The City argues that seizures pursuant to § 19-506(b)(1) do not violate the Fourth Amendment because they are reasonable and fall within an exception to the warrant requirement.[16] Specifically, the City argues that the seizures are constitutional because the vehicles are seized in public, Def. Mem. at 9-11, Def. Reply at 5; the vehicles are instrumentalities of crime or are contraband, *id.*; the seizures are based on probable cause, Def.

---

[15]  In *McArthur*, the Supreme Court stated that "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." 531 U.S. at 330. It went on to list examples of recognized exceptions, including: temporary restraints to preserve evidence until police could obtain a warrant ("exigent circumstances"); search of an automobile supported by probable cause; suspicionless stops at drunk driver checkpoints; temporary seizure of luggage based on reasonable suspicion; temporary detention of a suspect without an arrest warrant to prevent flight and protect officers while executing a search warrant; and temporary stops and limited searches for weapons based on reasonable suspicion. *Id.* (citations omitted).

[16]  The City argued that in order to succeed in their challenge, Plaintiffs must establish that "no set of circumstances exist under which Admin Code § 19-506(h)(1) would be constitutional." Def. Reply at 8-9. Contrary to the City's characterization, Plaintiffs challenge §19-506(h)(1) only as it applies to first-time violators whose vehicles are not forfeitable under the enforcement scheme of §19-506(b)(1). *See* Am. Compl. ¶¶ 95, 112-13; Tr. at 43. Moreover, in *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2451 (2015), the Supreme Court clarified that when "addressing a facial challenge to a statute authorizing warrantless" seizures, "the proper focus of the constitutional inquiry is [the seizures] that the law actually authorizes, not those for which it is irrelevant." Thus, if the vehicles could constitutionally be seized under some other rationale (*i.e.*, because they are contraband or forfeitable by operation of a different statute), then the constitutional applications of the statute that may otherwise preclude facial relief "are irrelevant . . . because they do not involve actual applications of the statute." *Id.* The focus of Plaintiffs' challenge, therefore, is the summary seizure of vehicles belonging to first-time violators under § 19-506(h)(1) that are not otherwise subject to seizure. "[A] person subject to a statute authorizing searches without a warrant or probable cause may bring an action seeking a declaration that the statute is unconstitutional and an injunction barring its implementation." *Illinois v. Krull*, 480 U.S. 340, 354 (1987).

Mem. at 8; exigent circumstances justify the seizures because the vehicles are inherently dangerous, *id.*; and the seizures are justified to protect public safety, *id.*  None of the City's arguments has merit.

The fact that the vehicles are seized in public is of no moment.  "[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place."  *Soldal*, 506 U.S. at 68.  "[T]he absence of a privacy interest notwithstanding, '[a] seizure of the article . . . would obviously invade the owner's possessory interest.'"  *Id.* at 66 (quoting *Horton v. California*, 496 U.S. 128, 134 (1990) (first alteration added)); *see also id.* at 68 ("[A]n officer who happens to come across an individual's property in a public area could seize it only if Fourth Amendment standards are satisfied – for example, if the items are evidence of a crime or contraband.").

While it is true that contraband and instrumentalities of crime are generally subject to warrantless seizure, that justification for these seizures simply does not fly.  First, the vehicles are not contraband.  *See von Hofe v. United States*, 492 F.3d 175, 184 (2d Cir. 2007) ("Pure contraband – child pornography, counterfeit currency, and unregistered hand grenades, for instance – are objects, 'the possession of which, without more, constitutes a crime.'" (quoting *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699 (1965))).  When contraband is encountered by law enforcement, it is seized, and it is not returned to the owner – precisely because it is contraband.  Straight tag for-hire vehicles are simply not contraband.  *See One 1985 Plymouth Sedan*, 380 U.S. at 699 (unlike narcotics, "[t]here is nothing even remotely criminal in possessing an automobile.  It is only the alleged use to which th[e] particular automobile was put that subject[ed] [the owner] to its possible loss.").[17]

---

[17]      This would be a different argument if the City passed legislation that categorized straight tag for-hire vehicles as contraband.  *See Florida v. White*, 526 U.S. 559, 565 (1999) (vehicle used to sell cocaine was contraband

Nor are the vehicles instrumentalities of crime as that term has been used by the Supreme Court and Second Circuit.  The City has cited no case and the Court has found none in which the Supreme Court has dispensed with the warrant requirement to allow law enforcement to seize property as an "instrumentality of crime" in connection with a violation that it never intends to criminally prosecute.  *See von Hofe*, 492 F.3d at 185 (noting that, when it comes to forfeiture of instrumentalities or tools used in the commission of a criminal offense, "only after criminal conviction may an *in personam* forfeiture occur").

More important, the express purpose for the City's seizures pursuant to § 19-506(h)(1) is not to relieve wrong-doers of the instrumentalities of wrongdoing (after all, the vehicles are returned as soon as an alleged wrongdoer posts a bond or pays a penalty).  The purpose of the statute is to ensure that vehicle owners pay their fines because the City Council believed that too many summonses were resulting in unsatisfied default judgments.  In short, the City's effort to fit this procedure into the precedent that permits the seizure of vehicles that are contraband or instrumentalities of crime is an effort to fit a very square peg into a very round hole.

The City argues that the seizures are nonetheless reasonable because § 19-506(h)(1) only permits seizures based on "probable cause."  It is true that seizures without a warrant can be reasonable if law enforcement has probable cause to believe that the property is contraband, evidence of a crime, or otherwise subject to forfeiture.  *See Florida v. White*, 526 U.S. 559, 565 (1999); *United States v. Gaskin*, 364 F.3d 438, 458 (2d Cir. 2004) ("law enforcement officers may seize forfeitable vehicles from public places without a warrant if they have probable cause to believe that the vehicle is, in fact, subject to forfeiture" (citing *White*, 526 U.S. at 561)).  But

---

under state statute).  *But see id.* at 566-67 (Souter, J., concurring) ("The Fourth Amendment does not concede any talismanic significance to use of the term 'contraband' whenever a legislature may resort to a novel forfeiture sanction in the interest of law enforcement . . . .").  As the law stands, however, straight tag vehicles used for hire are not "contraband."

even in such cases, warrantless seizures of property "are reasonable only because there is

probable cause to associate the property with criminal activity" and "the item's incriminating

character is 'immediately apparent.'"  *Soldal*, 506 U.S. at 69 (quoting *Horton*, 496 U.S. at 136-

37).

"Probable cause" is not a talismanic phrase that can be waved like a wand to justify the

seizure of any property without a warrant.  When property is seized because there is probable

cause to believe that it is contraband or otherwise forfeitable, seizure is the first step in a process

to terminate a possessory interest in the property seized – the seizing officer has probable cause

to believe that the right abridged (ownership of the property) is a right that no longer exists.  *See*

*Krimstock*, 306 F.3d at 49-51.  When property is seized as evidence or instrumentality of a crime,

there is probable cause to believe that, until the termination of criminal proceedings, the

government has an interest in the property that is superior to the owner's interest.  *Caplin &*

*Drysdale, Chartered v. United States*, 491 U.S. 617, 627-28 (1989); *Butler v. Castro*, 896 F.2d

698, 700-03 (2d Cir. 1990) (it is unconstitutional to place the burden on arrestees to initiate

proceedings to recover "non-contraband items not needed as evidence" from the NYPD (citing

*McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972))).  The "probable cause" in § 19-506(h)(1),

however, bears no nexus to the right that the seizure abridges.  Because the statute does not

authorize forfeiture of first-time violators' vehicles and by policy forfeiture is not sought even

with second- and third-time violators, probable cause to believe that the statute has been violated

means only that there is probable cause to believe that the owner may be liable for a fine.  It does

not mean that there is probable cause to believe that the City has – even temporarily – a superior

claim to the vehicle than its owner.

The City next asserts that exigent circumstances demand immediate removal of straight

tag for-hire vehicles from the roadways because the vehicles pose a danger to society.  The

legislative history suggests that the City Council was concerned that such vehicles are not roadworthy and frequently are not adequately insured.  *See* Selvin Reply Decl. Ex. H.  While that may be true, the seizures being challenged here do not ameliorate the City's (perhaps legitimate) concern inasmuch as the intent when seizing the vehicles is to return them to their owner upon payment of the bond or penalty.  The vehicle is returned whether it is roadworthy or not and whether it is adequately insured or not.  Thus, the seizures are ill-suited to achieve the goal of removing dangerous vehicles from the streets of New York – however laudable that goal.[18]  *Cf. Krimstock*, 306 F.3d at 66 (impounding vehicles pending the outcome of criminal proceedings is "ill-suited to address the urgency" of keeping an individual from driving while intoxicated because he would be free to drive intoxicated in any other vehicle).  Even if exigent circumstances did justify immediate seizure, when (as here) no other exception to the warrant requirement applies, "the exigent circumstances exception only permits a seizure to continue for as long as reasonably necessary to secure a warrant."  *United States v. Cosme*, 796 F.3d 226, 235 (2d Cir. 2015).  Here, the City never obtains seizure warrants for the vehicles.  In short, exigent circumstances do not justify these seizures.

Finally, the City argues that seizure under § 19-506(h)(1) is a necessary tool to enforce § 19-506(b)(1).  There is no question that regulating vehicles that operate for-hire is a legitimate exercise of police power.  But summary deprivation of property is not.  The City has powerful, legitimate tools at its disposal.  It could subject these vehicles to forfeiture; it could suspend the driver's licenses of owners or operators of unlicensed vehicles for hire; it could impose substantial late fees for owners who do not pay the fines that have legitimately been imposed.

---

[18]    The City's concern with the character of drivers of the seized vehicles suffers from the same defect: seizing the vehicles does nothing to prevent the drivers from committing future violations when the vehicle is returned, except to the extent that the seizures serve to punish the driver prior to an adjudication of guilt.

What it cannot do, consistent with the Fourth Amendment, is summarily seize property to deter

future violations from an *alleged* violator[19] and hold the property as leverage to ensure payment

of a penalty – *if* the violator is found guilty when the allegations against him are adjudicated.

**B.  Seizures Pursuant to § 19-506(h)(1) of Vehicles Belonging to Alleged First-Time
Violators Violate the Due Process Clause**

When property is seized for the purpose of "assert[ing] ownership and control over the

property," and not just to preserve evidence of wrongdoing, the seizure "implicates two 'explicit

textual source[s] of constitutional protection'": the Fourth Amendment protection against

unreasonable warrantless seizures and the Due Process Clause of the Fourteenth Amendment.

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 50, 52 (1993) (quoting *Soldal*, 506

U.S. at 70); *see also Krimstock*, 306 F.3d at 49-53.  Here, the City seizes vehicles in order to

assert control over them as a means of ensuring payment of an as-yet-unimposed penalty.  The

City argues that the TLC provides adequate process because it provides "prompt" hearings to

adjudicate the violations (the hearing occurs within fourteen days of the seizure), and that the

option to post a bond to secure the vehicles' release ameliorates any temporary burden imposed

on the vehicle owners.[20]  Def. Mem. at 17; Tr. at 20-21.

The Due Process Clause of the Fourteenth Amendment provides: "No state shall . . .

deprive any person of . . . property without due process of law."  The "general rule" derived from

the Due Process Clause is "that individuals must receive notice and opportunity to be heard

---

[19]     At oral argument, the City represented that summarily seizing vehicles is intended to serve a deterrent
purpose – notwithstanding that, at the time of seizure, there has been no finding by a neutral and detached judicial
officer of liability.  *See* Tr. at 19-20 (seizures further public safety interest even if vehicles are released upon posting
of bond because "the hope is that that [$2000 bond] deters you from future illegal conduct and that will stop the
illegal conduct").

[20]     It is not clear why the City believes that being given the option of posting a $2000 bond or losing the use of
his or her car for up to two weeks imposes *no* burden on many New Yorkers.

before the Government deprives them of property." *James Daniel Good Real Prop.*, 510 U.S. at 48. Of course, it does not violate the Due Process Clause to immediately seize property when an exception to the Fourth Amendment's warrant requirement applies. *Compare Calero-Toledo v. Pearson Yacht Leasing Co.*, 510 U.S. 663, 676-80 (1974) (*ex parte* seizure did not offend due process; "seizure for purposes of forfeiture is one of those 'extraordinary situations' that justify postponing notice and opportunity for a hearing'" until after the seizure); *with James Daniel Good Real Prop.*, 510 U.S. at 56-59, 62 (*ex parte* seizure of real property violates due process unless the government can establish exigent circumstances because real property cannot abscond from the jurisdiction and less restrictive means are available). Because the Court concludes that seizures of vehicles belonging to alleged first-time violators pursuant to § 19-506(h)(1) are unconstitutional under the Fourth Amendment, it follows that the rule that postpones notice to the owner and an opportunity to be heard until after seizure also violates the Due Process Clause.[21]

Plaintiffs also challenge the adequacy of the post-seizure process. "Due process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (quoting *Brody v. Village of Port Chester*, 434 F.3d 131, 134 (2d Cir. 2005)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citation omitted). In deciding "whether the demands of the Due Process Clause are satisfied where the government seeks to maintain possession of property before a final judgment is rendered," courts consider the three

---

[21]    *Cf. Connecticut v. Doehr*, 501 U.S. 1, 15 (1991) (in a due process challenge to a prejudgment attachment statute that included the right to expeditious post attachment hearing, noting that such a hearing "would not cure the temporary deprivation that an earlier hearing might have prevented").

factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *Krimstock*, 306 F.3d at 60.  Those

factors are "(1) the private interest affected; (2) the risk of erroneous deprivation through the

procedures used and the value of other safeguards; and (3) the government's interest," including

administrative burden that additional procedural requirements would impose.  *Id.*

The private interest affected here – possession of the vehicle – is significant.  The Second

Circuit has recognized the importance of an individual's interest in his or her motor vehicle,

inasmuch as they are used "as a mode of transportation and, for some, the means to earn a

livelihood."  *Id.* at 61.  The fact that the deprivation is of finite duration (or "expedited" as the

City puts it) is of minimal importance.  "[A] temporary, nonfinal deprivation of property is

nonetheless a 'deprivation' in the terms of the Fourteenth Amendment."  *Fuentes v. Shevin*, 407

U.S. 67, 85 (1972).  The Due Process Clause "draws no bright lines around three-day, 10-day or

50-day deprivations of property."  *Id.* at 86.  The length and severity of a deprivation is a factor

to weigh in determining the appropriate form of hearing, but it does not dispose of the right to a

meaningful opportunity to be heard.  *Id.*; *cf. Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974)

(state statute did not violate due process when writ was granted by a judge *ex parte* upon an

affirmation setting forth specific grounds for relief, and debtor was entitled to an immediate

hearing where writ would be dissolved if the creditor could not provide proof of its claim).  Nor

does the option to post a bond to secure the vehicle's release cure any constitutional imposition

on the private interests affected.  "When officials . . . seize one piece of property from a person's

possession and then agree to return it if he surrenders another, they deprive him of property

whether or not he has the funds, the knowledge, and the time needed to take advantage of the

recovery provision."  *Fuentes*, 407 U.S. at 85.

Turning to the next *Mathews* factor, the Court has concerns about the risk of erroneous

deprivations.  The City argues that the TLC officer's affirmation setting forth the basis for his or

her probable cause determination minimizes the risk of an erroneous deprivation at the time of

seizure and, by extension, pending adjudication by the TLC.  Def. Mem. at 16-17.  But even if

that probable cause determination were enough to justify the initial seizure (which it is not), the

*Krimstock* court expressly rejected a similar argument.  There, the City argued that continued

retention of a forfeitable vehicle that had been seized when its operator was arrested for drunk

driving, pending a criminal proceeding, was justified by the probable cause determination that

was made when the vehicle's operator was arrested.  *Krimstock*, 306 F.3d at 52.  The court

rejected that argument because "a warrantless arrest by itself does not constitute an adequate,

neutral 'procedure' for testing the City's justification for continued . . . detention of a vehicle."

*Id.* at 53.  Although the timing of the hearing for a § 19-506(b)(1) violation is substantially more

prompt than the forfeiture proceedings considered in *Krimstock*, the seizing officer's probable

cause determination does no more to mitigate the risk of erroneous deprivations.

     The final *Mathews* factor is the government's interest.[22]  In *Krimstock*, the court

acknowledged that the police department has an interest in preventing vehicles "from being sold

or destroyed before a court can render judgment in future forfeiture proceedings."  *Krimstock*,

306 F.3d at 62-64.  But TLC does not forfeit vehicles of first-time offenders, and there is no

---

[22]     The City cites *Mackey v. Montrym*, 443 U.S. 1, 17 (1979), for the proposition that the Supreme Court "has traditionally accorded the states great leeway in adopting summary procedures to protect public health and safety." Def. Reply at 12.  The statute in *Mackey* provided that a driver arrested for drunk driving who refuses to submit to a breathalyzer will have his driver's license summarily suspended.  *Id.* at 18.  In weighing the government interest under *Mathews*, the Court held that the state's interest in public safety (deterring drunk driving and removing drunk drivers from highways) was "substantially served by the summary suspension," and that the "summary and automatic character of the suspension sanction" was "critical" to attaining the public safety objectives.  *Id.* at 18. The Court specifically noted that "[d]runken drivers accounted for 283 of 884 traffic fatalities in Massachusetts during 1975 alone."  *Id.* at 17 n.9.  In contrast to the record before the Court in *Mackey*, the City did not come forward with a single incident of harm (physical or monetary) caused by an unlicensed for-hire vehicle.  Equating the City's so-called public safety interest in summarily seizing straight tag for-hire vehicles, which will be promptly returned if a fine is paid, to the dangers posed by drunk drivers for purposes of *Mathews* balancing is unsupported by the record.

legitimate government interest in seizing a vehicle because its owner *might* have violated a local law.[23]

In sum, the City has cited no case, and the Court has found none, in which a federal court has ever upheld the warrantless seizure of private property in order to ensure payment of a fine, prior to any adjudication that the property owner committed any offense or that a fine is due. Whatever the due process clause may mean in more complicated scenarios, surely it means the government cannot summarily seize property because a fine *might* be imposed at some point in the future by a neutral judicial officer.

### C.  Section 1983 Claims Against the City and Individual Defendants

The City moved to dismiss the Complaint for failure to state a claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, (1978).  For the reasons stated above, Plaintiffs have not only alleged that an official, codified municipal policy of New York City caused Plaintiffs' injuries, but there is no question of fact that the policy and practices of implementing the policy violated (at least some of) the Plaintiffs' rights guaranteed by the Fourth and Fourteenth Amendments.  Accordingly, the City is liable under *Monell* for whatever damages Plaintiffs who were first time violators can prove.  *See Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2013).

The City also moved to dismiss the claims against the individual defendants because they are entitled to either qualified or absolute immunity.  "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," whereas an official-capacity action is, "in all respects other than

---

[23]     *Cf. Doehr*, 501 U.S. at 16 (discounting a private litigant's interest in real property that was attached pursuant to a prejudgment attachment statute because he had "no existing interest" in the real estate and the "only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action").

name, to be treated as a suit against the" City. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

To prevail in an official-capacity action, the plaintiff must show that the government entity's

"policy or custom . . . played a part in the violation of federal law." *Id.* "When it comes to

defenses to liability, an official in a personal-capacity action may, depending on his position, be

able to assert personal immunity defenses;" in "an official-capacity action, these defenses are

unavailable." *Id.* at 166-67. Because the Amended Complaint states a claim against the City

under *Monell*, it also states a claim against the individual defendants in their official capacities.

*See id.*; *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425-26 (S.D.N.Y. 2013).

In order to state a claim for personal liability under § 1983, however, the complaint must

allege facts that establish the defendants' individual actions were proximate causes of the alleged

constitutional deprivations. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *Grullon*

*v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to

establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show,

*inter alia,* the defendant's personal involvement in the alleged constitutional deprivation.").

"Personal involvement, within the meaning of this concept, includes not only direct participation

in the alleged violation but also gross negligence in the supervision of subordinates who

committed the wrongful acts and failure to take action upon receiving information that

constitutional violations are occurring." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229

(2d Cir. 2004). Thus, an individual-capacity defendant is entitled to qualified immunity (and

dismissal of claims against him in his individual capacity) unless the complaint pleads facts that

plausibly allege his personal involvement in the constitutional violation and that his involvement

was a proximate cause of the plaintiff's injury. *See Grullon*, 720 F.3d at 138. Plaintiffs

conceded at oral argument that they have alleged no facts that amount to personal involvement in

the alleged constitutional violations beyond the individual defendants' enforcement of the law as

it was passed by City Council. Tr. at 36. That is not enough to survive a motion to dismiss made

by an individual-capacity defendant based on an assertion of qualified immunity.[24]

### D.  The Amended Complaint States a Claim for Punitive Damages Against the Individual Defendants

The City moved to dismiss Plaintiffs' claim for punitive damages because punitive

damages are not authorized under § 1983 in claims against the City. Def. Mem. at 25.

"Although a municipality itself is immune from a claim for punitive damages, [cit.], that

immunity does not extend to a municipal official sued in his official capacity." *New Windsor*

*Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir. 2006) (citing *Smith v.*

*Wade*, 461 U.S. 30, 55-56 (1983); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258-68

(1981)); *see also DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003) (noting that the City's

liability "is limited to . . . compensatory damages, as punitive damages may not be awarded

against a municipality under *Monell*"). As a result, the motion to dismiss the punitive damages

claim is GRANTED as to the City but DENIED with respect to the individual defendants in their

official capacities.

### CONCLUSION

Plaintiffs' motion for summary judgment as to liability to first time violators, Docket

Entry 30, is GRANTED. Defendants' cross-motion for summary judgment, Docket Entry 25, is

GRANTED with respect to the claims against the individual defendants in their individual

---

[24]    The City also argued that the defendants are entitled to absolute immunity because they were exercising a prosecutorial function. Def. Mem. at 23-24 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). At the same time, the City argues that the Amended Complaint fails to allege that the individual defendants had any personal involvement in issuing the summonses that set in motion the seizures and TLC adjudications. *Id.* at 22-23. The City's argument appears to be that the individual defendants would be entitled to absolute immunity for setting the policy of prosecuting § 19-506(b)(1) violations, whether or not they had involvement in the individual decisions to prosecute. *See Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010) (state officials initiating administrative proceedings and civil litigation are entitled to absolute immunity from § 1983 claims arising out of the performance of their duties, but actions that are the "functional equivalent of police officers' making arrests in criminal cases" are "a classic example of actions entitled to qualified, rather than absolute, immunity"). Because the Court finds that the individual defendants are entitled to qualified immunity, it does not reach the issue of absolute immunity.

capacity, and the claim for punitive damages against the City.  Count Five is DISMISSED

pursuant to 28 U.S.C. § 1367(c).  The motion is DENIED in all other respects.

At oral argument, Plaintiffs stated that they were seeking injunctive relief, but that

request was not included in their moving papers.  The Amended Complaint also sought class

certification.  Given that the Court has determined that the City's policy of summarily seizing

vehicles of alleged first-time violators violates the Fourth and Fourteenth Amendments, the

parties are ORDERED to submit a joint letter no later than October 9, 2015, indicating whether

Plaintiffs intend to pursue injunctive relief and, if so, proposing a schedule for briefing their

request.  The letter should also address whether Plaintiffs still wish to pursue class certification,

and, if so, whether they require class discovery before briefing that request.

The Clerk of Court is requested to terminate Docket Entries 15, 25 and 30.


**SO ORDERED.**

Date:  **September 30, 2015**                             **VALERIE CAPRONI**
       **New York, New York**                            **United States District Judge**