GAJAHARAps

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MICHAEL HARRELL, et al.,

4              Plaintiffs,

5         v.                          14-cv-7246 (VEC)

6   CITY OF NEW YORK, et al.,

7              Defendants.

8   ------------------------------x

9                                    New York, N.Y.
                                     October 19, 2016
10                                   3:00 p.m.

11
    Before:
12
                    HON. VALERIE E. CAPRONI
13
                                     District Judge
14

15                    APPEARANCES

16  HARRIS, ST. LAURENT & CHAUDHRY LLP
         Attorneys for Plaintiffs
17  BY:  ANDREW ST. LAURENT, ESQ.
         JOSEPH GALLAGHER, ESQ.
18
    DANIEL L. ACKMAN, ESQ.
19       Attorney for Plaintiffs

20  ZACHARY W. CARTER
         Corporation Counsel for
21       The City of New York
    BY:  KAREN SELVIN, ESQ.
22       Senior Counsel
         ANGELIE THOMAS, ESQ.
23       Assistant Corporation Counsel

24

25

GAJAHARAps

```
 1              (In open court)

 2              THE CLERK:  In the matter of Harrell, et al. v. City

 3    of New York, et al.

 4              THE COURT:  Please be seated.

 5              THE CLERK:  All counsel please state your appearances

 6    for the record.

 7              MR. GALLAGHER:  Joseph Gallagher, Harris St. Laurent &

 8    Chaudhry, for plaintiffs.

 9              THE COURT:  Gallagher, you said?

10              MR. GALLAGHER:  Gallagher, yes.

11              MR. ST. LAURENT:  Andrew St. Laurent, Harris St.

12    Laurent & Chaudhry, for plaintiffs.  Good afternoon.

13              MR. ACKMAN:  Daniel Ackman, for plaintiffs, your

14    Honor.

15              MS. SELVIN:  Karen Selvin from the New York City Law

16    Department of behalf of defendants.

17              MS. THOMAS:  Angelie Thomas with the New York City Law

18    Department.

19              THE COURT:  OK.  I was hoping I could get to class

20    certification without another discovery dispute.

21              Let's start with Mr. Harrell.  It seems to me that the

22    answer with Mr. Harrell is an order to show cause why he

23    shouldn't be dismissed for failure to provide discovery.  Do

24    you want to be heard on that?

25              MR. ST. LAURENT:  No, your Honor.  As we said in the
```

GAJAHARAps

1   letter, we have attempted to produce him for deposition.  We've

2   had --

3          THE COURT:  He seems to have dropped off the face of

4   the earth.

5          MR. ST. LAURENT:  We've had one communication with him

6   in the last few months.  I cannot say that we can produce him

7   for deposition or get any other information documents from

8   Mr. Harrell.

9          MS. SELVIN:  If your Honor wants us to file something,

10  we'll file something.

11         THE COURT:  No.  I was just going to enter an order to

12  show cause.

13         MS. SELVIN:  Then we would make that application now.

14         THE COURT:  OK.  So that is going to resolve the

15  Harrell issue, I think.

16         MR. ST. LAURENT:  Yes, your Honor.

17         THE COURT:  Because I don't think you have contact

18  with your client, and that's going to make it very difficult

19  for him to be a plaintiff.

20         MR. ST. LAURENT:  I agree, your Honor.

21         MS. SELVIN:  Judge, just as part of that order, would

22  the Court be confirming that the judgment entered for

23  Mr. Harrell is vacated?

24         THE COURT:  Yes.

25         MR. ACKMAN:  Or is it just a class plaintiff?  I don't

GAJAHARAps

1  know if there's any dispute that his car was seized.

2         THE COURT:  But he's no longer participating in the

3  litigation.  Damages are part of the claim.  You don't get to

4  go halfway and then drop out.

5         MR. ST. LAURENT:  Yes, your Honor.

6         THE COURT:  Yes.  It would result in the judgment

7  being vacated as to him.

8         MR. ST. LAURENT:  Yes, your Honor.

9         And just so I understand for Mr. Harrell, he's has to

10  show cause by a particular -- a date certain why his claim

11  should not be dismissed at this point.

12         THE COURT:  Yes.

13         MR. ST. LAURENT:  Thank you.

14         THE COURT:  I'll give you a couple of weeks.  It seems

15  to me you've had a while to find him.

16         MR. ST. LAURENT:  Yes, your Honor.

17         THE COURT:  He's around.  It kind of is where it is.

18  I don't hold anybody responsible, but he's lost interest.

19         MR. ST. LAURENT:  Yes, your Honor.

20         THE COURT:  OK.  That brings us to John Peters.  Let

21  me confirm a couple of things.  There was a list that was

22  attached to one of the many letters that was sent me over the

23  last few weeks.  Am I correct that that list included all the

24  vehicles that were owned or leased during the class period,

25  regardless of who had title and regardless of whether the car

GAJAHARAps

1    has subsequently been sold?

2              MR. ST. LAURENT:  Yes, your Honor.  For the period

3    going from around December 2010 to the date that this list was

4    produced in 2016, it contains those vehicles.

5              THE COURT:  Actually, that's the class period, right?

6              MR. ST. LAURENT:  A little bit beyond the class

7    period, your Honor.

8              THE COURT:  OK.

9              MS. SELVIN:  September 2011, I believe, is when the

10   proposed class period starts.

11             MR. ST. LAURENT:  Yes, your Honor.

12             THE COURT:  She's not your lawyer.

13             MR. ST. LAURENT:  I'm trying to speak to two people at

14   once, which is my mistake.

15             THE COURT:  The class period to September 2011.  So

16   it's actually broader than the class period.

17             OK.  There had been a dispute over whether you have

18   provided insurance information, but that seems to have fallen

19   away.  Is there still a dispute over whether the, what you call

20   those policies, the big policy that John Peters has, covers all

21   of their fleet?

22             MR. ACKMAN:  Right.

23             MR. ST. LAURENT:  There is one additional nuance, your

24   Honor, which is that there is another insurance policy for

25   buses that John Peters Limousines also owns, which I do not

GAJAHARAps

1   believe have any relationship to this dispute.

2               THE COURT:  So the policy that you provided covered

3   all the cars that were on the list that were provided.

4               MR. ST. LAURENT:  Yes, your Honor.  But, again, it's a

5   continuing policy for professional --

6               THE COURT:  Cars go in and cars go out.

7               MR. ST. LAURENT:  That's right.

8               THE COURT:  They cover, as I read the policy, it

9   covers --

10              MR. ST. LAURENT:  The fleet.

11              THE COURT:  There's like a separate list somewhere

12  that gives all the VIN numbers so that the insurance company

13  knows what cars are under the policy.

14              MR. ST. LAURENT:  Yes, your Honor.  That is the

15  policy.

16              THE COURT:  OK.  So do you think there's an issue with

17  insurance?

18              MS. SELVIN:  Yes.

19              THE COURT:  Why?

20              MS. SELVIN:  Well, first of all, the insurance policy

21  that we were provided lists only 17 vehicles.  Judge, we don't

22  believe they have provided all the insurance information, the

23  registration information for the vehicles.

24              THE COURT:  Let's focus on insurance.

25              MS. SELVIN:  OK.  Since they had a number of their

GAJAHARAps

1    vehicles seized, John Peters has apparently become licensed as

2    a TLC base, to discharge cars from, I guess to avoid hopefully

3    them running afoul of New York City regulations.  As part of

4    that licensing for their vehicle fleet, they were required to

5    provide some insurance information, and they provided some

6    insurance cards that were not provided pursuant to this

7    discovery.  So we already know there were five, I think,

8    additional insurance cards for vehicles that were not provided

9    pursuant to discovery.

10            THE COURT:  Is it a different insurance company?

11            MS. SELVIN:  That I don't know.

12            THE COURT:  Again, did I misread this policy?  I

13   thought this policy was covering the fleet.

14            MR. ACKMAN:  It is.

15            THE COURT:  That it's a fleet policy.

16            MR. ST. LAURENT:  That's my reading as well, your

17   Honor.

18            THE COURT:  OK.  So what is it that makes you believe

19   that that policy does not cover all of the cars on the list?

20            MS. SELVIN:  Your Honor, it was my understanding that

21   the policy listed the VINs of 17 vehicles on that policy alone.

22   A number of those vehicles were not listed that we have

23   insurance cards from, that they filed, affiliated with their

24   base.

25            I can let you know that at least one of the insurance

GAJAHARAps

1    cards that was not provided is from Atlantic Specialty

2    Insurance Company.  I don't think -- and correct me -- I don't

3    have a copy of the policy in front of me.  I know it was an

4    exhibit to Mr. St. Laurent's letter.  I don't know if that's

5    the same company.

6            MR. ACKMAN:  I think I can clarify that confusion, if

7    there is any.

8            THE COURT:  There probably is.

9            MR. ACKMAN:  I believe they applied for the base in

10   New York some time ago, so they might have had other cars in

11   their fleet at that time, and they provide -- I don't really

12   know about the base application practice, very much anyway, but

13   they might have had different cars in a fleet at the time they

14   applied for the base license which they no longer have.

15   Therefore they wouldn't be on the policy.

16           THE COURT:  They should be on the list.

17           MR. ACKMAN:  They are on the list.

18           MR. ST. LAURENT:  Your Honor, can I just clear up one

19   factual point?  The effective October 31, 2015 policy that we

20   provided to the defendants is written by Atlantic Specialty

21   Insurance Company.

22           THE COURT:  OK.

23           MS. SELVIN:  Your Honor, what I can represent is that

24   the insurance information we have is for vehicles they

25   represented that are currently active from their base.  So it's

GAJAHARAps

1    not vehicles that they either sold or had gotten rid of.

2              THE COURT:  But you're missing my point.  You wanted

3    to know about their insurance.  They've given you the fleet

4    policy, where, as I understand it, vehicles come in, vehicles

5    go off.  So at any given snapshot in time, there are going to

6    be different vehicles under that policy today than two weeks

7    ago.  I don't know how quickly they change their cars.  But the

8    point being, the cars come in, cars go out.  So what is it that

9    you need to know that you do not know by virtue of having the

10   policy?

11             MS. SELVIN:  Well, specifically this policy certainly

12   didn't list the vehicles that -- subject in the complaint.

13             THE COURT:  What do you need to know that you don't

14   know?

15             MS. SELVIN:  Did they have insurance on that vehicle

16   in their name?

17             THE COURT:  Why do you need to know that?

18             MS. SELVIN:  Because we believe that's indicia of

19   ownership.  And obviously, I'm --

20             THE COURT:  Is there a serious dispute over whether

21   they -- forget whether -- who had the title to the car -- that

22   these were their cars, in the sense that they were operating

23   the cars?

24             MS. SELVIN:  I don't know.  I'm not prepared to

25   consent to that, because I don't know.  I haven't received a

GAJAHARAps

1   lot of information regarding their cars.

2           THE COURT:  Are the cars on the list?

3           MS. SELVIN:  Which ones?

4           THE COURT:  Do you have violations that are not on the

5   list?  Violations associated with John Peters Limousine that

6   are not on the list that they have now represented is the

7   universe of vehicles that they owned, leased, or -- no, that

8   they operated, whether they owned them or leased them, from

9   December 2010 through when the list was run.

10          MS. SELVIN:  I'm not aware of any violations that are

11  covering different cars, no.

12          THE COURT:  OK.  So you've got the cars.

13          MS. SELVIN:  But I'm not --

14          THE COURT:  I'm not sure -- to me this is a little bit

15  of angels on the head of a pin.  They've given you the policy.

16  So you know who their insurance carrier is, to the extent

17  that's important to you.  Whether they insured a car or they

18  didn't insure a car, I don't see how that advances your cause.

19          MS. SELVIN:  I do think that's an indicator of

20  potential ownership issues.  And obviously we discussed this

21  before the Court.  I thought the Court agreed, back in April

22  when we were discussing our discovery requests, that title

23  registration and insurance information was an appropriate

24  information request, whereas you denied me the, like

25  maintenance records and other stuff I had asked for, because

GAJAHARAps

1    that would indicate seemingly whether they had actually had a

2    true ownership interest in the vehicle.

3           THE COURT:  It's relevant to the extent they have it.

4    Right.  But this has now turned into, it strikes me, as a

5    "gotcha" exercise.  And that's not the purpose of discovery.

6    And that's why I'm trying to figure out what it is that you

7    think you're going to get by making them jump through further

8    hoops to get insurance cards for every vehicle that they've

9    ever had under that policy.

10          MS. SELVIN:  Your Honor, as you know, they're putting

11   John Peters up as a proposed class rep, so we were entitled, we

12   thought, to ask for ownership information and vehicle

13   information regarding their fleet during that time poured.

14          THE COURT:  And you've gotten that.

15          MS. SELVIN:  Well, we've gotten a list from them which

16   I have not been able to independently verify is accurate, and I

17   would just note for the Court we obviously got an inaccurate

18   list from Michael Harrell, and we verified that immediately.

19          In addition, we have received nothing regarding the

20   vehicle that's actually mentioned in the complaint.  If they

21   are prepared to represent on the record today that that vehicle

22   was covered which this insurance policy, then I will accept

23   that representation.  We have not gotten that from them.

24          THE COURT:  Why isn't that vehicle on the list?

25          MR. ST. LAURENT:  Because they sold that vehicle, your

GAJAHARAps

1   Honor, I believe in 2014.

2          THE COURT:  No, no, no, no, no.

3          MR. ST. LAURENT:  Was the vehicle --

4          THE COURT:  No, no, no.

5          MR. ST. LAURENT:  It is on the list.  I'm sorry.

6          MR. ACKMAN:  It is on the list.

7          MR. ST. LAURENT:  Yes, your Honor.  It is on the list.

8   The VIN number for that vehicle is on the list.

9          MR. ACKMAN:  It's not on the insurance policy.

10          MR. ST. LAURENT:  It's not on the insurance policy.

11          THE COURT:  Because it was done.  It's gone.

12          MR. ST. LAURENT:  Right.

13          MS. SELVIN:  Can I ask when that car was disposed of

14   in 2014?  Because this case was commenced in 2014.  It was

15   obviously based on the fee records they have now submitted in

16   support of their fee application.  The litigation was

17   anticipated for quite a few months before it was filed.

18          THE COURT:  It doesn't mean they have to keep the car.

19          MS. SELVIN:  No, but they would keep records regarding

20   the ownership of the vehicle, so records regarding insurance

21   information, I think, should have been maintained.

22          MR. ST. LAURENT:  Your Honor, again, I don't want to

23   relive the past, but in February of 2015 we thought that a

24   different car seizure had been the first seizure for JPPL.  In

25   February 2015 Ms. Selvin provided us with information about

GAJAHARAps

1    three other prior seizures, which is why we had to amend our

2    complaint, three other prior seizures, the earliest of which

3    was November 15, 2012, which is the seizure that is at issue in

4    this case.

5           Again, I don't want to belabor the point, but with

6    regards to these seizures and these vehicles and insurance

7    cards for other vehicles owned by JPPL, the city has the

8    documents and they have used them in the course of this

9    litigation.

10          THE COURT:  Look, the real question is whether you've

11   got to go jumping through hoops to come up with evidence that

12   all of these cars were insured, or whether the answer to the

13   city is, serve a third-party subpoena on the insurance carrier.

14          But personally, this really does strike me as going

15   beyond what is needed or relevant to defending the case.  I

16   just, you ticketed John Peters for this car.  You got the fine

17   from John Peters.  So the notion that John Peters was just like

18   acting as a volunteer for somebody else's car seems a little

19   unlikely.

20          MS. SELVIN:  But in the end it's their burden to show

21   the ownership interest.  And we referenced for the Court the

22   *El-Nahal* decision that just came down in the Second Circuit

23   indicating just because you operate a vehicle doesn't mean you

24   can assume an ownership interest in the vehicle.

25          THE COURT:  That was a hack, right?

GAJAHARAps

1          MS. SELVIN:  For a hired vehicle.

2          THE COURT:  Yes, but it was a person.  This is John

3     Peters Limousine.

4          MS. SELVIN:  Well, I'm taking their word for it that

5     it was their limousine.  I haven't seen any documentation.

6          What I will say is obviously at the time we stopped

7     them, they were given information that they were the registered

8     owner.  However, we have no information regarding title,

9     insurance, or anything else.

10          And also, Judge --

11          THE COURT:  So hang on a second.  Title is different.

12     They are the registered owner.  Right?  There's no question

13     that they're the registered owner.

14          MS. SELVIN:  Again, based on what they provided, there

15     is prima facie evidence that they are the registered owner.

16          THE COURT:  Well, you've got DMV records.  Do the DMV

17     records say anything to the contrary?

18          MS. SELVIN:  This is New Jersey, so --

19          THE COURT:  Have you subpoenaed them?

20          MS. SELVIN:  No, we haven't.

21          THE COURT:  I thought you were going to subpoena them.

22          MS. SELVIN:  Well, if we have to we will.  But we

23     subpoenaed New York for some people in Pennsylvania.

24          THE COURT:  All right.  So have you got any indication

25     that vehicles that John Peters says are John Peters vehicles

GAJAHARAps

1    that are registered to John Peters are not registered to John

2    Peters?

3            MS. SELVIN:  I don't know.  They did provide us some

4    of their registration, some vehicles that are in different

5    names, not John Peters.  So, you know, the simple answer is,

6    unfortunately, I don't know because I don't have the

7    documentation.

8            MR. ST. LAURENT:  Your Honor, if I can just make a

9    couple of factual points.  One is that the summons that John

10   Peters was issued on November 15, 2012 lists John Peters

11   Professional Limousine Corp. as the, quote, registered owner.

12   In examining the uncovered data, which for 2015, which is --

13           THE COURT:  What do you mean "the uncovered data"?

14           MR. ST. LAURENT:  The city agreed to provide us

15   detailed files as to one out of five of every seizures for

16   2015.  And it appears, based on my review of the records, we

17   have 341 files that were produced.  Over 91 percent of those

18   files contain a photocopy of the vehicle registration of the

19   vehicle that was seized and that was subsequently retrieved by

20   the owner.  And it seems very likely to me that exactly the

21   same thing happened in this case for 2012, and that once we get

22   to the data for 2012 we will see exactly that same set of

23   documents, showing John Peters Professional Limousine was the

24   registered owner of that car, which I believe is dispositive on

25   the question of whether they have standing to contest the

GAJAHARAps

1   seizure and to be a plaintiff in this case, which is, I think,

2   the ultimate question we're trying to reach.

3        THE COURT:  In any event, do you have any registration

4   data that has not been produced for vehicles that you owned

5   from December 2010 through the present?

6        MR. ST. LAURENT:  We have gone back to the client,

7   after our meet-and-confer, and we've asked to look to see if

8   there's any registration data for other vehicles or for this

9   vehicle in particular, and he's going to look.  I was hoping to

10  tell him he didn't have to, but we've asked him to look.

11       THE COURT:  If he's got it, he's got to produce it.

12       MR. ST. LAURENT:  I understand.

13       THE COURT:  And not -- OK.

14       MS. SELVIN:  We know for a fact -- as I mentioned with

15  the TLC base, there are three registrations also they didn't

16  provide that we know they filed with the city at some point.

17  So it does appear --

18       THE COURT:  But at what point?

19       MS. SELVIN:  Fairly recently.  Again, these are the

20  active vehicles on their base, so presumably these would be

21  within the last year or two.  They're the vehicles they

22  currently represent to the city --

23       THE COURT:  Currently, OK.

24       MS. SELVIN:  -- are operating from that base, so

25  they're still active.

GAJAHARAps

1          So I don't know whether it's hubris or some -- I don't

2    know what's going on, but, you know, clearly they're aware that

3    the city could track down some of this information, and yet

4    we're still being told repeatedly, that's all they have, that's

5    all they have.  We know for a fact that isn't true, which of

6    course now calls into the question the rest of the

7    representations about stuff that's missing.

8          MR. ACKMAN:  Sorry.  What is not true?  The list

9    provides all the information that would be on the registration

10   cards.  It would be the exact same information, specifically

11   the VIN number, the registered owner, and the tag number.

12         THE COURT:  Right.  But you were supposed to produce

13   the registration number if you have it.

14         MR. ST. LAURENT:  Yes.  And we did.

15         MR. ACKMAN:  And we did.  But he apparently does not

16   have it for this 2012 car.  He said he would look again.

17         THE COURT:  What your adversary is telling me is, he

18   managed to produce it for other purposes, in connection with

19   the base.

20         MR. ACKMAN:  With the base.

21         THE COURT:  Correct.

22         MR. ACKMAN:  That doesn't mean he still has it.

23         THE COURT:  This litigation has been going on for a

24   long time.  It seems hard for me to understand why he hasn't

25   gotten all of his vehicle registration data all in the same

GAJAHARAps

1      place.

2              MR. ACKMAN:  He might.  But I don't think he was on

3      notice that that registration card would be necessary to

4      produce.  He has the data, and he did produce the data, exact

5      same data.

6              THE COURT:  Produce the cards, if he has them.

7              MR. ST. LAURENT:  Yes.  We will, your Honor.

8              THE COURT:  All right.  So you get that.

9              OK.  Now, insurance.  They have produced the policy.

10             MS. SELVIN:  If they're prepared to represent that the

11     vehicle that's at issue was on that policy at whatever time

12     they owned it and whenever they disposed of it, which, I'd like

13     an explanation exactly when this car was disposed of, I will

14     accept that representation.

15             THE COURT:  OK.  And, again, why do you need to know

16     exactly when it was disposed of?

17             MS. SELVIN:  Because --

18             THE COURT:  Again, let me just be clear.  At the end

19     of the day, the city is going to be paying their legal fees.

20     If you need the information, that's one thing.  And I'm happy

21     to entertain you in terms of dealing with these disputes.  But

22     I just, assuming it was registered to them, the date that they

23     disposed of the car, I am struggling to understand the

24     relevance.

25             MS. SELVIN:  Well, they represented that they also

GAJAHARAps

1  discarded all the vehicle documentation regarding the car as

2  soon as it left their possession, which I find hard to believe

3  for a licensed limousine company.

4        THE COURT:  Focus on my question.

5        MS. SELVIN:  OK.  But I presume around the time that

6  they disposed of is when they're claiming that they disposed of

7  all the vehicle documentation.  I would like to know if that

8  happened after this litigation started.

9        THE COURT:  Oh, so this is all about spoliation.

10 You're only focused on spoliation.

11       MS. SELVIN:  Not -- just for that one topic.

12       THE COURT:  So that's the only reason you are

13 interested in when they disposed of that vehicle.

14       MS. SELVIN:  Of that car, yeah.

15       THE COURT:  Is there anything else that the only

16 reason you want it is for a spoliation claim?

17       MS. SELVIN:  No.

18       THE COURT:  OK.  Find out when they disposed of the

19 car.

20       MR. ST. LAURENT:  We will, your Honor.

21       THE COURT:  That's the car that was seized in 2012.

22       MS. SELVIN:  Yes.

23       MR. ACKMAN:  It doesn't have a date.

24       MR. ST. LAURENT:  He doesn't have a date for all the

25 vehicles.

GAJAHARAps

1          MS. SELVIN:  And, Judge, when they disposed of the

2     documentation relating to that car.

3          THE COURT:  No.

4          MS. SELVIN:  No?

5          THE COURT:  You asked when they disposed of the car.

6     That's what you asked for.

7          MS. SELVIN:  Can I amend that to also add --

8          THE COURT:  No.

9          MS. SELVIN:  -- just whatever documentation they have

10    for the car?

11         THE COURT:  Based on everything I've heard about John

12    Peters Limousine, they're not going to have that information.

13         MS. SELVIN:  OK.

14         THE COURT:  I'm just, I'm extremely skeptical that

15    they will be able to come up with that information.  And I'm

16    just buying myself another dispute, that's not relevant.

17         OK.  That brings us to the titles that are being held

18    by the financing companies.  Tell me why you need titles.

19         MS. SELVIN:  Judge, as pointed out, under

20    Administrative Code Section 19-506, the owner of a vehicle is

21    defined, it references to the New York State Vehicle and

22    Traffic Law.  And then New York State Vehicle and Traffic Law

23    references titled owners of the vehicles.

24         THE COURT:  Yes.  But you don't ticket GMAC.

25         MS. SELVIN:  Actually, we have ticketed rental

GAJAHARAps

1 companies.  We have.

2          THE COURT:  A rental company is different from a

3 financing company.

4          MS. SELVIN:  I know.  Well, if they're the registered

5 owner, we have ticketed them.  And I can represent to the

6 Court, for example, these attorneys have another lawsuit that's

7 now pending before Judge Abrams by the name of DeCastro.

8          THE COURT:  Right.

9          MS. SELVIN:  One of their plaintiffs is a gentleman I

10 the name of Michael Walter, who was apparently an Uber driver

11 and leased the vehicle from an entity by the name of Luxury

12 One.  Luxury One had been ticketed.  It had pled guilty.  And

13 it had multiple violations, which, according to the law under

14 19-506, made that vehicle subject to forfeiture, which means it

15 shouldn't be in this case.

16          THE COURT:  It's not in this case.

17          MS. SELVIN:  This is just about first-time violators

18 with straight play.  It's if a multiple-violating vehicle, I'm

19 pointing out, it's not just the registered owner.  It's the

20 titled owner, which, under the definition of VTL, it can be a

21 lessor or bailee.  Obviously a very individualized

22 investigation.

23          But if there were -- for example, the John Peters

24 vehicle, if GMAC was their titled owner and if it turns out

25 GMAC had two or more violations in the past 36 months, that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

GAJAHARAps

1   vehicle is eligible for forfeiture and shouldn't be in the

2   suit.

3            THE COURT:  I don't buy that.  That's the silliest

4   thing I've ever heard of.  I can't believe the city is arguing

5   that.

6            MS. SELVIN:  It's set forth in the law, Judge.

7            THE COURT:  It's the silliest thing I've ever heard

8   of.

9            MS. SELVIN:  That's what the law says.  The law says

10  if the vehicle owner has two or more violations within the past

11  36 months, that vehicle is eligible for forfeiture.  The

12  section refers to the owner definition in the New York State

13  Vehicle and Traffic Law.  That definition includes titled

14  owners.

15           THE COURT:  It might.  But your argument is silly.

16  The notion that JPMorgan Chase, who may own, own because they

17  still hold the title because there are outstanding car loans,

18  they could hold thousands of cars.  The idea that the city is

19  going to say, well, because one of JPMorgan Chase cars -- they

20  don't even know that it was being held by JPMorgan Chase,

21  because who cares who had the title, during a car loan.  What

22  you care about is the registered owner.  They're the ones with

23  the current interest in the car.  The financing company is

24  holding the title as security.

25           MS. SELVIN:  Well, first of all, typically I think

GAJAHARAps

1    with a loan, the financing company would not be the titled

2    owner.  It would be listed as a security interest on the --

3         THE COURT:  I think it depends.  And certainly, with

4    leased vehicles, the title never moves.

5         MS. SELVIN:  Usually, yes.  Having said that, as I

6    pointed out, their client leased from Luxury One.  Luxury One

7    had pled guilty to multiple 19-506 violations.

8         MR. ACKMAN:  Your Honor --

9         THE COURT:  You can deal with that another day.  This

10   is trying to find out who JPMorgan -- "JPMorgan"! -- John

11   Peters Limousine is leasing their cars from, on the theory that

12   somehow that means they're not a first-time violator on

13   November 15, 2012 because the leasing company had previously

14   had a car seized?

15        MS. SELVIN:  If they had convictions of 19-506, within

16   the prior 36 months.

17        THE COURT:  They, that is to say, a person driving a

18   car that they held title to but was leased to a third party.

19        MS. SELVIN:  I'm not sure I just followed what you

20   said.  But I'm talking about the leasing company.

21        THE COURT:  Right.

22        MS. SELVIN:  For example, I'm assuming at this point

23   they leased the vehicle.  They haven't determined this for me,

24   but I think that's a safe assumption at this point.  So I'm

25   assuming someone else is listed on the title.  If that entity

GAJAHARAps

1   or individual received 19-506 violations and was found guilty,

2   convicted --

3               THE COURT:  In connection with a different car.

4               MS. SELVIN:  Even with a different car.  It doesn't

5   have to be the same car under the law.  It just says if the

6   owner has two or more violations in the past 36 months.

7               THE COURT:  You're telling me the city has enforced

8   the law that way.

9               MS. SELVIN:  Well, but that's subject of our other

10  lawsuit, DeCastro.

11              THE COURT:  Has the city ever enforced the law that

12  way?

13              MS. SELVIN:  We have not, in the past three years,

14  filed any forfeiture actions.

15              THE COURT:  Again, this just strikes me as kind of

16  asymmetric in an odd way.  Usually it's the plaintiffs that are

17  driving the defendant crazy.  Here it's you're trying to drive

18  them crazy, with that -- just, there is no way that's a

19  reasonable reading of the law.

20              MS. SELVIN:  Judge, I would disagree.  I think title

21  information is very indicative of true ownership of the vehicle

22  and I think that's represented in the New York State Vehicle

23  and Traffic Law, which provides that that is prima facie

24  evidence of the information that's on it.  Of course --

25              THE COURT:  I think people who lease vehicles -- I've

GAJAHARAps

1    never been a lessor of a vehicle -- I think they would be

2    shocked to hear that for all intents and purposes they're not

3    the owner of the car during the period of the leasehold, and

4    that Honda or whoever is leasing the car really is only the

5    owner in the sense that it's being operated via a leasehold,

6    not in the sense that they have any control whatsoever over

7    what's being done with that car.

8        MS. SELVIN:  Judge, I will say under the owner

9    definition under the VTL, it does reference lessees, and it

10   mentions how you have to have exclusive control for more than

11   30 days.  So obviously there could be leases where people have

12   under 30 days and they would not be covered.

13       THE COURT:  That would be a little different.  That

14   would be a different situation.

15       MS. SELVIN:  Also, if I can amend my prior

16   representation regarding forfeitures, when I was mentioning

17   that, I'm referring to TLC-proceedings forfeitures under

18   19-506(h)(1).  I'm actually personally aware that the New York

19   City Police Department does seize leased vehicles, and does

20   commence forfeiture actions.  But then there is an innocent-

21   owner defense.

22       THE COURT:  Yes.

23       MS. SELVIN:  But it's an affirmative defense that must

24   be pled to get the car back.

25       THE COURT:  But of course.  But they're not going to

GAJAHARAps

```
 1   say, you, Honda, because these other people, several other
 2   operators of leased vehicles from Honda have done bad things,
 3   therefore when this other driver, who has leased a car from
 4   you, does something bad, you're no longer an innocent owner,
 5   because you've had all these other cars seized for narcotics
 6   violations.  I mean, yes, they were an owner, but the car for
 7   all intents and purposes is being run other than on a rental
 8   car, where you've got a very short-term lease.  The notion that
 9   these cars are anything other than being owned by the lessee, I
10   guess, just seems crazy to me.
11              MS. SELVIN:  They're not listed as the titled owner.
12   That means someone else has an ownership in the vehicle, and to
13   the extent, again, under the law, which is not being challenged
14   in this case, it's the New York State Vehicle and Traffic Law
15   definition of what an owner is.
16              THE COURT:  I think for purposes of their damages,
17   it's not going to matter.
18              MR. ACKMAN:  The -- sorry.
19              THE COURT:  You usually don't help yourself with me.
20   Just telling you.  I'm doing fine on this.
21              MR. ACKMAN:  You are.
22              THE COURT:  Your concern is whether they've got enough
23   of an interest in these cars that they can get damages by
24   virtue of the fact that they were deprived of the use of their
25   vehicles.  Whether someone else might have a claim too is a
```

GAJAHARAps

1   different story.

2           MS. SELVIN:  It also goes to standing, your Honor.

3   And I can represent to the Court, we're going to have proof for

4   the Court, Michael Harrell is the registered and the title

5   owner of the vehicles.

6           THE COURT:  He is out.

7           MS. SELVIN:  I know.  But I think we have -- he's on

8   the list a lot.  He was cited 12 times.  And he came and told

9   some stories multiple times.

10          THE COURT:  But he's going to be out.

11          MS. SELVIN:  No, but he's also going to be on the list

12  multiple times, as is his mother.  And we think we are going to

13  have proof for you that he is not the legitimate owner of that

14  vehicle, even though he is listed as the registered owner.

15          THE COURT:  We are not talking about Harrell.

16  Harrell, unless he shows up in the next two weeks, is going to

17  be out.  So now you're dealing with John Peters.  So the

18  question is, why, what difference does it make whether some of

19  these vehicles are leased vehicles versus owned vehicles, for

20  purposes of whether they were deprived of a real possessory

21  interest unlawfully by the city?

22          MS. SELVIN:  Then I think at a minimum we should get a

23  copy of the leasing agreement, if they have a copy of it, that

24  shows they had it for more than 30 days, exclusive use.  And as

25  I pointed out, we do believe the title owner is relevant.

GAJAHARAps

1        THE COURT:  You keep saying that, but you haven't told

2    me why they're relevant.

3        MS. SELVIN:  Well, I, I don't think your Honor --

4        THE COURT:  Make your record.  I do not understand why

5    they are relevant.

6        MS. SELVIN:  Under 19-506(h)(2), which is the

7    forfeiture provision, if a vehicle owner has two or more

8    convictions in the past 36 months, that vehicle is subject to

9    forfeiture.  If it turns out their titled owner has two or more

10    convictions in the prior 36 months, our argument would be that

11    vehicle seizure is not properly in this case.  This case only

12    deals with first-time violations.

13        THE COURT:  OK.  You are free to make that argument.

14    You're not going to get very far.  But you can preserve it for

15    the Second Circuit.  Again, I don't think that reflects, based

16    on what anyone has told me, how the city actually does this,

17    does these seizures.

18        So I'm not going to require that.  If you have the

19    lease, if you have the leases, if they are still in your

20    possession, custody, or control, produce them.

21        MR. ST. LAURENT:  OK.  Yes, your Honor.

22        MR. ACKMAN:  I'm sorry, for all the cars or just this

23    one car?

24        THE COURT:  For all of them, if you have them.

25        MR. ACKMAN:  OK.

GAJAHARAps

```
 1           THE COURT:  Again, they're going to produce them.

 2   You're running up their costs.  That's all I'm saying.  You're

 3   running up their costs for issues and for documents that, at a

 4   minimum, I think have questionable relevance.  But if the city

 5   wants to do that, I'm going to order them to be produced.

 6           MR. ACKMAN:  Actually, I'm a little confused.  You're

 7   ordering the title be produced or the leasing agreement?

 8           MR. ST. LAURENT:  No, the leasing agreement.

 9           THE COURT:  The leasing agreement.

10           MR. ST. LAURENT:  It's a different document.

11           THE COURT:  The lease between John Peters and whoever

12   the leasing company is.  Right?

13           MR. ACKMAN:  That's not what they asked for

14   previously.

15           MR. ST. LAURENT:  Correct.

16           THE COURT:  This may have been included in what they

17   asked for.  I thought they asked for every possible document

18   that relates to these cars.

19           MS. SELVIN:  I actually did ask for that information

20   in our first request for documents.

21           THE COURT:  I thought it was somewhere.

22           MS. SELVIN:  Yes.

23           THE COURT:  It's not the titles, which you have

24   represented you do not have.  To the extent you have titles,

25   you have already produced them.
```

GAJAHARAps

 1          MR. ST. LAURENT:  Yes, your Honor.

 2          THE COURT:  The titles are held wherever they're held.

 3          OK.  Does that cover everything?

 4          MR. ACKMAN:  Can we just confer for one second?

 5          THE COURT:  Yes, of course.

 6          (Pause)

 7          MR. ST. LAURENT:  Your Honor, thank you for giving us

 8     the opportunity to confer.

 9          Mr. Ackman, in defense of our client, has made the

10     point which I think is a valid one to me, which is that

11     production of the leasing agreements is going to impose a

12     meaningful burden on Larry Chafetz, who is the main person we

13     deal with over there.  These are relatively substantial

14     documents; I think 40 pages is what he thought they would be.

15          MR. ACKMAN:  I have no idea.  I'm sure they're not one

16     page.

17          MR. ST. LAURENT:  And it is going to require some

18     significant administrative work for him to do.  And I will tell

19     you it is sometimes difficult to get him, you know, to focus on

20     production of these documents given the amount for his company

21     that is personally involved in this case.

22          And, again, just using the proportionality analysis

23     under Rule 26, I mean, my question really is, which it has

24     been, you know, with the Court and with opposing counsel, is,

25     how does this help, to have leasing agreements for vehicles

GAJAHARAps

1    that were all owned or operated after the seizure in question

2    in 2012?  I understand the city has made the point this

3    afternoon that there's a possibility, a remote one, that a

4    vehicle was seized after it was leased for less than 30 days

5    just coincidentally, it was a newly leased vehicle, and that

6    there might be some liability for the lessor under such

7    circumstances.  But I do not understand how that would require

8    the production of any lease agreements that were entered into

9    after November 15, 2012.  So I would ask the Court to

10   reconsider that requirement.

11            THE COURT:  Why are they relevant?

12            MS. SELVIN:  Judge, obviously, we were asking for

13   information for the entire proposed class period, as you know.

14            THE COURT:  Yes, but why?

15            MS. SELVIN:  Well, as you also may recall, I mentioned

16   how some of the difficulties we were encountering just with our

17   own records and databases, that occasionally stuff was put in

18   in different forms, different directions, and that's why we

19   were dependent on, to an extent, the plaintiffs providing

20   information regarding all of their vehicles during the time

21   period and all their information.  And the Court agreed.

22            And the Court noted, I mean, compared to what the city

23   is doing in discovery in this case, this is very limited

24   discovery they're being asked to produce.  You know, at this

25   point --

GAJAHARAps

1          THE COURT:  Let me make sure I understand your point.

2    Your point is that leases entered into after November 15, 2012

3    could somehow relate back.  How would that relate back to

4    whether the 11/15/2012 seizure was lawful?

5          MS. SELVIN:  Well, Judge, first of all, this is

6    necessary to determine actually what cars could be even covered

7    in this proposed class period of the named plaintiffs.

8          THE COURT:  Excuse me.  But for John Peters, this is

9    only first-time seizures, right?

10          MS. SELVIN:  Yes.

11          THE COURT:  So it's only the 11/15/2012 seizure, and

12    then it would be -- right?  That's a guilty, right?

13          MR. ST. LAURENT:  Yes.  Yes, your Honor.

14          THE COURT:  So that's the only one that's covered.

15          MS. SELVIN:  As far as we're aware.

16          THE COURT:  But it can only be the one that's covered.

17          MS. SELVIN:  Well, unless there were other vehicles,

18    and as I pointed out --

19          THE COURT:  But how could any other vehicle be a

20    first-time seizure?

21          MS. SELVIN:  If they got an owner charge, likes

22    Michael Harrell is on the list seven or eight times.

23          THE COURT:  Forget Michael Harrell.

24          MS. SELVIN:  I'm just using him as an example.  I

25    can't be for certain that they didn't have other vehicles that

GAJAHARAps

1    were seized.  They're portraying now that that's a first-time

2    violation.

3            THE COURT:  So that any seizure after that is not a

4    first-time seizure.

5            MS. SELVIN:  If I recall correctly, they -- did they

6    beat the charge?

7            MR. ST. LAURENT:  No.

8            MS. SELVIN:  Or did they plead guilty?  Forgive me.  I

9    don't --

10           MR. ST. LAURENT:  No.  I'll pull it up.  November 16,

11   2012, they pled guilty.  And, again, that's a document they

12   provided to us.

13           Your Honor, if I just can briefly address another

14   point.  The city has represented to this Court and to us that

15   it's capable of identifying first-time violators and that it

16   has done so for 2014 and 2015.  My understanding, although the

17   city has never confirmed or denied it, is that they have a

18   computer program that allows you to do searches to find out if

19   someone is a first-time violator or if they have prior

20   convictions.  I think they have every piece of information that

21   they need to identify whether or not this was the first time

22   John Peters had been convicted of a 19-506 offense.  That being

23   said, I don't see how any lease agreement entered into after

24   November 16, 2012 is in any way going to help.

25           THE COURT:  Any new lease.

GAJAHARAps

1          MR. ST. LAURENT:  Any new lease, yes.

2          THE COURT:  That's a question, although I have to say

3    that I think once you do that, the likelihood of getting any

4    lease agreements is low, right, because then the lease

5    agreements, you're talking about leases that are more than four

6    years old.  So just focusing on a car that was leased after

7    their first conviction or what we believe to be their first

8    conviction on November 16, 2012, why are those relevant?

9          MS. SELVIN:  Judge, if they're prepared to represent

10   that the November 2012 vehicle and incident is the only

11   incident that John Peters is putting forth in this case, and

12   that includes hypothetically if this case is certified as a

13   class, that that's the only incident and the only vehicle they

14   are seeking recourse for, then I have no objection to not

15   seeking information beyond that.

16         THE COURT:  OK.  I will hold on their representation.

17   Assume they won't do that.  Why is it relevant?  This is me

18   asking.  Why is a car that was leased after what they're

19   currently representing to be their first conviction -- any

20   subsequent seizure is not going to be --

21         MS. SELVIN:  I think we are entitled to understand

22   their vehicle ownership during the proposed class period

23   they're asking for recourse for.

24         THE COURT:  Why?

25         MS. SELVIN:  Because potentially they may have other

GAJAHARAps

1     incidents they're going to be seeking money from the City of

2     New York about.

3               THE COURT:  How can they?

4               MS. SELVIN:  Well, that's my question.

5               THE COURT:  This class, much to their dismay, is only

6     about first-time violators.  That, they're saying, is the first

7     time.  What I know is a vehicle seized in 2013 can't be the

8     first time, because they kind of lost their virginity in 2012,

9     right, so it can't be -- that's why I'm struggling to figure

10    out what the relevance of subsequently leased cars could be.

11              MS. SELVIN:  Again, it's just noting the history of

12    this proposed class representative during this proposed class

13    period.

14              THE COURT:  That's not enough to make them incur those

15    costs.  So the question would be, leases that you currently

16    have that were in effect prior to November 16.

17              MR. ST. LAURENT:  Yes, your Honor, 2012.  Yes, your

18    Honor.

19              THE COURT:  And that presumably has some vague

20    relevance if you want to double-check that the November 15,

21    2012 seizure was in fact the first in three years.

22              MS. SELVIN:  Judge, to the extent they claim that they

23    don't have those agreements anymore --

24              THE COURT:  Which my guess is they won't.

25              MS. SELVIN:  -- can we at least get a representation

GAJAHARAps

1    from them as to who were the titled and registered owners on

2    the vehicles before November 12, 2012?

3            THE COURT:  Who was the what?

4            MS. SELVIN:  Who were the titled and registered owners

5    on the vehicles.

6            MR. ACKMAN:  Registered owners are always JPPL.

7            MS. SELVIN:  That's not true, because you provided us

8    copies of registrations that had a different name.

9            THE COURT:  I don't even know what cars you're talking

10   about, though.

11           MS. SELVIN:  The vehicle that was seized as well as

12   the vehicles that were preceded on the list were earlier.

13           THE COURT:  "Preceded" meaning they were owned

14   earlier?

15           MS. SELVIN:  Right.  That, they're saying, they have

16   going back to 2010.  Can they tell us who were the titled and

17   registered owners, and then we can decide if we want to go

18   third-party subpoena someone for the information?

19           THE COURT:  Do you have that information?

20           MR. ACKMAN:  I think we have already told them that

21   the registered owner --

22           THE COURT:  The registered owner is JPPL, except for

23   when it's not, apparently.

24           MR. ACKMAN:  That's news to me, that it's ever not.

25   But I think the list indicates the ownership.  Do we have the

GAJAHARAps

1    list here?

2              MS. SELVIN:  It doesn't.  It's just the same number.

3              Judge, just for the record, one of the registrations

4    they provided had a name of a company by the name of Advantage

5    Fund COM Cap in Lake Success, New York.

6              THE COURT:  That sounds like the financing company.

7              MS. SELVIN:  I don't know.  I mean, it is a leased

8    vehicle.  And that would be the name that's on the

9    registration.

10             MR. ACKMAN:  I stand corrected.  The list does not

11   indicate who the registered owner is.  I assume the owner is

12   always JPPL.  And the titled owner could be the lease holder.

13             THE COURT:  OK.  So to the extent you have documents

14   showing the registered owner and title holder, if you have

15   it --

16             MR. ST. LAURENT:  Yes, your Honor.

17             THE COURT:  -- for vehicles owned from December 2010

18   through 11/15/12, you are ordered to produce that as well.

19             MR. ST. LAURENT:  Yes, your Honor.

20             THE COURT:  OK.  Anything else?

21             MR. ST. LAURENT:  On the plaintiffs' production, no,

22   your Honor.  I just have a few general points about discovery

23   and then one request.

24             THE COURT:  Hang on.

25             MR. ST. LAURENT:  Yes, your Honor.

GAJAHARAps

 1          THE COURT:  Anything further from the defendant?

 2          MS. SELVIN:  Not on this topic, but I also have

 3    something else that's come up.

 4          THE COURT:  OK.  All right.  What does the plaintiff

 5    have?

 6          MR. ST. LAURENT:  So just briefly, your Honor, we're

 7    obviously proceeding with discovery.

 8          THE COURT:  Aren't you almost done?

 9          MR. ST. LAURENT:  Well, your Honor, we have -- there

10    are five years, one partial year, two complete years, that

11    we're still awaiting information on.

12          THE COURT:  Oh, I'm sorry, yes, the city.

13          MR. ST. LAURENT:  So we still need 2011 and then all

14    the information for 2012 and 2013.  And we've been conversing

15    with the defendants about when that will be produced, and

16    hopefully that will be forthcoming shortly.

17          We also have been discussing with the city the need

18    for more of the one-out-of-five cover data, which we have

19    examined from 2012 and, as I think the Court predicted, in the

20    vast majority of the cases, in the out-of-five production, I

21    don't think there can be any realistic question as to the fact

22    that there is no dispute over the ownership of the vehicle.

23    The vehicle owner is the registered owner.  The person who

24    shows up at the hearing, the person who claims the vehicle in

25    the vast majority of the cases, more than 90 percent of the

GAJAHARAps

```
1    time.  When it's a corporate owner, they execute a power of

2    attorney form, with a notarized stamp indicating that the

3    person is authorized to pick up the vehicle.  That's my review

4    of the documents.

5           Assuming that that is consistent for '14, '13, '12,

6    and a part of '11, I don't know if we need any more documents

7    from the city, because it seems that any question about

8    ownership, at least as far as class certification

9    considerations go, has been addressed by what has been produced

10   by defendants and maintained by the defendants.

11          They may have a different view about it, but that's

12   our position today.

13          And the other --

14          THE COURT:  So that's good news.

15          MR. ST. LAURENT:  I think that's good news.  I feel

16   like it's good news.  But we'll see how the defendants view it.

17          In terms of the class certification motion, we would

18   seek to just move up the date for the filing of our papers.

19          THE COURT:  "Move up" meaning make it sooner?

20          MR. ST. LAURENT:  Make it sooner.  And then obviously

21   defendants can respond according to the court schedule or any

22   other schedule.

23          THE COURT:  I don't think I precluded you from making

24   it earlier.

25          MR. ST. LAURENT:  No, you did not.
```

1          THE COURT:  You can make it whenever you want to.

2          MS. SELVIN:  Judge, we would ask that it would be held

3    in abeyance until we complete discovery.  We have scheduled

4    deposition on a number of the plaintiffs that are going through

5    like the end of November.

6          THE COURT:  That's fine.  They can make their motion

7    whenever they want to.  You're entitled to discovery.  Just let

8    me know when you want to respond.

9          MS. SELVIN:  Right now you had it set that we were

10   going to respond by, I think, January 6.  So assuming they file

11   earlier, I think we're still fine with that date.

12         THE COURT:  That's fine.

13         MS. SELVIN:  But I just wanted to let you know that

14   discovery is still ongoing, which we think is relevant to any

15   class certification motion.

16         MR. ST. LAURENT:  And we don't dispute that, your

17   Honor.  They're entitled to depose our plaintiffs.

18         THE COURT:  OK.  If you can find them.

19         MS. SELVIN:  That's what I was going to say.  You said

20   it for me.  I was going to say, except for Michael Harrell.

21         MR. ST. LAURENT:  That's also fair.

22         THE COURT:  Michael Harrell was given a bus ticket by

23   the plaintiffs and told to go to California.

24         That was a joke.  I'm sure that didn't happen.

25         MR. GALLAGHER:  It was a first-class flight, your

GAJAHARAps

1     Honor.

2            MR. ST. LAURENT:  I think the only question we have in

3     terms of discovery is whether defendants think that they're

4     going to be able to provide --

5            THE COURT:  Within the time frame.

6            MR. ST. LAURENT:  Within the time frame.

7            THE COURT:  How is that going?

8            MS. SELVIN:  Judge, as I've represented to defense

9     counsel and as I previously noted to the Court, I think we're

10    close on a two-month kind of time frame for this year, so right

11    now we're hoping that discovery will be provided for the 2013

12    year by the end of this month or effective earlier next month.

13    And we still are aiming for the December 1st date for the

14    remainder of the 2012 and partial 2011 data.  I do just want to

15    mention for the Court, and I've already mentioned this to

16    plaintiff's counsel, there is a slight twist coming up with the

17    2011 and 2012 data.  Knights Towing, which was the entity that

18    the city entered into a contract with for a time, that didn't

19    start till the latter part of 2012.  It turns out a lot of

20    vehicles prior to that were taken to various pounds all over

21    the place.  So we're trying to track down that information.  If

22    there is an issue, I will absolutely let everyone know sooner

23    rather than later.  And whether we can even get the

24    information, I think we can get a lot of it.  But it may not be

25    as complete as the information we provided for the latter

GAJAHARAps

1    years.

2              THE COURT:  OK.

3              Anything further from the defendant?

4              MS. SELVIN:  There is one other issue that's coming

5    up, and since we're before you, I thought it would be a good

6    time to bring it up.

7              THE COURT:  Yes.  Let's do everything, as long as

8    we're here.

9              MS. SELVIN:  As I mentioned earlier, first of all,

10   there is this companion case that's now been filed by

11   plaintiff's counsel called DeCastro, which is before Judge

12   Abrams.

13             THE COURT:  Somehow I remember she has a voodoo doll,

14   sticking the pins in.

15             MS. SELVIN:  I'm only mentioning this to your Honor.

16   It's an issue that we may have to bring up before Judge Abrams,

17   because something that's occurred in that case I feel is

18   potentially impacting a court order in this case.  And that's

19   why I wanted to bring it to your attention.

20             Plaintiff's counsel has served a third-party subpoena

21   on Knights Towing.  And just to give the Court background, as

22   of now, Judge Abrams says no class discovery in this case, just

23   discovery regarding the named plaintiffs.  As part of that

24   third-party subpoena -- I brought a copy of it -- the

25   plaintiffs are asking for very expensive information regarding

GAJAHARAps

1    all vehicle seizures over an unlimited amount of time,

2    including, you know, payment information, relevant seizure

3    information.  Obviously that case does not involve first-time

4    violators.  That's this case.  And your Honor has issued an

5    order in this case directing that information regarding people

6    should be maintained confidential in redaction.  And obviously

7    we're concerned, and I've noted this issue to plaintiff's

8    counsel, that I'm concerned that that subpoena is improperly

9    circumventing the court order in this case regarding keeping

10   that information confidential regarding people other than the

11   one-out-of-five 2015 seizures that we provided, which are

12   subject to a confidentiality order, as you may recall.

13           THE COURT:  Right.  Yes.

14           MS. SELVIN:  So I did think I should bring that to the

15   Court's attention, and to the extent we can discuss this now,

16   that that subpoena, at least for the purposes of this case,

17   will be modified regarding not asking for information regarding

18   the people who are the subject of this case, then I will take

19   up with Judge Abrams the propriety of the rest of it.

20           THE COURT:  OK.

21           Do you want to be heard?

22           MR. ST. LAURENT:  As an initial matter, it doesn't

23   seem unreasonable to me.  We obviously have -- the Court has

24   been supervising discovery and has directed how it's going to

25   proceed in this case, and if the defendants are confident that

GAJAHARAps

1    they can accurately sift out the members of this class from the

2    members of the potential or -- or this potential class from the

3    members of the potential DeCastro class, I would accept the

4    representation.  And then we can sort out whatever we need to

5    do in terms of the confidentiality of potential class members

6    in DeCastro in front of Judge Abrams.

7             MS. SELVIN:  As plaintiff's counsel is aware, to the

8    extent they need information, if -- and we have different

9    defenses, as you probably are aware, in the DeCastro case --

10   but if that goes away the way this case has gone, we're capable

11   of getting the information from Knights Towing regarding the

12   seizure and how much people are paying for towing and storage.

13   So I'm not sure why they felt compelled to serve a third-party

14   subpoena directly on Knights, but I'm just specifically

15   concerned, while we're here before you, about where their

16   subpoena is overly expansive and it could reveal information,

17   if there is a response to it, that is covered by

18   confidentiality orders here.

19            THE COURT:  So why don't you do that.  Meet and --

20            MR. ST. LAURENT:  Yes, your Honor.

21            THE COURT:  It sounds to me like you can work this

22   out.  If you need me to sign another order, I'm happy to do

23   that, but try to work it out between you so that everything

24   says what both sides need it to say.

25            MR. ST. LAURENT:  Yes, your Honor.  I think the

GAJAHARAps

 1   defense proposal makes sense, so we'll try to work it out.

 2           THE COURT:  Anything further?

 3           MR. ST. LAURENT:  Nothing from the plaintiffs.

 4           MS. SELVIN:  No.

 5           THE COURT:  I had something.

 6           MS. SELVIN:  One more thing, Judge.  So what's the

 7   actual resolution of our motion for sanction pursuant to Rule

 8   37?  Obviously besides, in part, knocking out Michael Harrell

 9   from this case, which I know you've indicated is now a

10   show-cause issue, we had asked for reasonable expenses

11   associated with the fact that obviously we spent a nice chunk

12   of time preparing for a deposition that never happened.  And we

13   never received information for him.  So we weren't particularly

14   thrilled with that.  I did think it was discourteous, at a

15   minimum.

16           MR. ST. LAURENT:  Your Honor, with regards to

17   plaintiff's counsel, we were informing defendants on an

18   almost-daily basis the week leading up to the deposition on the

19   fact that we could not confirm his appearance that date because

20   he simply was not responding to us, which is obviously

21   unfortunate, but it is something that happens from time to time

22   in these cases.

23           THE COURT:  All right.  I'm not going to rule on the

24   motion.  I'll hold it in abeyance.

25           I know what I was going to raise.  You've now got a

GAJAHARAps

1    fair amount of discovery.  You have now produced a fair amount

2    of discovery.  Have the parties talked settlement?

3            MR. ST. LAURENT:  We have not.  But we were, from

4    plaintiffs' side, we are planning to do so.  I think from the

5    defendants' side, I think the defendants need to understand how

6    many potential class members there are and have a rough sense

7    of their potential liability before they could sit down and

8    have meaningful discussions with us.  If they have that now,

9    then I would ask that we --

10           THE COURT:  I'm just basing it on, 2015 has been

11   produced, 2014 has been produced, 2013 is almost to be

12   produced.  That's more than half of the class period.  I'm

13   willing to bet that year over year there's not a lot of

14   difference.  But that's a total speculation.

15           MR. ACKMAN:  There is a substantial difference.

16           THE COURT:  There is?

17           MR. ACKMAN:  Apparently.  Well, there's a substantial

18   difference in the number of seizures and apparently there's a

19   substantial difference in the percentage that are first-time

20   straight play, according to their representations.

21           THE COURT:  And what's the difference?  Like what --

22           MR. ACKMAN:  Comes to 9 -- 6,000 to 9,000.  That's the

23   number of seizures.  We know the number of seizures because

24   they report that publicly.

25           THE COURT:  And you assume that number is correct, in

GAJAHARAps

1    that report.

2              MR. ACKMAN:  With no other information.

3              THE COURT:  It's a government static, so it's as right

4    as they can make it.

5              MR. ACKMAN:  Hello.  So it goes from like 6 to 9 in a

6    given year.  But then, one of the years that it was 6

7    something, they said only 17 hundred were first-time straight

8    play.  In another year, I think the percentage of first-time

9    straight play was substantially higher.

10             THE COURT:  So it's all over the map.  Nevertheless.

11             MR. ACKMAN:  They might know the numbers themselves,

12   but we don't.

13             THE COURT:  It still strikes me that you've got some

14   general ballpark of what the damages in this case are going to

15   be.  What do you think the damages are for a car?

16             MR. ST. LAURENT:  If it's towing and storage fee,

17   well, we would suggest, based on the Court's ruling on the

18   fines issue, which is now out of the case, that there be some

19   amount of recovery based on towing and storage fees that were

20   paid out of pocket for these individuals, and then some type

21   of, you know, garden-variety --

22             THE COURT:  Do they get that back if they're not

23   guilty?

24             MS. SELVIN:  Yes.

25             MR. ST. LAURENT:  Yes.  They're supposed to.  And I

GAJAHARAps

1    think that he almost always do.  I can't say it's a hundred

2    percent of the time.  But in the files I've seen it appears, it

3    gets zeroed out.

4              THE COURT:  So it's a fairly minor damage claim.

5              MR. ST. LAURENT:  I would say it's a fairly minor

6    damage claim.  But it is, you know, a loss of use, the

7    psychological discomfort, sort of akin to a false arrest case.

8    I understand it may be a small number, but it is a number that

9    would compensate people for that inconvenience.

10             THE COURT:  There is no doubt that getting your car

11   taken away from you is -- and then having to go get it has got

12   to be a major aggravation.

13             MR. ST. LAURENT:  Yes.

14             THE COURT:  But still.

15             MR. ST. LAURENT:  Yes.

16             THE COURT:  OK.

17             MS. SELVIN:  Obviously, Judge, you know, it varies

18   from incident to incident whether someone was actually driving

19   a vehicle, whether they got the vehicle, whether they paid for

20   the vehicle.

21             What I did say last time actually we were here is to

22   the extent they had a proposal, we're always willing to listen.

23   They haven't produced anything.  I haven't said at any point, I

24   think, that we needed to get more information on our end to

25   enter into any discussions.  Of course, you know, we're still

GAJAHARAps

```
 1    skeptical of the whole class certification situation, if you
 2    haven't picked up on that by now.  But I'm certainly always
 3    willing to listen.
 4              THE COURT:  Don't you have one or two of these drivers
 5    that are actually kind of normal John Q. Public who had their
 6    cars taken?
 7              MR. ST. LAURENT:  Yes, we do.
 8              THE COURT:  So they're going to have a class rep.
 9    They're going to have somebody, maybe.
10              MR. ST. LAURENT:  We do.  Pedro Camacho is a very nice
11    man.
12              MS. SELVIN:  He was the mistake, though.  He was the
13    mistake.
14              THE COURT:  His car still got taken.
15              MS. SELVIN:  I know, but he shouldn't have been taken.
16    He was a mistake.  If that's the best class rep they have, I
17    think we would have an issue.  He's not representative of
18    anyone.  He was a mistake.
19              MR. ST. LAURENT:  Your Honor, we'll make a proposal to
20    the defendants.
21              THE COURT:  Make a proposal.
22              I almost never do this, ordering people into mediation
23    where both sides aren't kind of willing to go, but I might in
24    this case, if you don't start talking to each other.  This
25    strikes me as a case that can and should be settled.
```

GAJAHARAps

1              That said --

2              MR. ACKMAN:  I think we can make a proposal within a

3    week or two.

4              MR. ST. LAURENT:  Yes, your Honor.  We'll do that.

5              THE COURT:  Good.  Anything further?

6              MR. ST. LAURENT:  Nothing further, your Honor.

7              THE COURT:  Anything?

8              MS. SELVIN:  No, your Honor.

9              MR. ST. LAURENT:  Thank you, your Honor.

10             THE COURT:  I don't think I had you scheduled to come

11   back in any time soon.

12             MR. ST. LAURENT:  This was the only appearance that's

13   on the calendar, your Honor.

14             THE COURT:  Perfect.  OK.  So the next time I'll see

15   you is going to be dealing with class certification.

16             MR. ST. LAURENT:  Yes, your Honor.

17             THE COURT:  OK.  Thank you.

18             MR. ST. LAURENT:  Thank you, your Honor.

19             MR. GALLAGHER:  Thank you, your Honor.

20                              o0o

21

22

23

24

25