Index No.  14 CV 7246 (VEC) (filed by ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL HARRELL, SUSAN CALVO, JOHN PETERS PROFESSIONAL LIMOUSINES, INC., JACKLYN RESTREPO, PEDRO CAMACHO, EAMON YUEL and YONG ZHANG individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, MEERA JOSHI, DAVID YASSKY and RAYMOND SCANLON,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:*
*Karen B. Selvin*
*Angelie Thomas*

*Tel:  (212) 356-2208*
*Matter No. 2014-033235*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. I

ARGUMENT ........................................................................................................................... 3

    POINT I ............................................................................................................................ 3

        PLAINTIFF'S MOTION FOR CLASS
        CERTIFICATION IS OVERBROAD. ...................................................... 3

    POINT II .......................................................................................................................... 14

        PLAINTIFFS FAIL TO MEET THE
        REQUIREMENTS OF RULE 23 FOR
        CERTIFICATION. ...................................................................................... 14

           A.   Plaintiffs Cannot Meet the Commonality and
                Typicality Requirements of Rule 23(a)(2) and
                (3). ............................................................................................ 15

           B.   Plaintiffs and Their Counsel Cannot
                Adequately Represent Absent Class Members
                as Required by F.R.C.P. 23(a)(4). ...................................... 17

    POINT III ........................................................................................................................ 28

        PLAINTIFFS FAIL TO MEET THE RULE
        23(b)(1)(A) REQUIREMENTS FOR CLASS
        CERTIFICATION. ...................................................................................... 28

    POINT IV ........................................................................................................................ 29

        PLAINTIFFS FAIL TO MEET THE RULE
        23(b)(3) REQUIREMENTS FOR CLASS
        CERTIFICATION. ...................................................................................... 29

CONCLUSION ....................................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adashunas v. Negley,
   626 F.2d 600 (7th Cir. 1980) ................................................................................10

Alabama v. Blue Body Co.,
   573 F.2d 309 (5th Cir. 1978) ...................................................................................4

Amchem Prods., Inc. v. Windsor,
   521 U.S. 591 (1997).................................................................................................28

In re Application for Appointment of Independent Counsel,
   766 F.2d 70 (2d Cir. 1985)......................................................................................10

Augustin v. Jablonsky,
   819 F. Supp. 2d 153 (E.D.N.Y. 2011) ...................................................................17

Berger v. Iron Workers Reinforced Rodman, Local 201,
   170 F.3d 1111 (D.C. Cir. 1999)..............................................................................17

Burley v. City of New York,
   2005 U.S. Dist. LEXIS 4439 (S.D.N.Y. 2005)........................................................3

Casale v. Kelly,
   257 F.R.D. 396 (S.D.N.Y. 2009) .............................................................................3

Catanzano by Catanzano v. Dowling,
   847 F. Supp. 1070 (W.D.N.Y. 1994).......................................................................4

In re Chrysler Corporation,
   2000 U.S. Dist. LEXIS 2332 (E.D. Pa. Mar. 2, 2000).............................................4

Consolidated Rail Corp. v. Town of Hyde Park,
   47 F.3d 473 (2d Cir. 1995)......................................................................................15

Darvin v. International Harvester Co.,
   610 F. Supp. 255 (S.D.N.Y. 1985) .........................................................................18

DeCastro v. City of New York et. al,
   16-CV-03850 (RA) ..................................................................................................19

Denney v. Deutsche Bank AG,
   443 F.3d 253 (2d Cir. 2006)...........................................................................10, 16

Duncan Living Trust et al. v. O'Connor, Davies, Munn & Dobbins, LLP,
    BC494236 (Ca. Sup. Ct., L.A. Cty 2012) ................................................................27

El-Nahal v. Yassky,
    2016 U.S. App. LEXIS 15767 (2d Cir. 2016) ......................................................6, 7

Fogarazzo v. Lehman Bros.,
    232 F.R.D. 176 (S.D.N.Y. 2005) .............................................................................4

In re Gaming Lottery Sec. Litig.,
    58 F. Supp. 2d 62 (S.D.N.Y. 1999) .......................................................................18

Gen. Tel. Co. of the Southwest v. Falcon,
    457 U.S. 147 (1982) ...............................................................................................14

Haitian Ctrs. Council v. McNary,
    969 F.2d 1326 (2d Cir. 1992), vacated as moot sub nom., Sale v. Haitian Ctrs.
    Counsel, 509 U.S. 918 (1993)..................................................................................3

Han v. Sterling Nat'l Mortg. Co.,
    2011 U.S. Dist. LEXIS 103453 (E.D.N.Y. 2011).............................................15, 18

Hartley v. Wells Fargo & Co,
    14-cv-05169 (E.D.N.Y.) ........................................................................................27

Haus v. City of New York,
    2011 U.S. Dist. LEXIS 155735 (S.D.N.Y. 2011) ..................................................16

Hnot v. Willis Group Holdings Ltd.,
    228 F.R.D. 476 (S.D.N.Y. 2005) .............................................................................4

Horvath v. Lindenhurst Auto Salvage,
    60 F.3d 120 (2d Cir. 1995)........................................................................................7

In Re: IPO Securities Litigation v. Merrill Lynch & Co., Inc. ("IPO"),
    471 F.3d 24 (2d Cir. 2006)..................................................................................3, 28

Kline v. Wolf,
    702 F.2d 400 (2d Cir. 1983)...................................................................................18

Koss v. Wackenhut Corp.,
    2009 U.S. Dist. LEXIS 34846 (S.D.N.Y. 2009) ...................................................20

In re Lloyd's Am. Trust Fund Litig.,
    1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. 1998) ......................................................21

Luedke v. Delta Airlines,
    155 B.R. 327 (S.D.N.Y. 1993).................................................................................4

Marisol A. v. Giuliani,
    126 F.3d 372 (2d Cir. 1997)............................................................................15

McBean v. City of New York,
    228 F.R.D. 487 (S.D.N.Y. 2005) ....................................................................4

Miranda v. City of Cornelius,
    429 F.3d 858 (9th Cir. 2005) .........................................................................22

Moore v. PaineWebber, Inc.,
    306 F.3d 1247 (2d Cir. 2002)........................................................................29

Muchnick v. Thomson Corp.,
    509 F.3d 116 (2d Cir. 2007)..........................................................................10

Myers v. Hertz Corp.,
    624 F.3d 537 (2d Cir. 2010)....................................................................15, 29

In Re: Nassau County,
    461 F.3d 219 (2d Cir. 2006)..........................................................................29

New Jersey Carpenters Health Fund v. Rali Series 2006-Q01 Trust,
    477 Fed. Appx. 809 (2d Cir. 2012)................................................................15

Norman v. Arcs Equities Corp.,
    72 F.R.D. 502 (S.D.N.Y. 1976) .....................................................................18

Rambarran v. Dynamic Airways, LLC,
    2015 U.S. Dist. LEXIS 97651 (S.D.N.Y. 2015)......................................28, 30

Robidoux v. Celani,
    987 F.2d 931 (2d Cir. 1993)..........................................................................16

Rothenberg v. Daus,
    08-cv-567 (S.D.N.Y.).....................................................................................26

Savino v. Computer Credit,
    164 F.3d 81 (2d Cir. 1998)............................................................................18

Singh v. Joshi,
    2016 U.S. Dist. LEXIS 107648 (E.D.N.Y. 2016)..........................................26

Sterling v. Veelsicol Chem. Corp.,
    855 F.2d 1188 (6th Cir. 1988) ......................................................................17

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,
    546 F.3d 196 (2d Cir. 2008)............................................................................3

In re Three Mile Island Litig.,
    87 F.R.D. 433 (M.D. Pa. 1980)....................................................................................17, 21

Toney-Dick v. Doar,
    2013 U.S. Dist. LEXIS 134315 ...............................................................................15, 17, 28

United States v. Rodriguez-Morales,
    929 F.2d 780 (1st Cir. 1991)..............................................................................................22

United States v. Velarde,
    903 F.2d 1163 (7th Cir. 1990) ..........................................................................................22

In re Visa Check/MasterMoney Antitrust Litigation,
    280 F.3d 124 (2d Cir. 2001)...............................................................................................14

Warth v. Seldin,
    422 U.S. 490 (1975)............................................................................................................10

Weisman v. Darneille,
    78 F.R.D. 669 (S.D.N.Y. 1978) .........................................................................................18

Williams v. Glickman,
    1997 U.S. Dist. LEXIS 1683 (D.D.C. Feb. 14, 1997) ............................................................4

Wynn v. N.Y. City Hous. Auth.,
    314 F.R.D. 122 (S.D.N.Y. 2016) ...............................................................................6, 25, 27

**Statutes**

Code § 19-506................................................................................................................5, 8

Code § 19-506(h)(2) ............................................................................................................8

Code § 19-506(h)(5)'s.........................................................................................................6

VTL § 128..........................................................................................................................6

VTL § 388(3) ......................................................................................................................6

**Other Authorities**

F.R.C.P. 23...................................................................................................................1, 3, 5

F.R.C.P. 23(a) ..........................................................................................................14, 17, 29

F.R.C.P. 23(a)(4)...............................................................................................................17

F.R.C.P. 23(b) ...................................................................................................................14

iv

F.R.C.P. 23(b)(1) ...................................................................................................................14

F.R.C.P. 23(b)(1)(A) and (b)(3) ............................................................................................14

F.R.C.P. 37 ..............................................................................................................................22

5 <u>Moore's Federal Practice</u>, § 23.24[4] (1999) .....................................................................16

New York City Administrative Code § 19-506(b)(1) ............................................................ *passim*

Rule 23(A)(2) and (3) .............................................................................................................15

Wright, <u>Miller & Kane, Federal Practice and Procedure</u> § 1760 (1986) ..........................................3

## PRELIMINARY STATEMENT

Plaintiffs contend that this case, which challenges the warrantless seizure of vehicles based on an alleged first-time violation of New York City Administrative Code ("Admin. Code") § 19-506(b)(1) – unlicensed for-hire activity -- should be certified as a class action under F.R.C.P. 23.  Defendants disagree.  As detailed herein and in the accompanying declarations of Edward Murray of TLC ("Murray Decl."), TLC Deputy Chief Edwin Mulero ("Mulero Decl."), and Karen B. Selvin ("Selvin Decl."), there is evidence of significant ownership fraud with regard to the vehicles that were the subject of the challenged policy. Indeed, the former lead plaintiff in this case, Michael Harrell, who appears on the putative class list a whopping seven times, is a prime example of an apparent straw buyer.  Therefore, as it is unclear whether the individuals/entities listed on the proposed putative class list were actually deprived of a protected property interest under the Fourth and Fourteenth Amendments, the class certification motion must be denied.

Simply put, the proposed class is not ascertainable and plaintiffs have not established that their claims and defenses are typical or that there are questions of law or fact common to the class.  Plaintiffs offer at least four different class definitions between their complaint and motion for class certification.  Some of these definitions indicate that "operators" of the seized vehicles should be included.  Yet, "operators" do not necessarily have an ownership interest in a vehicle.  The Admin. Code and the New York State Vehicle and Traffic Law ("VTL") provide guidance as to who would be considered a vehicle "owner" for the purposes of the Fourth and Fourteenth Amendments.  Without proof of title or evidence that an individual had the exclusive use of a vehicle for more than thirty days, a protected property interest is not established.

Along with the varying class definitions proffered by the plaintiffs, they fail to recognize that each of these seizures did not happen in a bubble.  There could be other circumstances, such as additional charges, vehicle abandonment, or even parking tickets, which independently and legally justified the seizure of a vehicle.  Accordingly, to treat them as one and the same is not appropriate.

Finally, what cannot be ignored is that individuals who own and operate illegal for-hire vehicles have incentive to secrete the true ownership of the vehicles so as to avoid detection and to minimize penalties.  As detailed in the accompanying Mulero Decl., it is common knowledge among TLC officers, based on admissions from wrongdoers, that registrations are moved in and out of people's names to avoid paying higher fines.  This information, when coupled with the declaration of Edward Murray of TLC, who details numerous examples of highly suspicious activity on the putative class list, including, but not limited to, clusters of putative class members in the same out-of-state city or sharing the same out-of-state address, cautions against class certification.

Standing is a threshold issue in every case, including class actions.  A class may not be certified that would contain members who lack standing.  Here, based on the evidence of significant ownership fraud, and further, the likelihood that many of the seizures listed on the putative class list involved other circumstances that justified the warrantless seizure, class certification is not warranted.  Furthermore, as set forth below, plaintiffs are clearly not appropriate class representatives and plaintiffs' counsel do not meet their burden to establish that they possess the requisite experience and qualifications to be appointed class counsel.  Therefore, defendants submit that plaintiffs' motion for class certification be denied.

**ARGUMENT**

To certify a class, plaintiffs must prove each prerequisite under F.R.C.P. 23 by a preponderance of the evidence.  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008); In Re: IPO Securities Litigation v. Merrill Lynch & Co., Inc. ("IPO"), 471 F.3d 24, 26 (2d Cir. 2006).

**POINT I**

**PLAINTIFF'S  MOTION  FOR  CLASS
CERTIFICATION IS OVERBROAD.**

**A.**     **Generally Applicable Principles**

That the class be ascertainable is an implicit requirement of F.R.C.P. 23.  IPO, 471 F.3d at 45.  Thus, a court must determine, as a threshold matter, whether a class definition is workable.  See 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 115-132 (1986).  A court should not certify an overbroad class.  See Haitian Ctrs. Council v. McNary, 969 F.2d 1326, 1337-38 (2d Cir. 1992), vacated as moot sub nom., Sale v. Haitian Ctrs. Counsel, 509 U.S. 918 (1993).  The description of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  Casale v. Kelly, 257 F.R.D. 396, 405 (S.D.N.Y. 2009); 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 121.  "This implicit requirement of Rule 23 is often referred to as the definiteness requirement."  Burley v. City of New York, 2005 U.S. Dist. LEXIS 4439, at *28 (S.D.N.Y. 2005).  If the "definiteness requirement" is not met, it cannot be said that a class exists at all.  Id.

A class must not be certified where the District Court has to perform individualized fact specific inquiries to determine class membership.  Luedke v. Delta Airlines, 155 B.R. 327, 329-32 (S.D.N.Y. 1993).  See also McBean v. City of New York, 228 F.R.D. 487,

492 (S.D.N.Y. 2005); In re Chrysler Corporation, 2000 U.S. Dist. LEXIS 2332, at *12 (E.D. Pa. Mar. 2, 2000); Williams v. Glickman, 1997 U.S. Dist. LEXIS 1683, at *12-14 (D.D.C. Feb. 14, 1997); Catanzano by Catanzano v. Dowling, 847 F. Supp. 1070, 1079 (W.D.N.Y. 1994).  In this regard, it is well established that "[i]f the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent."  Alabama v. Blue Body Co., 573 F.2d 309, 328 (5th Cir. 1978) (court rejected certification because it would have to perform "at least some individualized, fact-specific inquiries to determine class membership" and the potential class included over 10,000 people which rendered identifying the class unfeasible).

        Finally, a class must only be certified where the Court can look to objective criteria to make its determination.  See, e.g., Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 181 (S.D.N.Y. 2005); Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 481 (S.D.N.Y. 2005).

**B.      Plaintiffs' Proposed Class is Not Ascertainable**

        The proposed class in this case runs afoul of the "definiteness" requirement. First, plaintiffs offer varying class definitions in their complaint and motion for class certification that ensure uncertainty.  Second, plaintiffs ignore the "owner" definition set forth in the Admin. Code and the New York State Vehicle and Traffic Law which provides guidance as to who may have a protected property interest in a seized vehicle.  Third, the putative class list does not account for other circumstances, such as additional charges, that may have independently justified the warrantless seizure of a vehicle.  Fourth, there is evidence of significant ownership fraud with illegal for-hire vehicles.

4

Simply put, it would be unfair to certify a class without first determining whether each individual claimant was actually subjected to unconstitutional conduct and has standing to be in this case.  To do so, though, this Court would have to conduct thousands of mini-trials and make fact-intensive individual determinations.  As a result, plaintiffs' proposed class runs afoul of the implicit "definiteness" requirement of Rule 23 and class certification should be denied.

### 1.   Failure to Sufficiently Define Class

In the Corrected Second Amended Complaint, plaintiffs state that the class action is commenced "on behalf of all persons and entities whose vehicles have been seized by the TLC based on allegations of first-time violations of NYC Code § 19-506."  Corr. Sec. Am. Cmplt. ¶ 107.  Plaintiffs then plead that the class should have two subclasses of "alleged-first time driver-violators; and (b) a subclass consisting of alleged-first time owner-violators."  Id. at ¶ 108.

Now, in their motion for class certification, plaintiffs advance three more class definitions.  First, they propose a class that includes "all 'straight plate' **vehicle owners** whose vehicles were seized for alleged first-time violations of New York City Administrative Code Section **19-506** from September 9, 2011 to the present."  Pls. Memo. at 1 (emphasis supplied). Then plaintiffs alter their proposed class definition two pages later in their memorandum of law and indicate that they want the Court to certify as a class "all owners **and operators** of 'straight plate" vehicles seized by the City of New York for alleged first-time violations of Section **19-506(b)(1)**."  Id. at 3 (emphasis supplied).   Five pages later, plaintiffs again change their proposed class definition and indicate that plaintiffs are now seeking to represent a class "comprising **all persons** who were first-time, 'straight plate' violators of Section **19-506** from September 8, 2011 to the present (the "Class Period") that had their vehicle seized by the City of New York."  Id. at 8.   Thus, in a span of only eight pages, plaintiffs put forth three different

class definitions encompassing three different sets of plaintiffs, all of which renders the proposed class indeterminate.  See, e.g., Wynn v. N.Y. City Hous. Auth., 314 F.R.D. 122, * (S.D.N.Y. 2016) ("The very fact that counsel defines the class in at least four different ways makes the class unascertainable.") (citing Johnpoll v. Thornburgh, 898 F.2d 849, 852 (2d Cir. 1990)).

### 2.   "Owner" Definitions Confirm Need for Individualized Proof

Admin. Code § 19-506(h)(5)'s "owner" definition cross-references VTL § 128 and VTL § 388(3).[1]  VTL § 128 defines "owner" as follows:

> A person, other than a lien holder, having the property in or *title to* a vehicle or vessel.  The term includes a person entitled to the use and possession of a vehicle or vessel subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or vessel having the exclusive use thereof, under a lease or otherwise, for a period of greater than thirty days. (emphasis supplied).

Thus, title documentation, copies of private contracts, such as leases, and evidence establishing a bailee relationship, is critical in ascertaining whether an individual has a protected property interest in a seized vehicle.  Yet neither plaintiffs, nor defendants, have access to this information on a class-wide basis, and thus, the scope of any proposed class cannot be defined.  Instead, each claimant would have to present such proof and an individualized fact determination would need to be made.

The import of ownership status and the need for plaintiffs to come forward with specific evidence establishing ownership was recently emphasized by the Second Circuit in El-Nahal v. Yassky, 2016 U.S. App. LEXIS 15767 (2d Cir. 2016).  Mr. El-Nahal, a New York City taxi driver, argued that TLC's mandate that all New York City taxicabs must install GPS technology amounted to a property-based search that violated his Fourth Amendment rights.  The

---

[1] VTL § 388(3) cross-references VTL § 128 in its text.

Second Circuit rejected El-Nahal's claim because he did not put forth any evidence establishing that he had a property interest in the taxi at the time of the alleged violation.  Id. at *12.  The Second Circuit noted that operating the for-hire vehicle at the time of the alleged violation was not enough to establish plaintiff's standing to assert a Fourth Amendment property claim.

Here, plaintiffs have proposed a variety of class definitions, some of which include "operators" of the seized vehicles.  Yet, El-Nahal makes clear that one cannot presume an ownership interest simply by the fact that an individual was driving the vehicle.  Instead, the vehicle operator must come forth with affirmative proof establishing the protected property interest in the vehicle.  Furthermore, to the extent that individuals come forward with documentation, such as copies of registrations, to establish that ownership interest, the Second Circuit has found that "[a]t best, the registration of a motor vehicle is only prima facie evidence of ownership, and [a party] always may prove that, in fact, the vehicle is owned by someone other than or in addition to the registered owner."  Horvath v. Lindenhurst Auto Salvage, 60 F.3d 120 (2d Cir. 1995) (internal quotation marks omitted) (quoting Young v. Seckler, 74 A.D.2d 155, 159 (2d Dep't 1980)).[2]  In other words, it is a rebuttable presumption.

Based on the "owner" definitions set forth in the VTL and Admin. Code, vehicle documentation, such as title records and copies of leases, is critical in assessing whether an ownership stake has been implicated at all.  It is also critical in ascertaining whether an alleged incident involves a first-time violation of Admin. Code § 19-506(b)(1) and is properly part of this case.  The forfeiture provision set forth in Admin. Code § 19-506(h)(2), details that if an "owner" has two or more violations within a thirty-six month period, the interest of such owner

---

[2] Notably, the website of the New York State Department of Motor Vehicles explicitly states that "[r]egistrations don't need to be in the owner's name[.]"  See https://dmv.ny.gov/registration/register-and-title-vehicle (last accessed on Feb. 1, 2017).

in a vehicle is subject to forfeiture.  Vehicles subject to forfeiture are outside the scope of this case.  Under Admin. Code § 19-506, the violation history of the titled owner is a factor that can be considered when determining whether a vehicle is subject to forfeiture.  For the purposes of this litigation, though, TLC does not have access to title records on a class-wide basis.  Nor for that matter, does TLC have access to private contracts that could help establish whether an individual claimant had the exclusive use of a vehicle for more than 30 days prior to its seizure. Therefore, as individualized evidence is needed to establish ownership interest, class certification is not appropriate.

### 3.  Other Circumstances Justifying Seizure

In compiling the potential putative class list, defendants did not conduct in-depth investigations into each entry to ascertain whether there were other circumstances, such as additional charges, that independently justified the seizure of a referenced vehicle.  As detailed in the declaration of TLC Deputy Chief Edwin Mulero, other illegal activity may accompany the issuance of an Admin. Code § 19-506 summons.  Mulero Decl., ¶ 4.  Some of the more common additional charges he has observed are the aggravated unlicensed operation of a vehicle, criminal possession of a weapon, narcotics offenses, prostitution, and criminal possession of a forged instrument.  Id. at ¶ 5.  Deputy Chief Mulero has also observed a driver flee a vehicle, which results in TLC inspectors securing the vehicle and removing it to the pound.  Id. at ¶ 7.  These circumstances could implicate a variety of warrant exceptions, including instrumentality of illegal activity, arrest evidence, exigent circumstances, and community caretaking.

Finally, Deputy Chief Mulero explains that depending on the circumstances of each unlicensed activity stop, other law enforcement agencies, such as the NYPD or Port

Authority Police Department ("PAPD"),[3] may be called to the scene.  Id. at ¶ 6.  Information regarding additional charges lodged by the NYPD or PAPD is not routinely memorialized in TLC paperwork or maintained in TLC databases.  Id.; Murray Decl. at ¶ 43.

Accordingly, the individual circumstances of each vehicle seizure would need to be investigated, in part, to ascertain whether there were additional grounds for the seizure.

### 4. Ownership Fraud

TLC officers have often stopped the same vehicle on multiple occasions for unlicensed activity.  Mulero Decl., ¶ 8.  Based in part on admissions of wrongdoers, it is common knowledge among TLC officers that illegal for-hire vehicles are often registered under different names so that the individuals involved in the illegal activity can avoid the higher fines associated with second or subsequent violations.  Id.  And indeed, one of the proposed class representatives in this case, plaintiff Zhang, admitted during his deposition that after he received his first summons for unlicensed activity, he moved his vehicle out of his name and registered it under a corporate entity name.  See Selvin Decl., Ex. A at 24:6-10.[4]

Here, through no fault of the defendants, it appears that the putative class list is riddled with ownership fraud.  Such fraud would directly impact whether an individual has suffered a constitutional violation and has standing to challenge the City's actions in this case.

---

[3] The airports are under the jurisdiction of the PAPD, which is not a City entity.

[4] Registration fraud is a pervasive problem faced by the states. The New Jersey State League of Municipalities has conducted a seminar for its members that focused on vehicle registration fraud and specifically highlighted examples involving individuals engaged in for-hire activity in New York City. See http://www.njslom.org/seminar-documents/061413-miniconference/New%20Jersey%20MVC%20Municipal%20Clerk%20presentation.pdf (last accessed Jan. 30, 2017).

#### i. *General Principles of Standing*

Plaintiffs have the burden to establish that there is a "case or controversy" between themselves and the defendants.  Warth v. Seldin, 422 U.S. 490, 498 (1975).  For Article III standing, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action' and the injury must be likely redressable by a favorable decision."  Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (*quoting* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  The question of standing is a threshold matter and the Court must resolve whether a plaintiff has standing before examining the merits of the claims.  Warth v. Seldin, 422 U.S. 490, 498 (1975); In re Application for Appointment of Independent Counsel, 766 F.2d 70, 75 (2d Cir. 1985).  "The filing of suit as a class action does **not** relax this jurisdictional requirement."  Denney, 443 F.3d at 263 (emphasis supplied).  Accordingly, it is well-settled that "no class may be certified that contains members lacking Article III standing."  Id. See also Muchnick v. Thomson Corp., 509 F.3d 116 (2d Cir. 2007) ("we have applied Article III's jurisdiction requirements to each member of a class"); Adashunas v. Negley, 626 F.2d 600, 604 (7th Cir. 1980) (affirmed denial of plaintiff class because it was not "reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief").

#### ii. *Questionable Activity of Putative Class Members*

As more fully described in the declaration of Edward Murray of TLC, the putative class list is riddled with registration fraud.[5]  Some examples are summarized below:

---

[5] Mr. Murray's declaration is not a comprehensive list of all fraud detected on the putative class list.  To the extent that this Court would like more examples of suspicious registration activity, defendants will provide those upon request.

**Michael Harrell**

To date, Michael Harrell, the former lead plaintiff in this case, has accumulated eighteen unlicensed activity summonses involving ten unique vehicles, with fourteen of those summonses associated with a vehicle seizure.  Murray Decl., ¶ 6.  As Harrell was first convicted on his seventh summons, he is listed seven times on the putative class list.  Id. at ¶ 7.  On each of his summonses, the registration address is 218 Pennsylvania Avenue, Erie, PA 16507.  Id. at ¶ 8.  Michael Harrell neither drove any of the vehicles at the time of their seizure, nor obtained the releases from TLC to retrieve the vehicles from the pound.  Id.

In response to a May 2016 subpoena, the Pennsylvania Department of Transportation provided copies of title and registration documentation indicating that at least seven vehicles had been titled and registered in Michael Harrell's name with the Erie, PA address.  See Selvin Decl, Ex. B.  Six of the seven vehicles were titled and registered within a span of only three months from December 5, 2013 through March 18, 2014, with two of those vehicles titled and registered on the same day.  Id.  Yet, at the time all of these vehicles were being registered and titled in Michael Harrell's name in Pennsylvania, records show he was living with ███████████████ in subsidized housing in Brooklyn, New York, and that he did not have the resources to acquire so many cars.[6]  See Selvin Decl., Ex. C.  The 2013 tenant income certification package submitted by ███ and Michael Harrell to their housing company in September 2013 lists the total gross household income as $18,200.00, with all of that income attributable to ███.  Id.  Michael Harrell attested that he had no income, assets, or bank accounts.  Id.

---

[6] The building in question is a participant in the federal HOME and Low Income Housing Tax Credit.  The New York City Department of Housing Preservation and Development is the supervising agency for the building.

Based on the foregoing, defendants submit that Michael Harrell has the hallmarks of a straw buyer with no true ownership interest in the vehicles registered and titled in his name.

███████ & ███████

███████ is Michael Harrell's ████ and ███████ has been identified as Michael Harrell's ████. At the same time that a large amount of vehicles were registered and titled in the name of ████ Michael Harrell, the same was done for ████ ████. To date, ███████ has been issued twelve unlicensed activity summonses involving nine unique vehicles, with nine of the summonses associated with a vehicle seizure. Murray Decl., ¶ 11. As ███████ was first convicted on her third summons, she is listed three times on the putative class list. Id. at ¶ 12. ███████ neither drove any of the vehicles at the time of their seizure, nor obtained from TLC a release to retrieve the vehicles from the pound. Id. at ¶ 13. All of the vehicles, except one, were registered in ███████'s name at the same Erie, PA address as Michael Harrell.[7] Yet, as detailed above, ████ and Michael Harrell did not have the resources to acquire so many vehicles, nor did they live in Erie, PA. Thus, it appears that ███████ is also a straw buyer.

As for ███████, to date, he has been issued twenty-three unlicensed activity summonses involving ten unique vehicles, and he appears on the putative class list once. Id. at ¶ 16. Incredibly, ████ has retrieved 48 seized vehicles from the pound. Id. at ¶ 17. While some of the vehicles he retrieved were registered in his own name, as well as Michael and ███████'s names, he also retrieved vehicles registered in the names of six other people, five of whom had out-of-state registration addresses. Id. at ¶ 17. Mr. ████'s involvement in retrieving all of the vehicles indicates that he may be the true owner.

---

[7] The other vehicle was registered to a Dallas, TX address.

**Fraudulent Activity of ▮▮▮▮▮ and ▮▮▮▮▮ Exhibited by Others On Putative Class List**

There are scores of examples on the 2015 Unredacted One-in Five List and the full putative class list where the same illegal for-hire vehicles are seized on multiple occasions during the proposed class period, yet are registered in the names of different people. See Murray Decl., ¶¶ 9, 15, 20, 25, 28, 38-41. Based in part on the admissions of wrongdoers, it is common knowledge among TLC officers that illegal for-hire vehicles are often registered under different names to avoid higher fines. Mulero Decl., ¶ 8. In fact, plaintiff Zhang admitted during his deposition that he moved his vehicle out of his name after he received his first summons. See Selvin Decl., Ex. A at 24:6-10.

There are also large groups of putative class members that curiously share the same out-of-state address. Murray Decl., ¶¶ 23-25, 36-41. For example, eleven putative class members, accounting for twelve seizures on the putative class list, have a vehicle registration address of ▮▮▮▮▮▮▮ Philadelphia, PA; six putative class members have a vehicle registration address of ▮▮▮▮▮▮▮, Philadelphia, PA.; nine putative class members have a vehicle registration address of ▮▮▮▮▮▮▮, Philadelphia, PA; and six putative class members have a vehicle registration address of ▮▮▮▮▮▮▮, Dallas, TX. Id. at ¶¶ 24, 36-37, 39. In a similar vein, there are groups of putative class members clustered in the same out-of-state city, yet their vehicles are often being driven on the streets of the City of New York by other individuals. Some of the out-of-state city clusters are Salisbury, MD; Round Lake Beach, IL; and Covington, GA. Id. at ¶¶ 26-34.

The examples noted above and in the Murray Decl. are not coincidences, nor are they *de minimus*. Individuals affiliated with illegal for-hire vehicles have an incentive to secrete the true ownership of those vehicles. Therefore, the proposed class is not ascertainable.

13

**POINT II**

**PLAINTIFFS FAIL TO MEET THE REQUIREMENTS OF RULE 23 FOR CERTIFICATION.**

The United States Supreme Court has stated that "the class action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named plaintiffs only.'" Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701 (1979)).  In order to certify a class, the party seeking class certification must first demonstrate by a preponderance of the evidence that the proposed class meets the four requirements of F.R.C.P. 23(a):  "(1) the class is so numerous that joinder of all members is impracticable;  (2)  there are questions of law or fact common to the class;  (3)  the claims or defenses of the representatives are typical of the claims or defenses of the class;  and (4)  the representative parties will fairly and adequately protect the interests of the class."  F.R.C.P. 23(a); In re Visa Check/MasterMoney Antitrust Litigation, 280 F.3d 124, 132-133 (2d Cir. 2001).

Second, the party seeking class certification must demonstrate that the proposed class action meets at least one of the following requirements for F.R.C.P. 23(b)(1) that prosecution of separate actions by individual parties would create a risk of inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication;  (2)  defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and that a class action is superior to other available methods for adjudication.  F.R.C.P. 23(b);  In re Visa, 280 F.3d at 133.  Here, plaintiffs argue that the case should be certified under F.R.C.P. 23(b)(1)(A) and (b)(3), yet they have failed to present sufficient evidence to satisfy all of the elements for class certification.  As such, their class certification motion should be denied.  See,

e.g., Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010) ("evidence put forward by the plaintiffs was insufficient to carry their burden to establish by a preponderance that common questions would predominate over individual ones"); New Jersey Carpenters Health Fund v. Rali Series 2006-Q01 Trust, 477 Fed. Appx. 809, 813 (2d Cir. 2012) (evidence "indicated that individual knowledge inquiries might be necessary").

## A. Plaintiffs Cannot Meet the Commonality and Typicality Requirements of Rule 23(A)(2) and (3).[8]

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). "These requirements ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Id. (quoting Gen. Tel. Co. v. Falcon, 457 U.S. at 157 n.13)). Of note, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification for the class is improper because he or she can no longer act in the best interest of the class." Han v. Sterling Nat'l Mortg. Co., 2011 U.S. Dist. LEXIS 103453, *18 (E.D.N.Y. 2011) (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000)).

Commonality is satisfied when plaintiffs' claims share a common question of law or fact. Marisol A., 126 F.3d at 376. "Plaintiffs must provide that the class members have suffered the same injury." Toney-Dick v. Doar, 2013 U.S. Dist. LEXIS 134315, *18 (citing Wal-

---

[8] Here, even though as detailed in Point I *supra*, defendants submit that the proposed class is not ascertainable, defendants recognize that it is likely that there would be at least 40 members of a proposed class. Therefore, defendants do not contest numerosity. See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed at 40 members).

Mart Stores, Inc., 131 S. Ct. at 2551) (internal quotation marks omitted).  Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  Neither commonality nor typicality will be satisfied if the court must engage in a "case-by-case evaluation of each encounter" in order to establish liability.  Haus v. City of New York, 2011 U.S. Dist. LEXIS 155735, *317 (S.D.N.Y. 2011).  See also 5  Moore's Federal Practice, § 23.24[4] at 23-96 (1999) ("If a court must make a highly fact-specific or individualized determination in order to establish a defendant's liability to each class member, typicality will not be met.").

As detailed more fully in Point I, *supra*, at the outset, this Court would need to conduct individualized examinations to ascertain whether each person/entity on the putative class list actually suffered a constitutional violation and had standing to be in this case.[9]  A significant amount of ownership fraud has already been detected on the putative class list.  Furthermore, an in-depth inquiry would be needed to ascertain whether there were other circumstances, such as additional charges, that independently justified a warrantless seizure.  As such, the claims are not "common" and there could be unique defenses that render a claim not "typical."

Aside from the underlying constitutional claims and the threshold issue of whether the members of the proposed class have suffered the same injury and have standing, the individuality of the damages claims also weighs against a finding of typicality and commonality.  Plaintiffs have insisted on incorporating into this action claims for lost income, fees associated

---

[9] While defendants refer to the 2015 unredacted list for examples of apparent fraud, we respectfully submit that sampling is not an appropriate mechanism to utilize when ascertaining whether individuals have suffered a constitutional violation and have standing to sue.  As previously noted, the standing requirement is not relaxed for cases filed as putative class actions and a class cannot be certified if any of the members lack standing.  See Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006).

with rental cars, and emotional distress damages, all of which are highly individualized and thus not amenable to class action treatment.  See Sterling v. Veelsicol Chem. Corp., 855 F.2d 1188, 1200 (6th Cir. 1988) ("[a]lthough many common issues of fact and law will be capable of resolution on a group basis, individual particularized damages still must be proved on an individual basis.").  Emotional distress damages are particularly difficult to address in the class action context.  See Augustin v. Jablonsky, 819 F. Supp. 2d 153, 174 (E.D.N.Y. 2011) ("[C]laims for class members' emotional distress damages must be disposed on an individual basis."); Berger v. Iron Workers Reinforced Rodman, Local 201, 170 F.3d 1111, 1138 (D.C. Cir. 1999) ("courts may properly infer emotional distress from factual circumstances – and award damages to compensate for that distress – but may not presume damages from a bare violation of a statutory or constitutional right."); In re Three Mile Island Litig., 87 F.R.D. 433, 441 n.16 (M.D. Pa. 1980) ("[T]he idiosyncratic nature of emotional distress claims makes them [] unsuitable for class certification[.]").

Simply put, the commonality and typicality prongs of Rule 23(a) have not been met by plaintiffs and certification must be denied for this reason.

**B.     Plaintiffs and Their Counsel Cannot Adequately Represent Absent Class Members as Required by F.R.C.P. 23(a)(4).**

"To satisfy the adequacy requirement, plaintiffs must prove both that the interests of the named Plaintiffs are not antagonistic to other members of the class, and that Plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation.  Toney-Dick, 2013 U.S. Dist. LEXIS 134315 at *24.  Plaintiffs have failed to do so here.

1.  The Named Plaintiffs are Inadequate Class Representatives

"A class representative is a fiduciary to the class and bears a responsibility to comply with discovery requests, to possess a basic knowledge of the facts, and to participate to

some minimal degree in the lawsuit to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney."  In re Gaming Lottery Sec. Litig., 58 F. Supp. 2d 62, 76 (S.D.N.Y. 1999) (internal quotation marks omitted). See also Norman v. Arcs Equities Corp., 72 F.R.D. 502, 506 (S.D.N.Y. 1976) ("One who will not comply wholeheartedly and fully with the discovery requirements of modern federal practice, is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted.").   In considering the adequacy of a proposed class representative, "courts may consider the honesty and trustworthiness of the named plaintiff."  Savino v. Computer Credit, 164 F.3d 81, 87 (2d Cir. 1998).  "Where the court finds the class representative is not credible, adequacy of representation is absent."  Han v. Sterling Nat'l Mortg. Co., 2011 U.S. Dist. LEXIS 103453, *22-23 (E.D.N.Y. 2011).  See also Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983) (class certification motion properly denied when credibility was sufficiently in doubt).  Indeed, as fiduciaries for the class, class representatives are "required to adhere to the highest standards of honesty and integrity."   Weisman v. Darneille, 78 F.R.D. 669, 671 (S.D.N.Y. 1978). Inconsistent or false testimony can "create serious problems with respect to [a] plaintiff's credibility and could become the focus of cross examination… to the detriment of the class." Darvin v. International Harvester Co., 610 F. Supp. 255, 257 (S.D.N.Y. 1985).  Here, each of the proposed class representatives is inadequate to represent the class.

### i.   *Susan Calvo*

On June 21, 2012, a 2005 GMC Suburban purportedly owned by Susan Calvo and her son, Jason Calvo, was being operated by Jason when it was seized by a TLC inspector at LaGuardia Airport.  Ms. Calvo received a summons for violating Admin. Code § 19-506(b)(1) as a result of the unlicensed for-hire activity.

Ms. Calvo was deposed by defendants on November 21, 2016 in the case of DeCastro v. City of New York et. al, 16-CV-03850 (RA).  In DeCastro, Ms. Calvo seeks damages for the same June 21, 2012 incident as that alleged herein, along with damages for at least three other incidents where her vehicle was seized by TLC.[10]  See Selvin Decl., Ex. D; Ex. E at pg. 2; Ex. F at pg. 2.  Ms. Calvo's attempt to obtain the same relief for the same vehicle seizure incident before two federal judges in this District at the same time is highly improper and precludes her from serving as a class representative.

Ms. Calvo admitted during her deposition that she gave the 2005 Suburban to her son Jason Calvo prior to the June 2012 summons and that he used the vehicle exclusively thereafter.  See Selvin Decl., Ex. G at 19.  This indicates that Susan Calvo was not the true owner of the vehicle at the time of the incident and had not suffered any redressable injury.[11]

Furthermore, Ms. Calvo's testimony regarding the various summonses she was issued has an unmistakable aura of implausibility.  For example, Ms. Calvo consistently claimed that she was only doing favors for people who she knew from her employment with the Mexican Consulate.  See, e.g., Selvin Decl., Ex. G at 24-31; 82-88; 161-165.  Not once did Ms. Calvo acknowledge that for-hire activity was actually occurring.  Accordingly, Ms. Calvo would have this Court believe that it was just bad luck that she was cited on at least five occasions for unlicensed for-hire activity when her car was simply ferrying friends.  This strains credulity.[12]

---

[10] Defendants note that while Ms. Calvo seeks damages for a total of four incidents in DeCastro, she was also involved in a fifth incident where she was issued a summons by the Port Authority.  Though her vehicle was not seized during this incident, the Port Authority summons was heard at the OATH Taxi and Limousine Tribunal.  Thus, Ms. Calvo was cited for at least five incidents of illegal for-hire activity.

[11] Subsequently, following a break in the deposition and after apparently realizing that this admission could undercut her claims, Ms. Calvo changed her testimony and claimed that her son was not using the vehicle exclusively.  Id. at 52.

[12] Aside from the fact that Ms. Calvo has a TLC for-hire driver's license, her vehicles have vanity plates associated with S&S VIP Limousine Inc. and the company is advertised on the internet with her home address.  See

Finally, Ms. Calvo's failure to cooperate with follow-up discovery requests made after the conclusion of the deposition should also preclude her from being appointed a class representative.   Indeed, "a class representative is a fiduciary to the entire class and bears a responsibility to comply with discovery requests." <u>Koss v. Wackenhut Corp.</u>, 2009 U.S. Dist. LEXIS 34846 (S.D.N.Y. 2009).  Here, by letter dated November 22, 2016, defendants requested the contact information for the nine potential witnesses that Ms. Calvo identified during her deposition, as well as documentation evidencing her claim of lost wages.  <u>See</u> Selvin Decl., Ex. H.  Ms. Calvo has failed to produce this information.

### ii. *Pedro Camacho*

On January 9, 2014, a vehicle owned and operated by Pedro Camacho was seized by TLC at JFK Airport.  Mr. Camacho received a summons for unlicensed for-hire activity in violation of Admin. Code § 19-506(b)(1).  However, the summons was issued in error because the ride originated in New Jersey and was continuous, thus placing the activity beyond that prohibited by Admin. Code § 19-506(b)(1) and resulting in an unauthorized vehicle seizure. Ultimately, the summons was withdrawn by TLC and a vehicle release was issued.  Due to the fact that Mr. Camacho's seizure was a mistake, he is subject to unique defenses that would not apply to other class members, and thus renders him unsuitable as a class representative.

Furthermore, Mr. Camacho should not be appointed a class representative for failure to comply with defendants' discovery requests.  During his deposition, Mr. Camacho claimed that he was dropping off his niece to the airport when he received the summons.  <u>See</u> Selvin Decl, Ex. I at 20-21.  Thereafter, by letter dated November 4, 2016, defendants requested

---

http://www.yellowpages.com/jackson-heights-ny/mip/s-s-vip-limousine-svc-inc-11900812;
http://www.manta.com/c/mm4kp8g/s-s-vip-limousine-service-inc (sites last accessed on Feb. 3, 2017).

contact information for Mr. Camacho's niece as a potential eyewitness.  See Selvin Decl., Ex. J.
However, Mr. Camacho failed to produce this information.

In addition, Mr. Camacho testified that he had never reviewed the Complaint
before it was filed, nor was he aware of the basis for his listed damages in his initial disclosures.
See Selvin Decl., Ex. I at 43:17-19; 43:20-22; 45:1-2.  His lack of knowledge with respect to
crucial documents only highlights his inadequacy to be a class representative.  See In re Lloyd's
Am. Trust Fund Litig., 1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. 1998) ("An integral component
of a class representative's "adequacy", therefore, must be a minimum threshold of knowledge
about the case which, considering the nature of the claim, is sufficient to make reasonable
decisions at critical stages of the litigation.").

### iii. John Peters Professional Limousine

On November 15, 2012, a vehicle purportedly owned by plaintiff John Peters
Professional Limousines, Inc. ("JPPL") was seized by TLC at JFK Airport.  At the time of the
seizure, the vehicle was driven by Arthur Fleischer.  JPPL received a summons for violating
Admin. Code § 19-506(b)(1) as a result of unlicensed for-hire activity.

As a proposed fiduciary of the class, JPPL has failed in its obligation to comply
with defendants' reasonable discovery requests.  Defendants' attempts to obtain discovery from
JPPL spanned the course of nine months, during which this Court issued three separate orders
directing JPPL to produce documents.  See Dkt. Nos. 107, 129, and 152.  To date, JPPL has still
not provided a copy of the title for the vehicle in question, despite the fact that David Alcabes,
JPPL's Vice President of Business Development, testified that JPPL has a seven-year retention

policy for documents relating to their vehicles.  See Selvin Decl., Ex. K at 24:4; 31:19-20; Ex. L.[13]

### iv.  *Jacklyn Restrepo*

On September 9, 2013, a 2011 Chevrolet Suburban purportedly owned by Jacklyn Restrepo was being operated by Jason Calvo—Ms. Restrepo's boyfriend and Susan Calvo's son—when it was seized by TLC on Lexington Avenue in Manhattan.  Ms. Restrepo received a summons for violating Admin. Code § 19-506(b)(1) as a result of unlicensed for-hire activity, which was later dismissed.  On July 23, 2014, the same vehicle was again being driven by Jason Calvo when it was seized on Ditmars Boulevard in Queens.  Ms. Restrepo received another summons for unlicensed for-hire activity, for which she was found guilty at a hearing.

As a proposed class representative, Ms. Restrepo seeks damages arising from both the September 9, 2013 incident and the July 23, 2014 incident in the instant action.  Yet, the July 23, 2014 incident, on its face, is not eligible for inclusion in the proposed class since Jason Calvo, the individual driving Ms. Restrepo's vehicle, was driving with a suspended license which provided an independent basis for the seizure of the vehicle under the community caretaking exception to the warrant requirement.  See Miranda v. City of Cornelius, 429 F.3d 858, 865 (9th Cir. 2005); United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991); United States v. Velarde, 903 F.2d 1163, 1166 (7th Cir. 1990).  See Selvin Decl., Ex. M.

---

[13] As JPPL provided titles for two other 2010 vehicles in its discovery production, it should have also provided the title for the vehicle at issue.  There has been no explanation offered for that omission.  Furthermore, Mr. Alcabes admitted that JPPL should also have records as to how and when the vehicle was disposed, yet those records were never provided either.  See Selvin Decl, Ex. K at 36:3-13.  Defendants note that this Court was holding in abeyance defendants' motion for sanctions pursuant to FRCP 37 against JPPL due to their non-compliance with this Court's discovery orders.  Sanctions are warranted at this time due to their habitual non-compliance with discovery orders, which disqualifies JPPL as a class representative.

Aside from the fact that Ms. Restrepo is not suitable to represent the class based on the July 23, 2014 incident, Ms. Restrepo's professed ignorance as to the activities of Jason Calvo and his mother Susan Calvo was implausible.  She repeatedly claimed during her deposition that she did not know if Jason Calvo or his mother had ever been licensed by TLC or if they had driven a vehicle for-hire in New York City.  See Selvin Decl., Ex. N at 10:5-7; 10:25-11:2; 41:4-8.  She also claimed that she did not interact with Susan Calvo and never saw her. See id. at 41:9-15.  Her professed lack of knowledge with respect to Jason Calvo's illegal for-hire activity is highly questionable, especially considering the fact that he was driving both times that her vehicle was seized, and also during the June 21, 2012 incident at issue for Susan Calvo. Finally, Ms. Restrepo's lack of knowledge regarding the claimed damages listed in her own initial disclosures further demonstrates that she is ill-suited to serve as class representative.  See id. at 98:11-99:9.

### v.  *Yong Zhang*

On January 3, 2013, a vehicle operated by Yong Zhang was seized by TLC at the South Street Seaport.  Mr. Zhang received a summons for unlicensed for-hire activity in violation of Admin. Code § 19-506(b)(1).   Mr. Zhang admitted during his deposition that he was conducting a tour of New York City on the date of the incident and was getting paid commission. See Selvin Decl., Ex. A at 31:15-33:22.  At the time, he was not licensed by the Department of Consumer Affairs ("DCA") as a tour guide, nor was his vehicle licensed with DCA as a tour guide vehicle.  See id. at 41:20-42:1.

The fact that Mr. Zhang was operating an illegal tour when his vehicle was seized makes him an unsuitable class representative as the seizure of his vehicle falls under the instrumentality of illegal activity and community caretaking exceptions to the warrant

requirement.  Moreover, the unique circumstances surrounding this vehicle seizure ensures that Mr. Zhang's claims are not common to the class and he could be subject to unique defenses.

Mr. Zhang also lacks the moral character to be appointed a class representative. Indeed, he admitted to intentionally changing his vehicle registration from his individual name to a corporate name as a result of receiving his first TLC summons.  See id. at 24:6-10.  His attempt to evade violations in this manner highlights his inadequacy as a class representative.

Finally, Mr. Zhang stated that he had never reviewed the Amended Complaint before it was filed, once again exhibiting that he is ill-suited to serve as class representative.  See id. at 68:3-13.

### vi.  *Eamon Yuel*

On August 23, 2014, a vehicle owned and operated by Eamon Yuel was seized by TLC, and he received multiple summonses related to his unlicensed for-hire activity, including two summonses that were returnable in criminal court.  See Selvin Decl., Ex. O.  Mr. Yuel admitted during his deposition that he was conducting a tour for two women from out of the country on the date of the incident.  See Selvin Decl., Ex. P at 11:23-13:1; 19:19-20:8.  Yet, Mr. Yuel was never licensed by the DCA as a tour guide, and his vehicle was never licensed with DCA as a tour guide vehicle.  See id. at 8:16-19; 9:3-5.  Thus, this incident falls under the instrumentality of illegal activity and community caretaking exceptions to the warrant requirement.  Moreover, based on the unique circumstances associated with the seizure, Mr. Yuel's claims are not common to the class.

Mr. Yuel also lacks the honesty and trustworthiness necessary for a fiduciary of the putative class.  During his deposition, while being examined by his own counsel, Mr. Yuel testified that he lost out on a five-day or seven-day tour as a result of going to TLC to recover his

seized vehicle.  See Selvin Decl, Ex. P at 71:7-72:7.  This deposition testimony was seemingly elicited in an effort to increase Mr. Yuel's monetary damages claim in this case.  However, upon further probing by defense counsel, Mr. Yuel admitted that he did not have another tour scheduled on the date that he went to recover his vehicle, and that he had actually been paid for the day.  See id. at 72:15-74:3.  Mr. Yuel's attempt to obtain compensation for damages that he did not actually sustain demonstrates that he lacks the integrity to be a class representative.

Finally, Mr. Yuel stated that he had never reviewed the Amended Complaint before it was filed, which shows a lack of knowledge of his own case that would preclude his service as a class representative.  See id. at 51:9-11.

### 2.   Class Counsel is Not Qualified to Represent Class Members

"Adequacy of counsel is particularly important in the class action context where the class as a whole is bound by the result of the litigation."  Wynn v. N.Y.C. Hous. Auth., 314 F.R.D. 122, *129 (S.D.N.Y. 2016).  Defendants submit that attorneys Daniel Ackman and Andrew St. Laurent do not possess the requisite experience and qualifications to be appointed as class counsel in this case.

First, as detailed above, their former lead plaintiff Michael Harrell is a fraud who was dismissed from this case due to his failure to comply with discovery.  These facts demonstrate a startling lack of investigation and control of their own clients which should bar appointment as class counsel.[14]

Second, plaintiffs' counsel are simultaneously advancing the same constitutional claims on behalf of Susan Calvo for the same vehicle seizure incident (June 2012 seizure) before two judges in this District at the same time.  This is highly improper.

---

[14] The lack of investigation and care is also evidenced by the repeated pleading errors in this case, including, but not limited to, the assertion of non-first time violations on behalf of multiple plaintiffs.

Third, plaintiffs' counsel continue to this day to obstruct lawful discovery in this case by failing to comply with three discovery orders pertaining to their client JPPL. Defendants previously moved for sanctions after the second discovery order was not complied with and this Court reserved decision. At this point, sanctions against JPPL are warranted, which reflects poorly on plaintiffs' counsel's qualifications.

Fourth, Daniel Ackman has previously inaccurately represented his class action experience before other federal judges in support of motions for class certification. Specifically, in Rothenberg v. Daus, 08-cv-567 (S.D.N.Y.) and Singh v. Joshi, 15-cv-5946 (E.D.N.Y.), Mr. Ackman submitted declarations attesting that along with the Padberg v. McGrath-McKechnie case, which was settled as a class action, he was "lead counsel in other class actions" and then proceeded to provide a list of cases. See Selvin Decl., Ex. Q and R. Yet, none of those other cases had been certified as a class action. The cases were either still pending, with no decision on class certification, or had been dismissed. Of particular note, we bring to the Court's attention that in his November 2015 class certification declaration submitted in the Singh case,[15] Mr. Ackman inaccurately represented to Judge Block that the Harrell case was a class action. See Selvin Decl., Ex. R. Mr. Ackman, whose co-counsel in the Singh case was Andrew St. Laurent (as he is here), made this representation knowing that the undersigned was one of the City attorneys on Singh and would be fully aware of the Harrell case status.[16] Judge Shira Scheindlin of the S.D.N.Y. recently scolded an attorney for doing the same exact thing as Mr.

---

[15] The Singh class certification motion was subsequently denied as moot when the City defendants were granted summary judgment dismissing the case. See Singh v. Joshi, 2016 U.S. Dist. LEXIS 107648 (E.D.N.Y. 2016).

[16] In his class certification declaration submitted in Singh, Mr. St. Laurent did not list the Harrell case. However, one must assume that he saw Mr. Ackman's declaration before it was filed and did nothing.

Ackman and determined that the attorney was not adequate class counsel.  See Wynn v. N.Y. City Hous. Auth., 314 F.R.D. 122, *129 (S.D.N.Y. 2016).

Finally, plaintiffs' counsel lack the requisite class action experience to be designated as class counsel in this case.  As noted, besides Padberg, which the City elected to settle as a class action, Mr. Ackman has not been certified as class counsel in any other action. As for Andrew St. Laurent, he too appears to have not been personally certified as class counsel in any case.  Instead, he cites as relevant experience to the case of Duncan Living Trust et al. v. O'Connor, Davies, Munn & Dobbins, LLP, BC494236 (Ca. Sup. Ct., L.A. Cty 2012), in which he claims his "Firm" represented investors in a securities class action from 2012-2015."  St. Laurent Decl., ¶ 12.  While the Settlement Class Notice for that case, which is publicly available, does identify that the firm of Harris, O'Brien, St. Laurent & Chaudhry LLP was designated as class counsel along with the law firm of Caldwell, Leslie & Proctor, P.C., the notice also makes clear that it was Caldwell, Leslie & Proctor, P.C. that actually effectuated the class settlement. See http://classaction.kccllc.net/Documents/DLT0001/DLT_NOT_150921.pdf (Settlement Class Notice).  As for the other class action case he cites, Hartley v. Wells Fargo & Co, 14-cv-05169 (E.D.N.Y.), which he describes as a "New York State-wide class action premised on wage and hour violations" that he is personally involved in, he fails to mention the salient point that the proposed settlement which is the subject of the fairness hearing in February 2017 designates The Law Office of Christopher Q. Davis, PLLC as class counsel, not Mr. St. Laurent or his firm.  See Hartley v. Wells Fargo & Co., 14-cv-5169, Dkt. No. 54 (Order Granting Preliminary Approval and Settlement Hearing).

## POINT III

## PLAINTIFFS FAIL TO MEET THE RULE 23(B)(1)(A) REQUIREMENTS FOR CLASS CERTIFICATION.

Plaintiffs contend that class certification is warranted under F.R.C.P. 23(b)(1)(A). Yet, they have not established that prosecuting separate actions would create a risk of inconsistent or varying adjudications, or that separate actions would somehow be dispositive of the interests of non-parties or would substantially impair or impede non-parties' ability to protect their interests.

"Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver or owners)." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997) (internal quotation marks omitted). Accordingly, "courts in the Second Circuit have repeatedly recognized that certification under Rule 23(b)(1)(A) is limited to claims for equitable relief." Toney-Dick v. Doar, 2013 U.S. Dist. LEXIS 134315, *13 (S.D.N.Y. 2013) (quoting Oakley v. Verizon Commc's, Inc., 2012 U.S. Dist. LEXIS 12975 (S.D.N.Y. 2012)). See also Rambarran v. Dynamic Airways, LLC, 2015 U.S. Dist. LEXIS 97651, *32 (S.D.N.Y. 2015). Here, there are no pending claims for equitable relief. Instead, plaintiffs are seeking monetary damages for past conduct, and thus, certification under F.R.C.P. 23(b)(1)(A) is not appropriate. Rambarran, 2015 U.S. Dist LEXIS 97651 at *32 (citing Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 2006 U.S. Dist. LEXIS 99691 (E.D.N.Y. 2006)).

28

**POINT IV**

**PLAINTIFFS FAIL TO MEET THE RULE 23(B)(3) REQUIREMENTS FOR CLASS CERTIFICATION.**

For Rule 23(b)(3) certification, plaintiffs must establish that common questions of fact or law predominate over individual questions.  IPO, 471 F.3d at 42.  The predominance standard "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Myers, 624 F.3d at 547 (*citing* Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)).  A class may only be certified where it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results."  Id.  In assessing whether the predominance requirement is satisfied, a court must look at the "elements of the claims and defenses to be litigated" and determine whether "generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief."  Johnson, 780 F.3d at 138.  A court must ascertain whether common issues "can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues."  Id.  The predominance query "is a more demanding criterion than the commonality inquiry under Rule 23(a)."  Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002).

The Second Circuit has previously suggested that predominance will not be met where the court has to engage in more than a "*de minimus*" review of the underlying claims to establish liability.  See In Re: Nassau County, 461 F.3d 219, 230 (2d Cir. 2006).  As described in more detail above, this Court will have to examine each and every putative class member to ascertain whether they were actually injured by the City's challenged policy and have standing to sue, and whether there were other circumstances associated with the vehicle stop, such as

additional charges, that independently justified the warrantless seizure.  Moreover, claims for lost income and emotional distress ensure that individualized damages assessments will need to be made.  That is certainly not a *de minimus* review.  Further, one must remember that all of these subjects lend themselves to unique defenses in which individual issues predominate.  In other words, it will be non-stop mini-trials, which defeats certification under Rule 23(b)(3).  See, e.g., Rambarran v. Dynamic Airways, LLC, 2015 U.S. Dist. LEXIS 97651, *32 (S.D.N.Y. 2015).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification must be denied in its entirety.

Dated:         New York, New York
              February 3, 2017

                          Respectfully submitted,




                          ZACHARY W. CARTER
                          Corporation Counsel of the City of New York
                          100 Church Street
                          New York, New York 10007
                          (212) 356-2650


              By:    _____/s/_____
                          Karen B. Selvin
                          Assistant Corporation Counsel