UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL HARRELL, et al.,

                              Plaintiffs,

              -against-

CITY OF NEW YORK, et al.,

                              Defendants.

---

14cv7246 (VEC) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE VALERIE CAPRONI, U.S.D.J.:**

After granting Plaintiffs partial summary judgment in this Section 1983 action, the
Honorable Valerie Caproni, U.S.D.J., has approved Plaintiffs' request for an interim award of
attorneys' fees, and has referred Plaintiffs' fee application (Dkt. 139) to this Court to report and
recommend as to the amount of fees that should be awarded at this juncture.  For the reasons
discussed below, I recommend that, for the period up to November 10, 2015, Plaintiffs be
awarded attorneys' fees in the amount of $109,212.25.

## BACKGROUND

### A.    Procedural History

Plaintiffs in this case have challenged the constitutionality of the practice of defendant
the City of New York (the "City") and its representatives named in this action (collectively, with
the City, "Defendants") of engaging in warrantless seizures of motor vehicles suspected of being
unlawfully operated for hire.  (*See generally* Complaint, dated Sept. 8, 2014 ("Compl.") (Dkt. 1);
Amended Complaint, dated Nov. 12, 2014 ("Am. Compl.") (Dkt. 24).)  On September 30, 2015,
Judge Caproni granted Plaintiffs' motion for summary judgment as to the City's liability to
alleged first-time violators, agreeing with Plaintiffs that the City's seizure of vehicles suspected
of being used for hire without proper licensing was unconstitutional with respect to vehicle

owners with no prior violations in the preceding 36 months.  (Corrected Opinion & Order, dated

Nov. 10, 2015 ("Summary Judgment Order") (Dkt. 52), at 1.)  Of the six named Plaintiffs,

three – Michael Harrell ("Harrell"), Jacklyn Restrepo ("Restrepo"), and Pedro Camacho

("Camacho") – were found to be alleged first-time violators (*see* Opinion & Order, dated Dec.

18, 2015 (Dkt. 74), at 4), placing them in the category of those entitled to judgment pursuant to

the Summary Judgment Order.

Following the Court's ruling, Plaintiffs moved for a permanent injunction to enjoin

Defendants from seizing the vehicles of suspected first-time violators (Dkts. 65, 66),

notwithstanding Defendants' representation to the Court that they were abiding by the Summary

Judgment Order (Dkt. 59).  After Defendants represented, again, in their opposition to Plaintiffs'

motion, that they had ceased the practice of seizing suspected first-time violators' vehicles (*see*

Dkt. 72), Plaintiffs voluntarily withdrew their motion, without prejudice to renew if appropriate

at a later point in the litigation.  (Dkt. 87.)

On June 22, 2016, Plaintiffs moved for an interim attorneys' fee award (Dkts. 121, 122),

without specifying the amount requested (*see id*.).  On August 30, 2016, the Court granted that

motion pursuant to 42 U.S.C. § 1988(b), and directed Plaintiffs to submit an application for

attorneys' fees, with supporting records, for work performed up to November 10, 2015.  (Order,

dated Aug. 30, 2016 ("August 30 Order") (Dkt. 132), at 5-6.)  In its August 30 Order, the Court

noted that "at least the three Plaintiffs for whom [the] Court [had] granted summary

judgment . . . [were] clearly prevailing parties under section 1988(b) and [were] entitled to an

award of interim attorneys' fees."  (*Id.*, at 6.)  On November 14, 2016, however, the Court

vacated the judgment in Harrell's favor and dismissed his claims with prejudice for failure to

prosecute and failure to provide discovery.  (Dkt. 160.)  Accordingly, only two of the six

originally named Plaintiffs (Restrepo and Camacho) are now clearly in the position of being "prevailing parties," entitled to fees under the Court's August 30 Order.

### B.   **Requested Attorneys' Fees**

On September 30, 2016, Plaintiffs duly submitted their interim fee application.[1] Defendants filed an opposition memorandum on November 4, 2016,[2] and Plaintiffs filed reply papers on November 18, 2016.[3]  On December 19, 2016, Plaintiffs' application was referred to this Court for a report and recommendation.  (Dkt. 177.)

In their fee application, Plaintiffs seek an interim award of $172,371.47 in combined attorneys' fees and expenses.  With respect to fees, Plaintiffs seek compensation for the services rendered through November 10, 2015 by:  (1) Daniel L. Ackman, Esq. ("Ackman"), a solo practitioner; (2) Ackman's prior co-counsel, the law firm of Cuti Hecker Wang LLP ("CHW"); and (3) Ackman's current co-counsel, the law firm of Harris, St. Laurent & Chaudhry LLP ("HSC") (*See* Dkts. 140, 141, 143, 144.)  Only Ackman and his current co-counsel, HSC,

---

[1] *See* Notice of Motion, dated Sept. 30, 2016 (Dkt. 139); Declaration of Daniel L. Ackman, dated Sept. 30, 2016 ("Ackman Decl.") (Dkt. 140), and Ex. A thereto (Ackman time records) (Dkt. 140-1); undated Declaration of Andrew M. St. Laurent in Support of Plaintiffs' Application for an Interim Fee Award ("St. Laurent Decl.") (Dkt. 141), and Exhibit A thereto (St. Laurent time records); Memorandum of Law in Support of Plaintiffs' Application for an Interim Fee Award, dated Sept. 29, 2016 ("Pl. Mem.") (Dkt. 142); *see also* Delcaration [sic] of Eric Hecker, Esq. in Support of Motion for Interim Attorneys' Fees, dated Sept. 30, 2016 ("Hecker Decl."), and Exhibit A thereto (CHW time records) (Dkt. 143); Delcaration [sic] of John R. Cuti, Esq. in Support of Motion for Interim Attorneys' Fees, dated Sept. 30, 2016 ("Cuti Decl.") (Dkt. 144).

[2] *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Interim Attorneys' Fees Award, dated Nov. 4, 2016 ("Def. Mem.") (Dkt. 155).

[3] *See* Declaration of Daniel L. Ackman, dated Nov. 17, 2016 (Dkt. 161); Reply Memorandum of Law in Further Support of Plaintiffs' Application for an Interim Fee Award, dated Nov. 18, 2016 ("Pl. Reply Mem.") (Dkt. 162); Reply Declaration of Eric Hecker, Esq. in Further Support of Motion for Interim Attorneys' Fees, dated Nov. 18, 2016 ("Hecker Reply Decl.) (Dkt. 163).

however, have actually appeared in this action on Plaintiffs' behalf; as discussed further below, CHW apparently played an early role in developing Plaintiffs' claims and assisting in drafting the Complaint, but withdrew from representing Plaintiffs before the Complaint was filed.  (*See* Hecker Decl. ¶ 12; Cuti Decl. ¶ 1; Hecker Reply Decl. ¶¶ 4, 5.)

For services rendered by Ackman from May 9, 2014 to November 10, 2015, Plaintiffs seek $104,265.00 in attorneys' fees, for 198.6 hours of work, billed at a rate of $525 per hour. (*See* Ackman Decl., Ex. A; *see also* Pl. Mem., at 3, 5, 10.)

Plaintiffs seek an additional $67,362.50 in fees for services rendered by Ackman's current co-counsel, HSC, from November 4, 2014 to November 10, 2015.  Specifically, Plaintiffs seek a fee award for the services of HSC partner Andrew St. Laurent, Esq. ("St. Laurent"), associate Chardaie Charlemagne, Esq. ("Charlemagne"), and paralegals Marilyn Yuan ("Yuan") and Stephen Francois ("Francois").  (*See* St. Laurent Decl. ¶ 14, and Ex. A thereto.)  St. Laurent recorded 120.5 hours of work on this case, billed at the rate of $550 per hour; Charlemagne recorded 1.25 hours of her time, billed at the rate of $350 per hour; and the two paralegals recorded a combined total of 6.5 hours, billed at the rate of $100 per hour.  (*Id.* ¶ 14; Pl. Mem., at 10.)  Plaintiffs also seek an award of $743.97 in expenses incurred by HSC.  (Pl. Mem., at 7, 10; St. Laurent Decl., Ex. A, p. 4.)

As for the services rendered by CHW prior to the filing of the Complaint, Plaintiffs' Memorandum includes no discussion of the fees incurred, but states in a footnote that "Plaintiffs also request that reasonable fees be awarded for attorney time spent by [CHW], who aided in formulating the complaint prior to its filing, but who did not appear in this action," and refers the Court to CHW's own submissions "identifying the basis for its fee award."  (Pl. Mem., at 8 n.4.) CHW, in turn, has submitted two declarations, plus a reply declaration, in support of Plaintiffs'

4

claim for fees incurred for work performed by that firm.  (*See* Hecker Decl.; Cuti Decl.; Hecker Reply Decl.)  In its submissions, CHW seeks $39,155.00 in fees incurred by Plaintiffs from July 8 to August 4, 2014 by two partners in the firm, Eric Hecker, Esq. ("Hecker"), who billed 34.6 hours at the rate of $575 per hour, and John Cuti ("Cuti"), who billed 32.1 hours at the rate of $600.00 an hour.  (*See* Hecker Decl., Ex. A.)

As discussed below, Defendants argue that no fees at all should be awarded for the services of CHW, and generally contend that Plaintiffs' requested fees are "excessive."  (*See* Def. Mem., at 7.)  According to Defendants, "[P]laintiffs' claims are not inherently complex[,] and this litigation, prior to November 10, 2015, was certainly not burdensome."  (*Id*., at 9.)  Defendants cite the Court's characterization of the litigation as presenting a "nice clean legal issue," (*id*. (quoting Feb. 8, 2016 Status Conference Tr. 2:17-20 (internal quotation marks omitted))), and contend that the early stages of the case should not have required the amount of work suggested by Plaintiffs' time records (*id*. (noting that, during the relevant period, no discovery was conducted, the case proceeded immediately with dispositive motions, and there were only two court appearances)).  Defendants also challenge, *inter alia*, the hourly rates requested by Plaintiffs' counsel, the staffing of the matter with only partner-level attorneys, and the seeming duplication of effort made by those attorneys.  (*See id*., at 7-24.)

Plaintiffs argue that the amount of their requested fees is reasonable and is supported by both the experience of their counsel and the "significant" result that counsel achieved, which they describe as impacting many individuals, on a civil rights case of first impression before the Court.  (*See* Pl. Mem., at 4; Pl. Reply Mem., at 2-4.)

## DISCUSSION

## I.   PLAINTIFFS' RIGHT TO SEEK FEES FOR PRIOR COUNSEL

As a threshold matter, Defendants challenge Plaintiffs' right to seek any fees for the work performed by their prior counsel, CHW, and also challenge CHW's standing to seek fees on its own behalf.  (*See* Def. Mem., at 4-5.)  In their opposition brief, Defendants point out that CHW apparently never obtained a signed retainer agreement from Plaintiffs[4] and certainly never appeared in this action, and Defendants further state that they "were unaware of any involvement on [CHW's] part in this matter."  (*Id.*, at 4.)  Defendants argue that CHW now "fails to explain how or why [it] should be allowed to piggyback on the fee application submitted by [Ackman] and [HSC] on [P]laintiffs' behalf."  (*Id.*)  Defendants also argue that, as any fee claim "belongs entirely to the prevailing plaintiffs," CHW cannot, independently of Plaintiffs, seek an award of its fees.  (*Id.*)  For these reasons, and based on Defendants' suspicions that Plaintiffs either did not actually retain CHW, or terminated its services for cause, or are unaware that they (and not CHW) have the right to recover fees (*see id.*, at 4-5), Defendants argue that any request for CHW's fees be denied in its entirety, or, in the alternative, that the Court hold a hearing to determine whether such fees may be properly awarded (*id.*).  This Court does not find persuasive Defendants' arguments regarding CHW's supposed lack of entitlement to fees, and finds that no hearing is necessary to resolve the issue.

According to CHW, regardless of whether it formally appeared in the action, "it is appropriate to compensate [the] firm for the very important work it performed prior to [the]

---

[4] Defendants note that, in the billing records that have been submitted by CHW, the last time entry, dated August 4, 2014, "indicates that . . . [CHW was] "drafting a retainer agreement," but "[t]here is no indication that the draft retainer agreement was ever forwarded to any of the plaintiffs or signed . . . ."  (Def. Mem., at 4; *see also* Hecker Decl., Ex. A (billing records), p. 3.)

filing [of the Complaint]."  (Hecker Decl. ¶ 12; *see also* Hecker Reply Decl. ¶ 3 (citing *Ramos Padro v. Commonwealth of Puerto Rico*, 100 F. Supp. 2d 99 (D.P.R. 2000) (holding that civil rights statute did "not require than an attorney must have made an appearance in a case in order for her fees to be reimbursable"); *Invision Media Services, Inc. v. Glen J. Lerner*, 175 Fed. App'x 904 (9th Cir. Apr. 13, 2006) (finding it an abuse of discretion to deny attorneys' fees for work performed prior to formal appearance); *Watson v. E.S. Sutton, Inc.*, No. 02cv2739 (KMW) (THK), 2006 WL 6570643, at *3-5 (S.D.N.Y. Aug. 11, 2006) (awarding fees for pre-litigation work performed by prior counsel).)  CHW also concedes that it never obtained a written retainer agreement from Plaintiffs (Hecker Reply Decl. ¶ 4), but notes that Defendants have cited no authority for the proposition that "a civil rights defendant has no obligation to pay attorneys' fees for work performed prior to the execution of a written retainer agreement."  (Hecker Reply Decl. ¶ 4.)

CHW suggests that Defendants' actual, if unstated, argument is based *not* on any legal principle that would render a fee award impermissible, but rather on innuendo that Plaintiffs, who own the right to an award of their reasonable attorneys' fees, might not – in light of the lack of a retainer agreement – "pay those court-awarded fees to [CHW]."  (Hecker Reply Decl. ¶ 6.) CHW responds to this by asserting that "surely the non-prevailing *defendant* who was adjudged to have *violated* the plaintiff's civil rights cannot persuasively argue that it should be relieved of its statutory obligation to pay reasonable fees because there may be some chance, in theory, that the client might resist turning the money over to the plaintiff's counsel."  (Hecker Reply Decl. ¶ 6 (emphasis in original).)

To the extent Defendants may be suggesting that Plaintiffs are seeking fees that they would redirect to themselves, rather than to counsel for whose services the fees are awarded, this

Court finds no reason to indulge in such speculation or to impugn Plaintiffs' motives in seeking the award.  First, there is no reason to believe that CHW did not, in fact, perform legal services that contributed meaningfully to the preparation of the Complaint in this action.  Second, the record contains no suggestion that Plaintiffs were dissatisfied with the work performed by CHW, or that its services were terminated for cause, which, under New York law, would preclude an award of fees.  (*See* Def. Mem., at 5 n.4 (citing *Teichner v. W & J Holsteins*, 64 N.Y.2d 977, 979 (N.Y. 1985).)  Third, the application for fees for the work performed by CHW attorneys was not made independently by CHW, as Defendants suggest, but rather was made by Plaintiffs. Plaintiffs expressly stated, in their moving brief, that, in addition to seeking fees for Ackman and HSC, they were also requesting fees for the services of CHW.  Although Plaintiffs noted that "CHW [would] be filing a separate declaration identifying the basis for its fee award" (Pl. Mem., at 8 n.4), the declarations by Hecker and Cuti were actually then filed by Plaintiffs, in support of Plaintiffs' application (*see* Dkts. 143, 144).  Accordingly, the request for fees for CHW raises no issue of standing.

Under the circumstances, this Court sees no need for a hearing in order to conclude that Plaintiff may recover fees for the work performed by CHW in the preparation of the Complaint. The reasonable value of that work is addressed below.

II.     **APPROPRIATE AMOUNT OF**
        **INTERIM ATTORNEYS' FEE AWARD**

    A.     **Applicable Legal Standards**

Generally, in determining whether an amount of claimed attorneys' fees is appropriate, the "starting point" is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case," which calculates a "presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill*, 522 F.3d at 183; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010) (internal quotation marks omitted)).  While "enhancements may be awarded in rare and exceptional circumstances," there is a "strong presumption" that the lodestar constitutes the proper award.  *Perdue*, 559 U.S. at 546.

In determining an attorney's reasonable hourly rate, the court considers the amount "a reasonable, paying client would be willing to pay."  *Arbor Hill*, 522 F.3d at 184.  As for the time component of the lodestar, an attorney's stated number of hours should be reduced by the court where it is greater than should have been required to litigate the case effectively, *see Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (time component of lodestar calculation "reflects hours worked that are neither excessive nor duplicative"), or where the attorney's proffered time records are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed or the time expended, *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10cv05256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (holding vague and block-billed time records insufficient to substantiate claimed expenditures of time; collecting cases).  In such circumstances, a percentage reduction may be applied as a "practical means of trimming fat" from a fee application.  *N.Y. State Ass'n for*

*Retarded Children v. Carey*, 711 F.2d 1136, 1142, 1146 (2d Cir. 1983).  In determining whether an excessive amount of time was expended on a matter, the court may also consider the nature and quality of the work submitted by counsel.  *See Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).

The party seeking attorneys' fees bears the burden of demonstrating that its claimed fees are reasonable.  *Thai-Lao Lignite (Thailand)*, 2012 WL 5816878, at *3 (citations omitted).  In support of its fee application, the moving party must submit contemporaneous time records that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." *Id.* (quoting *Carey*, 711 F.2d at 1148) (internal quotation marks omitted).

"The Second Circuit has consistently 'held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *TufAmerica Inc. v. Diamond*, No. 12cv3529 (AJN), 2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016) (quoting *U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 416 (2d Cir. 1989).)

### B.   Reasonable Hourly Rates

#### 1.   Rate for Ackman

Plaintiffs submit that they are "entitled" to recover attorneys' fees for Ackman at the rate of $525 per hour, because, according to Plaintiffs, this rate "is reasonable in light of his experience, his success in this case, and the prevailing rates charged by peer counsel in civil rights cases."  (Pl. Mem., at 5.)

Ackman has represented Plaintiffs from the outset of this litigation.  (*See* Ackman Decl. ¶¶ 4, 5; *see also* Hecker Reply Decl. ¶ 7 (noting that Ackman has "always had the relationship with the clients").)  He graduated from Columbia Law School in 1988 (Ackman Decl. ¶ 2), was

associated with Skadden, Arps, Slate, Meagher & Flom LLP "[a]t the beginning of [his] career" (*id.*), and then apparently migrated to a solo practice, *see* http://danackmanlaw.com. According to Ackman, his practice for the past 16 years has focused on class action litigation, "most often concerning the civil rights of taxi drivers," although he also handles commercial cases. (Pl. Mem., at 5; *see also* Ackman Decl. ¶¶ 2, 3.)

The examples provided by Ackman, however, of similar class actions that he has litigated in the past (*see* Ackman Decl. ¶¶ 2, 3), includes only five federal actions, two of which apparently resulted in decisions adverse to Ackman's clients, *see El-Nahal v. Yassky*, 993 F. Supp. 2d 460 (S.D.N.Y. 2014), *aff'd*, 835 F.3d 248 (2d Cir. 2016) (granting summary judgment to defendants); *Mordukhaev v. Daus*, No. 09cv5149 (SHS) (RLE), 2010 WL 3792191 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 457 F. App'x 16 (2d Cir. 2012) (granting motion to dismiss); one of which resulted in partial relief to the plaintiffs and a settlement before trial, *see Padberg v. McGrath-McKechnie*, No. 00cv3355 (RJD) (E.D.N.Y.); *see also* Ackman Decl. ¶ 2; one of which resulted in a denial of class certification without prejudice pending the parties' settlement discussions, *see Rothenberg v. Daus*, No. 08cv567 (SHS) (Dkt. 269); and the last of which, while still active, appears to have been sharply limited in scope from the claims as initially asserted, *see Nnebe v. Daus*, No. 06cv4991 (KMK).[5]  Although Ackman represents that the settlement in *Padberg* provided substantial relief to the plaintiffs, he has not described any other significant successes, and no information regarding his federal trial experience, if any.

---

[5] Defendants note that Ackman, again teamed with St. Laurent, also served as plaintiffs' counsel in *Singh v. Joshi*, another putative class action involving the constitutional rights of taxi drivers, filed in the Eastern District of New York; in that case, the court recently granted summary judgment in defendants' favor.  *Singh*, 201 F. Supp. 3d 245 (E.D.N.Y. 2016).

Furthermore, despite the seemingly specialized focus of his practice, it appears that, whenever Ackman has brought civil rights class actions, he has chosen to collaborate with other counsel, perhaps of greater experience, greater resources, or both.  Thus, while Ackman represents in his Declaration that he has "acted as lead counsel in numerous other putative class actions in state and federal court," in each of the actions he lists as illustrative, he has apparently served as *co*-lead counsel with one or more other attorneys or firms.  (*See* Ackman Decl. ¶ 3; *see also Padberg*, 108 F. Supp. 2d (referenced *id.* ¶ 2).)  Likewise, in the case now before this Court, Ackman has never represented Plaintiffs without having co-counsel – first CHW, then an attorney named Andrew J. Frisch, Esq. ("Frisch") (whose name appears on the Complaint, although no fees are being sought for his work in the instant fee application (*see* Ackman Decl. ¶ 4 (noting that Frisch "appeared early in the action, but soon withdrew")), and then HSC.

Indeed, while Ackman asserts that he was the "principal author" of the Complaint in this action (*id.*), he concedes that, in "formulating the [C]omplaint," he worked with both CHW and Frisch (*id.*).  According to Hecker, a CHW partner, "Mr. Ackman asked CHW to serve as co-counsel because of its broad civil rights experience and its expertise with difficult Fourth Amendment issues."  (Hecker Reply Decl. ¶ 7.)  Hecker represents that "CHW was instrumental in assisting Mr. Ackman in developing the legal theory on which Plaintiff prevailed," and "contributed significantly to the drafting of the [C]omplaint."  (*Id.*)  Along the same lines, although Plaintiffs note in their brief that Ackman "led the argument on [the summary judgment] motion" that resulted in a finding of liability, Plaintiffs also state that Ackman "worked hand-in-hand with Mr. St. Laurent" in briefing that motion.  (Pl. Mem., at 5.)

As for Plaintiffs' contention that Ackman's proposed hourly rate is warranted in light of his "success in this case" (*id.*, at 5), this Court notes that, while the degree of counsel's success

may ultimately be an important factor in determining reasonable attorneys' fees, *see Barfield v. New York City Health & Hospitals Corp.*, 537 F.2d 132, 152 (2d Cir. 2008), this factor is generally not taken into account in determining reasonable hourly rates, which, as noted above, should be dictated by what a "reasonable, paying client would be willing to pay," *Arbor Hill*, 522 F.3d at 184.  In any event, the parties here disagree as to how successful Plaintiffs have been to date.  Plaintiffs tout a "significant victory earned in this case thus far" (Pl. Mem., at 4), while Defendants point out that, to date, "only two of the five original plaintiffs have been granted summary judgment" (Def. Mem., at 1; *see also* Discussion, *infra*, at Section II(C)(1)).  Overall, this Court finds that, in setting hourly rates for counsel in this ongoing case, in which Plaintiffs have so far secured a partial ruling in their favor, there is no reason for this Court to depart, either upward or downward, from the prevailing rates in this District for civil rights litigators with similar levels of experience.

As for whether Ackman's proposed rate would accord with the prevailing rates charged by his peers, Plaintiffs contend that the rate sought by Ackman "fall[s] squarely in the middle of the range awarded by courts to experienced lead counsel in civil rights cases."  (Pl. Mem., at 3; *see also* Ackman Decl. ¶ 6 (stating that his requested rate "is in the middle of the range of rates awarded to peer counsel in similar cases in recent years").)  In support of this contention, Plaintiffs cite a number of other cases from this District in which civil rights attorneys have been awarded fees at rates upwards of $400 per hour, including cases in which highly experienced counsel have been awarded rates as high as $650 per hour, or even, in one case, $675 per hour. (*See* Pl. Mem., at 3-4 (citing cases).)[6]

---

[6] The cases relied upon by Plaintiffs include *Cruz v. Zucker*, No. 14cv4456 (JSR), 2017 WL 1093285, at *3-4 (S.D.N.Y. Mar. 10, 2017) (in class action regarding the denial of Medicaid coverage for certain treatments of gender dysphoria, awarding partners in large law firm reduced

Defendants, for their part, submit that Ackman's requested rate should be reduced to $350 per hour.  (Def. Mem., at 20.)  According to Defendants, Ackman's "hourly rate should be commensurate with the legal community for small firms or solo practitioners, characterized by few employees and minimal overhead."  (*Id.*, at 22 (citations omitted).)  In support of their contention that "[a]wards of $350 are typical for attorneys of comparable or *even greater experience* than [Ackman]" (*id.*, at 23 (emphasis in original)), Defendants themselves cite several cases, although, for the most part, those cases are older than the ones relied upon by Plaintiffs (*see id.* (citing cases)).[7]  Defendants also suggest that $350 would represent "a limited increase" over the rate that Ackman was awarded in 2006, in a case with the City that was settled.  (*Id.* (citing *Padberg*).)  Litigating this case through November 10, 2015, according to Defendants, was neither sufficiently "complex" nor "burdensome" to warrant the $525 hourly rate that Plaintiffs seek for Ackman.  (*Id.*)

---

rates of $675 an hour, and senior associates and counsel between $450 and $525 per hour); *Coakley v. Webb*, No. 14cv8438, 2016 WL 1047079, at *6 (S.D.N.Y. Mar. 10, 2016) (in action regarding City's removal of a child from parental care, reducing requested attorney rate, but finding $575 per hour to be reasonable); *Abdell v. City of New York*, No. 05cv8453 (RJS) (JCF), 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2016) (in Section 1983 case involving mass arrests, approving a range of rates for attorneys with different firms, of up to $650 per hour for highly experienced lead counsel); *Thomas v. City of New York*, No. 09cv3162 (ALC), 2016 WL 319982, at *7 (S.D.N.Y. Jan. 26, 2016) (in Section 1983 case, awarding attorneys' fees at reduced rates of between $400 and $450 per hour to counsel who obtained partial favorable verdicts); *Torres v. Gristede's Operating Corp.*, 2012 WL 3878144, at *2-3 (S.D.N.Y. Aug, 6, 2012) (in FLSA case, approving reduced partner rates ranging from $450 to $550 per hour); and *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (approving rate of $450 per hour for attorney with civil rights practice, who assisted lead counsel in the case).

[7] The cases cited by Defendants include *Lee v. Santiago*, No. 12cv2558 (PAE) (DF), 2013 WL 4830951, at *5-6 (S.D.N.Y. Sept. 10, 2013); *Adams v. New York State Educ. Dep't*, 630 F. Supp. 2d 333, 349-50 (S.D.N.Y. 2009); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, No. 04cv7174 (SAS) (JCF), 2005 WL 3338555 (S.D.N.Y. Dec. 7, 2005); and *M.S. v. N.Y. City Bd. Of Educ.*, Nos. 01cv4015, 01cv10871, 01cv10872 (CBM), 2002 U.S. Dist. LEXIS 22220 (S.D.N.Y. 2002), *aff'd,* 407 F. 3d 65 (2d Cir. 2005).

The reality is that courts in this District have approved a wide range of rates for attorneys engaged in civil rights work.  As has often been noted, "[p]recedent in the Southern District of New York demonstrates that a reasonable hourly rate for a civil rights attorney can range from $250 to $650," *Coakley*, 2016 WL 1047079, at *3 (citations omitted); *accord, e.g.*, *Abdell*, 2015 WL 898974, at *3, although it would appear that $250 is now well below the rates that are most commonly awarded in this market for partners or lead counsel.  In any event, before a court may award a rate at the higher end of the range, it should look to whether the prevailing party has met its burden of demonstrating the appropriateness of that rate for the attorney in question.  *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (noting that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorneys' own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience and reputation" (internal quotation marks and citation omitted)).

Here, Ackman does not even state the rate that he customarily charged his clients during the relevant period, much less the rate that his paying client were willing to pay, and Plaintiffs' memoranda provides little authority to show what other solo practitioners, of comparable levels of skill and experience in the civil rights field, typically charged in this market during that period.  This Court also notes that, if Ackman's experience in the particular areas of law implicated by this case were as significant as he seems to suggest, then it would be difficult to see why both he and his co-counsel would have needed to engage in so many hours of legal research to develop the theories advanced here.  (*See* Discussion, *infra*, at Section II(C) (reviewing hours recorded by counsel).)

Further, while being a solo practitioner or a member of a small firm is no bar to recovery of a high hourly rate if the attorney in question is sufficiently accomplished, *see, e.g.*, *Abdell*, 2015 WL 898974, at *3 (finding $650 per hour to be reasonable rate for lead counsel who was in solo practice); *Coakley*, 2016 WL 1047079, at *4-6 (finding $575 to be reasonable hourly rates for attorneys in two-person firm), in instances where high rates have been approved for such counsel, their levels of experience have usually been exceptional.  In *Abdell*, for example, which is one of the case relied upon by Plaintiffs, lead counsel had handled over 150 civil rights cases and, *inter alia*, was a faculty member at Cardozo Law School.  *See Coakley*, 2016 WL 1047079, at *4 (discussing *Abdell*).  In *Coakley*, another case cited by Plaintiffs, the two attorneys in question had "practiced civil rights law for nearly their entire 40-year careers." *Id*.  Typically, "smaller law firms . . . charge lower hourly rates than large, corporate firms," *id*., at *5, and courts in this district have often recognized the distinction in the rates that have been approved. *Compare, e.g*., *Lee*, 2013 WL 4830951, at *6 (noting, in 2013, that "the rates that have been approved by the Court for [civil rights] work by attorneys at small firms or in solo practice has tended to be lower than [the $500-per-hour rate] sought by [counsel] in this case, even where such attorneys have had substantial experience in their practice area," and reducing requested rate to $350 per hour), *with Cruz*, 2017 WL 1093285, at *3 (in civil rights case, awarding rates at the high end of the spectrum for work performed by the law firm of Willkie Farr & Gallagher).

Based on this Court's review of recent cases from this District, the information supplied by Ackman regarding his practice (and the lack of information regarding his customary rates and trial experience), and this Court's own familiarity with the rates customarily approved in this market for solo or small-firm civil rights attorneys of seemingly similar levels of skill and experience, this Court finds that $400 per hour would be a reasonable rate for the services

rendered by Ackman in this case.  *See, e.g.*, *Thomas*, 2016 WL 319982, at *6 (finding $450 per

hour to be a reasonable rate for a small-firm practitioner, with 16 years of concentration in police

misconduct cases, whose "hundreds" of cases had mostly settled, but who had argued several

cases at trial and on appeal, and further finding $400 per hour to be reasonable for attorney with

five-lawyer firm, who had tried four prior Section 1983 cases as lead trial counsel); *Bland v. City

of New York*, No. 14cv5398 (AT), 2016 WL 3443584, at *5 (S.D.N.Y. June 1, 2016) (in

evaluating lodestar in context of settlement, and where plaintiff's counsel had own practice,

noting that "a $400 hourly rate has been held reasonable by courts approving fee awards for

experienced attorneys in other civil rights actions in the Southern District"); *Spencer v. City of

New York*, No. 06cv2852 (KMW), 2013 WL 6008240, at *5 (S.D.N.Y. Nov. 13, 2013) (setting

rates of $400 per hour for small-firm and solo practitioner with stated lengthy histories of civil

rights work, but little evidence to justify the higher fees sought); *Greene v. City of New York*,

No. 12cv6427, 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) (finding the rate of $375 per

hour for attorney who had litigated numerous civil rights actions, mostly resulting in settlements,

to be "on par with rates charged by seasoned civil rights solo practitioners with comparable

experience"); *Lee*, 2013 WL 4830951, at *6 (finding rate of $350 per hour to be reasonable for

solo practitioner who had incorporated civil rights litigation into his practice only six years

earlier); *Agyapong v. Bohan*, No. 11cv586 (VB), 2013 WL 1687737 (S.D.N.Y. Apr. 9, 2013)

(finding $400 per hour to be reasonable rate for competent and professional solo practitioner who

averred that he had previously litigated approximately 400 civil rights cases, comprising about

two-thirds of his practice).

2.        **Rates for Hecker and Cuti**

For the CHW attorneys who assisted with the development of the legal theory of this case and the preparation of the Complaint, Plaintiffs seek to recover fees at the rates of $575 per hour, for Hecker, and $600 per hour, for Cuti.  (Hecker Decl. ¶ 13.)

Hecker earned his J.D. in 1997 from the University of Michigan Law School, clerked for three federal judges, and was formerly a partner at Emery Celli Brinckerhoff & Abady LLP ("Emery Celli").  (*Id*. ¶ 2.)  He represents that he served as lead counsel to the New York State Democrats in connection with the redistricting process following the 2010 Census, has been lead counsel "in many other civil rights cases," and has been named a "Super Lawyer" for civil rights litigation each year since 2009.  (*Id*. ¶ 3.)  In 2011, Hecker, together with two other former Emery Celli partners (including Cuti), founded CHW (*id*. ¶¶ 2, 6), a firm that holds itself out as a small "litigation boutique that handles a wide variety of commercial litigation, civil rights, and criminal matters," *see* http://www.cutiheckerwang.com.

Cuti earned his J.D. in 1990 from the NYU School of Law (Hecker Decl. ¶ 4), and began his legal career doing criminal defense work, first as a public defender (*id.*), and then at a small firm (*id*.).  After transitioning to civil rights work, he became one of the founding partners of Emery Celli in 1997 (then known as Emery Celli Cuti & Brinckerhoff), and, during his time at that firm, he reportedly "played a leading role" in First Amendment Ballot-Access litigations (*id.*) and other high-profile civil rights matters, including matters raising claims under the Fourth Amendment (*see id*.).  In 2004 Cuti transitioned to an in-house, general counsel role at a mortgage bank, and, in 2005, to a second such role, at Martha Stewart Living Omnimedia, Inc. (*Id*. ¶ 5.)  In 2007, he joined the firm of Davis Wright Tremaine LLP (*id.*), where he apparently litigated a variety of civil and criminal matters (*see id*.), until he left to co-found CHW (*id*. ¶ 6).

According to Hecker and Cuti, the rates they are seeking in this case "are the same rates that [they] regularly charge hourly paying clients, who are willing to pay, and regularly do pay, those hourly rates when [CHW] is retained and paid by the hour."  (*Id.* ¶ 14; *see also* Cuti Decl. ¶ 2 (confirming accuracy of statements in Hecker Decl.).)  Hecker also states, as mentioned above, that CHW was asked by Ackman to serve as his co-counsel "because of [CHW's] broad civil rights experience and . . . expertise."  (Hecker Reply Decl. ¶ 7.)

In this regard, this Court notes that Emery Celli, where both Hecker and Cuti had gained past experience, is a "preeminent" civil rights firm, *Betances v. Fischer*, 304 F.R.D. 416, 428 (S.D.N.Y. 2015), and that courts in this District have, in the past, approved hourly rates of more than $400 for partners and senior counsel with that firm, *see, e.g.*, *Short v. Manhattan Apartments, Inc.*, No. 11cv5989 (SC), 2013 WL 2477266, at *3 (June 10, 2013) (approving rate of $525 per hour for attorney of counsel to Emery Celli firm); *see also Wise v. Kelly*, 620 F. Supp. 2d 435, 445, 447 (S.D.N.Y. 2008) (in 2008, finding rate of $425 per hour to be reasonable for named partner in Emery Celli firm, and noting that "[t]his Court may also take judicial notice of [Emery Celli's] high reputation, . . . finding it to be one of the most competent, successful, and reputable civil rights firms practicing in this Court").  This might suggest that Hecker and Cuti, as former Emery Celli partners, could reasonably command rates for their work near the higher end of the rates that have been approved in this District for small-firm practitioners – and higher than the rate that this Court has found to be reasonable for Ackman.

Nonetheless, based on the nature of the work performed by Hecker and Cuti in this particular case, this Court does not find that the $575 and $600-per-hour rates they are seeking would be reasonable.  While their billing records do reflect a fair amount of senior-level involvement in this case – frequently engaging in conferences with the "team" regarding

potential claims and strategy, and reviewing and revising the Complaint that was presumably

drafted by Ackman in the first instance (*see generally* Hecker Decl., Ex. A) – their records also

show that a very substantial amount of their time was spent performing legal research and

reading case law (*see id.*; *see also* Discussion, *infra*, at Section II(C)(2)).  In fact, of the 30 time

entries recorded in CHW's submitted billing records, 24 reflect that at least some of the recorded

time[8] was spent on legal research or the review of case law.[9]  While it is understandable that a

solo practitioner, like Ackman, would engage in his own legal research, CHW contends that it

was brought into this case by Ackman specifically *because of its expertise* in the areas of

constitutional law implicated by the case.  (*See* Hecker Reply Decl. ¶ 7.)  Under the

circumstances, and also because legal research is generally considered to be work that is capable

of being performed by more junior attorneys and that should not be billed at partner-level rates,

*see, e.g.*, *Pig Newton, Inc. v. Boards of Directors of The Motion Picture Indus. Pension Plan*,

No. 13cv7312 (KPF), 2016 WL 796840, at *7 (S.D.N.Y. Feb. 24, 2016) (collecting cases), it

---

[8] CHW's time records are block billed, such that this Court cannot ascertain the amount of time spent on particular tasks.  (*See generally* Hecker Decl., Ex. A; *see also* Discussion, *infra*, at Section II(C)(2), regarding all counsel's use of block billing in this case.)

[9] *See* Hecker Decl., Ex. A (time entries for 7/8/14 ("legal research regarding the Fourth Amendment and civil forfeiture" (Cuti); "legal research re potential claims" (Hecker)); 7/9/14 ("Legal research" (Hecker); "Legal research regarding Fourth Amendment seizure law" (Cuti)); 7/10/14 ("Legal research re potential claims" (Hecker); "Researching 4th amendment law" (Cuti)); 7/11/14 ("Legal research" (Hecker); "Reading SCOTUS 4th amendment cases" (Cuti)); 7/12/14 ("legal research" (Hecker); 7/14/14 ("Legal research re potential claims" (Hecker); "Continuing legal research regarding 4th amendment issues" (Cuti)); 7/15/14 ("legal research" (Hecker)); 7/16/14 ("Research and review legislative history" (Hecker)); 7/28/14 ("Legal research regarding 4th amendment issues at NYU Law Library" (Cuti)); 7/29/14 ("Reviewing Lafave treatise regarding seizure of automobiles" (Cuti)); 7/30/14 ("legal research" (Hecker); "Reviewing Supreme Court case law" (Cuti)); 7/31/14 ("legal research" (Hecker); "Reading Supreme Court 4th Amendment cases" (Cuti)); 8/1/14 ("legal research re procedural due process and class certification" (Hecker); "Reviewing 4th Amendment cases" (Cuti)); 8/3/14 ("Legal research re Knowles issues" (Hecker)); 8/4/14 ("Reviewing case law regarding warrantless seizures" (Cuti); "Follow up research" (Hecker))).

would not be reasonable for the Court to approve the rates sought by CHW in this instance.

Rather, it would be more appropriate to approve a rate here for Hecker and Cuti that is higher

than that approved for Ackman, but not significantly so.  This Court finds that, in this particular

case, a rate of $450 per hour would be reasonable for the work performed by both Hecker and

Cuti.

### 3.   Rates for St. Laurent, Charlemagne, and HSC Paralegals

Plaintiffs seek an hourly rate of $550 per hour for St. Laurent, a name partner of HSC;

$350 per hour for Charlemagne, represented to be a "mid[-]level" associate (St. Laurent Decl.

¶ 11); and $100 per hour for Yuan and Francois, the two HSC paralegals.  (Pl. Mem., at 3.)

Plaintiffs argue that St. Laurent's hourly rate "is reasonable because it reflects his

significant experience in civil rights cases [and] in trial work," and is the same rate that was

awarded to St. Laurent's partner at HSC, Priya Chaudhry ("Chaudhry"), in *Abdell*.  (Pl. Mem.,

at 6.)  St. Laurent represents that he earned his J.D. from Columbia Law School in 1998; that he

clerked for both a federal district and appellate judge; that he served as Chair of the United States

Sentencing Commission; that, following his clerkships, he was associated with the firm of

Morvillo, Abramowitz, Grand, Iason & Anello P.C.; that he then worked as a criminal defense

attorney with the Legal Aid Society; and that he became a partner in the predecessor firm to HSC

in 2009.  (St. Laurent Decl. ¶¶ 3-4.)  St. Laurent also states that he has tried more than 15 cases

to verdict as lead counsel, including a Section 1983 case that, he concedes, resulted in a defense

verdict.  (*Id.* ¶ 5.)  He also states, without any specifics, that he has "represented several other

plaintiffs in civil rights cases which resulted in settlements."  (*Id.* ¶ 6.)  St. Laurent further states

that, during the period from 2013 to 2015, he was both named a New York "Super Lawyer" and

included in the *National Trial Lawyers* list of "Top 100 Trial Lawyers in New York."  (*Id.* ¶ 7.)

The recitation of St. Laurent's background and experience is generally consistent with the information provided on HSC's website, which leads off by stating that he is "[a] deep thinker and legal scholar."  *See* http://sc-harris.com/attorneys/andrew-st-laurent/.  According to St. Laurent, his "'standard billing rate' for cases without discounts or premiums is $625 per hour."  (St. Laurent Decl. ¶ 8.)

Plaintiffs have offered no information regarding the background or experience of Charlemagne, but have noted that, in *Abdell*, the Court approved a rate of $350 per hour for her work, the same rate that is being sought here.  (Pl. Mem., at 7.)  This Court has reviewed the papers submitted in *Abdell* in 2014, in support of a fee award, and notes that, at that time, HSC (then known as Harris, O'Brien, St. Laurent & Chaudhry LLP) disclosed that Charlemagne was considered a "junior associate" with the firm, having received her law degree in 2012.  (*See* Dkt. 414 in No. 05cv8453.)  Based on this information, it appears that, for most of the period at issue in Plaintiffs' interim fee application (*i.e.*, November 2014 to November 2015), Charlemagne would have only been a third-year associate.[10]  Plaintiffs also note that the court, in *Abdell*, approved the rate of $100 per hour for HSC paralegals, and that this is also the same rate being requested here.  (*See* Pl. Mem., at 7.)

Defendants challenge the hourly rate being sought for St. Laurent as excessive, pointing out that, with the exception of one Section 1983 case (which he lost at trial), St. Laurent has not listed any of the cases in which he served as trial counsel, or any in which he achieved favorable settlements.  (Def. Mem., at 23-24.)[11]  Defendants also point out that St. Laurent has provided no

---

[10] It also appears that, at some point, Charlemagne left HSC, as her name does not currently appear on its website.  *See* http://sc-harris.com.

[11] *See also* n.5, *supra*, referencing another civil rights case in which St. Laurent served as co-counsel with Ackman, that again resulted in a judgment adverse to plaintiffs.

evidence that clients generally pay his professed "standard billing rate." (*Id.*, at 24.)  Defendants
additionally note that the work performed by St. Laurent in this case, during the relevant period,
largely consisted of legal research and the drafting of summary judgment papers, tasks that
Defendants contend "were comparable to associate work that should not be compensated at [a]
senior partner rate[]." (*Id.*)  As to Charlemagne, Defendants object to her proposed hourly rate
on the grounds that HSC have provided no information regarding her "educational or work
background" to justify that rate (*id.*, at 2), and that the work that the billing records show her to
have performed – "drafting a one-page extension letter and filing it with the Court" – "could
have been handled by a paralegal or a member of the clerical staff" (*id.*, at 24).

   This Court agrees with Defendants that Plaintiffs have not justified the $550 hourly rate
that they have requested for St. Laurent.  First, it appears that, prior to the time he joined HSC,
St. Laurent was a criminal defense attorney, and, at the times relevant here, he had only been
with HSC from five to, at most, seven years.  Second, unlike both Ackman and CHW, HSC – a
firm of approximately 18 attorneys, *see* http://sc-harris.com – does not hold itself out as having
any particular expertise in civil rights cases; rather, the firm states on its website that it has
expertise in the following four practice areas:  "commercial disputes," "investor litigation and
arbitration," "employment litigation and counseling," and "criminal defense and regulatory," *see*
http://sc-harris.com/practice-areas/.  Third, regardless of whether HSC, as a firm, has a
significant civil-rights practice, St. Laurent has not demonstrated that he, personally, brought any
notable experience in civil-rights litigation to the table when he joined Ackman as co-counsel in
this case.  In this regard, he has identified only one such case that he had previously litigated, and
otherwise made only vague assertions.  Finally, once he appeared in the action as co-counsel,
St. Laurent does not appear to have taken the senior role in the case.  Rather, as Defendants aptly

observe, his time records reflect that he was primarily engaged in legal research and drafting. (*See generally* St. Laurent Decl., Ex. A.)  While Ackman spent much of his time engaged in these same types of activities (*see* Ackman Decl., Ex. A), such that he and St. Laurent might be seen as equals in their preparation of the summary judgment motion that led to Plaintiffs' partial success, some of the tasks performed by St. Laurent, such as drafting and circulating a stipulation for a motion schedule (St. Laurent Decl., Ex. A (time entry for 12/5/14)), reviewing a table of contents and table of authorities (*id*. (time entry for 2/26/15)), reviewing the work of a paralegal "on courtesy copies" (*id*. (time entry for 2/27/15)), and generally proofreading and cite-checking motion papers (*see id.* (time entries for 1/6/15 and 11/4/15)) cannot, in any sense, be considered partner-level work.  Indeed, when Ackman's and St. Laurent's time records are viewed side-by-side, it is difficult to see why St. Laurent's billing rate should be set higher than Ackman's, and, given that, unlike Ackman (and CHW), St. Laurent has not demonstrated any significant background in civil rights litigation, this Court concludes that his rate should actually be set lower.  All in all, this Court finds $375 per hour to be a reasonable rate for St. Laurent's work in this case.[12]

This Court further finds that the rate approved for Charlemagne in *Abdell* is higher than should be approved here, given her modest years of experience and the fact that the very few tasks she performed in this case required very little skill.  Although this Court agrees that $350

---

[12] As general matter, this Court notes that, with the exception of the 1.25 hours in this case billed by Charlemagne and the 6.5 hours billed by HSC paralegals (mostly, it seems, for creating courtesy copies of motion papers (*see* St. Laurent Decl., Ex. A (Francois time entry for 3/6/15)), *all* of the staffing on this case, on Plaintiffs' side, has been with senior attorneys.  Both CHW and HSC apparently employ associate attorneys, but it seems that none were added to the team to conduct any legal research or to perform any drafting of pleadings or motion papers.  Instead, all such work was performed by Ackerman, Hecker, Cuti, and St. Laurent.  This alone suggests the propriety of a downward adjustment of the partner-level rates that have been requested for all four of these attorneys.

per hour can represent a reasonable mid-level associate rate in many cases, Charlemagne was

acting as a junior associate here, and this Court thus finds $250 to be a more appropriate rate for

her, in this case.  This Court does, however, find HSC's proffered paralegal rate of $100 per hour

to be reasonable and, indeed, somewhat lower than the rates often awarded to paralegals for

similar litigation work in this District.  *See, e.g.*, *Laboy v. Office Equip. & Supply Corp.*,

No. 15cv3321 (RA) (AJP), 2016 WL 5462976, at *17 (S.D.N.Y. Sept. 29, 2016) (in FLSA

context, hourly rates between $100 and $150 for paralegal work are reasonable) (collecting

cases), *report and recommendation adopted,* No. 15cv3321 (RA), 2016 WL 6534250 (S.D.N.Y.

Nov. 2, 2016); *E.F. ex rel. N.R. v. New York City Dep't of Educ.*, No. 11cv5243 (GBD) (FM),

2014 WL 1092847, at *4 (S.D.N.Y. Mar. 17, 2014) (in a Disabilities Education Improvement

Act case, finding $150 to be a reasonable hourly rate for a senior paralegal and $125 for other

paralegals); *Rosado v. City of N.Y.*, No. 11cv4285 (SAS), 2012 WL 955510, at *5 (S.D.N.Y.

Mar. 15, 2012) ($125 reasonable hourly rate for paralegal activities); *Tatum v. City of N.Y.*,

No. 06cv4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (in a

Section 1983 action, noting that case law supported the requested rate of $125 per hour for

paralegal work in civil rights litigation).

### C.    <u>Reasonable Hours Expended</u>

In challenging the reasonableness of the hours worked by counsel on this case,

Defendants raise a number of arguments.  They assert that counsel engaged in duplicative work

(Def. Mem., at 10-13), inappropriately block-billed their time and provided descriptions of tasks

that are overly vague (*id.*, at 13-15), and created inefficiencies by "cycl[ing] through three

different sets of co-counsels" (*id.*, at 16-17).  Defendants also argue that time incurred for

"wasteful" work – particularly time spent preparing what Defendants describe as Plaintiffs'

"unnecessary" motion for a permanent injunction – should be excluded from any fee award (*id.*, at 15-16), and that any awarded fees should be reduced, *pro rata*, to cover only work performed for the named plaintiffs who have actually prevailed to date (*id.*, at 17-18). This Court has considered each of Defendants' arguments and rejects some, although it finds others to have merit.

### 1.   Time Spent by Counsel on Purportedly Unnecessary Work and on Work Performed for "Non-Prevailing" Plaintiffs

First, this Court disagrees with Defendants that counsel's hours should be reduced, "off the top," by the time counsel spent working on the permanent injunction motion. (*See* Def. Mem., at 15-16, 18.) Defendants contend that the motion was unnecessary because of their voluntary cessation of the conduct held to have been unlawful (*see* Def. Mem., at 15), and Plaintiffs concede that, in light of her summary judgment ruling, Judge Caproni urged them not to proceed with the motion (Pl. Reply Mem., at 7). Nonetheless, in this Court's view, Plaintiffs' counsel was entitled to seek a Court-ordered injunction for their clients, if they believed there were grounds for such relief, rather than accept a less formal result. Moreover, Judge Caproni granted Plaintiffs leave to withdraw the motion without prejudice to renew, "if appropriate, at a later stage of the case" (Dkt. 87), undercutting Defendants' assertion that the motion was necessarily "wasteful" (Def. Mem., at 15-16).

Second, this Court does not accept that the 7.2 hours billed by St. Laurent in connection with the September 24, 2015 oral argument on summary judgment should be subtracted, in its entirety, from his total time. (Def. Mem., at 11-12, 15, 18 (referencing St. Laurent Decl., Ex. A (time entries of 1.3 hours on 9/21/15 and 5.9 hours on 9/24/15)).) Defendants state that Ackman was the one who actually presented Plaintiffs' argument that day, and represent that "[t]he extent of [St. Laurent's] involvement in the oral argument was introducing himself to the Court." (Def.

Mem., at 12 (citing 9/24/15 Oral Argument Tr. 2:8-9).)  This is not a case, though, where counsel's time records show that every proceeding and client conference was jointly attended, reflecting an obvious and consistent pattern of double staffing.  *See, e.g.*, *Daiwa Special Asset Corp. v. Desnick*, No. 00cv3856, 2002 WL 31767817, at *3, *4 (S.D.N.Y. Dec. 3, 2002) (reducing requested fees by 50% where gross overstaffing by counsel was evident from, *inter alia*, the fact that, for every one of the 21 depositions taken in the action, at least two of plaintiff's attorneys billed time for preparation, travel (often long distance), and attendance).) While a minor deduction of hours may be appropriate for having two attorneys attend an oral argument, *see Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 188 F. Supp. 3d 333, 342 (S.D.N.Y. 2016) (citing cases), the argument here was on key dispositive motions, and this Court does not find it excessive for two attorneys, working as a team, to have prepared for that argument and to have attended it.  In any event, any unreasonable staffing for the oral argument would be sufficiently accounted for by the overall percentage reduction of co-lead counsel's time that this Court finds appropriate to impose to address the more general issue of their duplication of effort.  (*See* Discussion, *infra*, at Section II(C)(2).)

Finally, this Court is not persuaded by Defendants' argument that Plaintiffs' counsel's time during the period relevant to the interim fee application should be reduced, *pro rata*, because only certain of the named Plaintiffs have prevailed to date.  (*See* Def. Mem., at 17-18.) It is true, as Defendants point out, that Judge Caproni's grant of partial summary judgment did not extend to plaintiffs John Peters Professional Limousines ("Peters Limousines") and Susan Calvo ("Calvo").  (*See* Def. Mem., at 1 n.2; *see also* Dkt. 74.)  In addition, subsequent to the Court's grant of summary judgment, it vacated judgment in favor of plaintiff Harrell, dismissing his claims with prejudice, for failure to prosecute or to provide discovery.  (*See* Dkt. 160.)

Plaintiffs argue that, while it "may be technically true" that only two of the original five named Plaintiffs are thus currently assured judgment in their favor, Defendants' argument for a *pro rata* reduction in counsel's hours "ignores that this is a unitary case in which counsels' entire effort has been to establish the unconstitutionality of a widespread policy and practice that was applied uniformly to each of the plaintiffs." (Pl. Reply Mem., at 2.)  This Court finds that Defendants' objections as to the recovery of fees by any non-prevailing Plaintiffs are overstated, and, in any case, do not warrant a reduction in counsel's stated hours.

In *Adorno v. Port Auth. Of N.Y. & N.J.*, 685 F. Supp. 2d 507, 518 (S.D.N.Y. 2010), on which Defendants rely (*see* Def. Mem., at 18), a jury made findings of fact against five of seven plaintiffs in an employment discrimination lawsuit, *Adorno*, 685 F. Supp. 2d at 516, which resulted in the court's downward revision of the plaintiffs' attorney-fee award, *id*.  In this case, however, the Court merely found that disputed issues of fact remain as to whether Calvo and Peters Limousines will eventually qualify for relief, which is not analogous to the affirmative finding in *Adorno* that certain plaintiffs had not carried their burden of proof.  In support of their argument for a reduction in fees proportionate to the number of named plaintiffs who have prevailed to date, Defendants also cite *Matthews v. City of New York*, 2003 U.S. Dist. LEXIS 16334, at *14-15 (E.D.N.Y. Aug. 22, 2003) (cited in Def. Mem., at 18), in which the Eastern District awarded the individual plaintiff a 1/31 share of fees and expenses attributable to her attorney's defense of a disqualification motion, so apportioned because of counsel's strategic "manipulat[ion]" of the number of actions brought on behalf of individual plaintiffs with similar false arrest and illegal strip search claims.  *Matthews*, 2003 U.S. Dist. LEXIS 16334, at *14-15. In this case, which involves a number of named plaintiffs and possible class action certification (*see* Dkt. 165 (motion for class certification)), *Matthews* is inapposite.  Moreover, even without

28

class certification, the ruling obtained by Plaintiffs regarding the City's unconstitutional seizure practice will affect far more than the two currently prevailing named plaintiffs.

Finally, in reviewing counsel's time records, this Court finds that the work performed for different plaintiffs is not readily divisible.  Rather, this Court agrees with Plaintiffs that, in this case, "[t]here can be no distinction between the efforts [made by counsel] on behalf of one named plaintiff as opposed to another or for the putative class as a whole."  (Pl. Reply Mem., at 2.)  As counsel's work was performed on behalf of all Plaintiffs, the fact that the Court's summary judgment decision currently benefits only two of the Plaintiffs does not call for a reduction in counsel's hours.  *Cf. Hensley*, 461 U.S. at 435 (noting that attorneys' fees may be awarded for work performed by counsel on unsuccessful claims as well as successful ones, where a plaintiff's claims "involve a common core of facts or [are] based on related legal theories"); *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (acknowledging that "full fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined").

### 2.    Duplicative Work, Staffing Inefficiencies, Block-Billing, and Vagueness of Time Entries

Defendants' arguments regarding deficiencies in the record-keeping of Plaintiffs' counsel and their seeming duplication of effort are more compelling.  As a preliminary matter, the dual staffing of the case – *i.e.*, the pairing of Ackman with attorneys at other firms – has led to a high number of telephone calls, conferences, and emails between and among counsel, suggesting at least some inefficiency.  (*See, e.g.*, Hecker Decl., Ex. A (30 out of 30 time entries reflecting some form of attorney discussion or correspondence); Ackman Decl., Ex. A (reflecting numerous conferences and emails with Hecker and Cuti, and then with St. Laurent); *see also, e.g.*, *Congregation Rabbinical College*, 188 F. Supp. 3d at 342 (noting inefficiencies in staffing where counsel "spent approximately 16 hours conferring with one another").)  More problematic,

though, is the fact that, from the manner in which counsel recorded their time, it is impossible for this Court to discern the extent to which the work they performed on the case – the bulk of which involved legal research and the drafting of papers – was duplicative.

As Defendants point out, each of the attorneys who kept time records here engaged in the practice of block billing, meaning that they clustered different types of tasks, such as legal research, drafting (sometimes of different papers), and/or conferences into the same time entries, without breaking out the amount of time spent on each particular task.  (*See, e.g*., Ackman Decl., Ex. A (time entries for 2/22/15, 2/23/15, and 2/24/15 (recording 7.5, 7.5, and 6.5 hours, respectively, for combined legal research and drafting)); Hecker Decl., Ex. A (time entries for 7/30/14 (Hecker) (recording 2.8 hours for "Edit and revise complaint; legal research; discussions and correspondence with D. Ackman and J. Cuti re pleading, claims, and class issues") and 7/31/14 (Cuti) (recording 4.6 hours for "Reading Supreme Court 4th Amendment cases; lengthy discussion with E. Hecker regarding plain view, Soldal, and Knowles; review and revise draft complaint; email correspondence with E. Hecker and D. Ackman regarding same; reading Second Circuit's Krimstock decisions; additional email with D. Ackman and E. Hecker regarding same")); St. Laurent Decl., Ex. A (time entries for 12/22/14, 12/24/14, and 12/26/14, 12/27/14, and 12/29/14 (recording 9.1, 4.0, 5.5, 5.0, and 4.0 hours, respectively, for combined research and drafting)).)  While block billing is "not prohibited in this Circuit," as long as the Court can determine, from context, the overall reasonableness of the total hours claimed, *Zimmerman v. Portfolio Recovery Assocs.*, No. 09cv4602 (PGG), 2013 WL 6508813, at *11 (S.D.N.Y. Dec. 12, 2013) (internal quotation marks and citation omitted), counsel's extensive use of bock billing in this case does hinder this Court's ability to understand how much time was devoted to particular tasks, so as to determine whether that time was reasonably spent.

Compounding this concern, the vagueness of counsel's descriptions of many of the tasks they performed make it extremely difficult for this Court to determine whether Plaintiffs' attorneys were engaged in duplicative work.  For example, before the Complaint was filed, it may be that Ackman, Heckman, and Cuti were each researching different legal issues, but, from the records presented, it seems equally possible that they were researching the very same points. (*Compare, e.g.*, Ackman Decl., Ex. A (time entries dated 5/27/14 ("legal research re seizures, 4th amd law and 19-506"), 7/9/14 ("legal res on seizure and 4th amt."), 8/4/14 ("legal res on 4th amt cases")) *with* Hecker Decl., Ex. A (time entries dated 7/8/14 (Cuti) ("legal research regarding the Fourth Amendment and civil forfeiture"), 7/9/14 (Cuti) ("Legal research regarding Fourth Amendment seizure law"), 7/10/14 ("Researching 4th amendment law"), 7/11/14 (Cuti) ("Reading SCOTUS 4th amendment cases")).)

In fact, with respect to legal research, some of counsel's time entries, particularly those of St. Laurent, do not even identify the subject matter of the research being undertaken, providing the Court with no means whatsoever of determining if there was overlap or duplication of effort. (*Compare, e.g.*, Ackman Decl., Ex A (time entries dated 12/18/14 ("res. and draft summary judgment brief"), 12/19/14 ("legal res. and draft summary judgment brief")) *with* St. Laurent Decl., Ex. A (time entries dated 12/17/14 ("Review documents and do legal research for motion"), 12/19/14 ("Legal research for memorandum of law"), 12/26/14 ("Legal research & drafting on motion for summary judgment")).)  Attorney time entries that merely indicate that "research" was performed are often considered too vague to justify full recovery of fees, *see, e.g.*, *D.J. ex rel. Roberts v. City of New York*, No. 11cv5458 (JGK) (DF), 2012 WL 5431034, at *7-8 (S.D.N.Y. Oct. 16, 2012) (time entries "that merely state[] that 'research' was performed, without describing the issues for which research was required, are generally considered too

vague to justify full recovery" (collecting cases)), *report and recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (Nov. 7, 2012), and, here, the vagueness is particularly problematic, given the similarities of time entries, during the same time periods, by different counsel.

The presented time records are additionally unclear as to whether counsel divided their work efficiently in drafting different portions of Court filings, or if their drafting efforts were redundant.  In describing their work on the summary judgment motion, for example, Ackman recorded much of his time as "draft summary judgment brief" (*see, e.g.*, Ackman Decl., Ex. A (time entries dated 12/17/14, 12/18/14, 12/19/14, 12/23/14)), while St. Laurent recorded much of his as "drafting on motion for summary judgment" (*see, e.g.*, St. Laurent Decl., Ex. A (time entries dated 12/26/14, 12/27/14, 12/28/14, 12/29/14)).  Along the same lines, it cannot be determined from the submitted time records whether Ackman or St. Laurent took the lead in preparing the Amended Complaint, as both attorneys' billing records describe "revis[ing]," "review[ing]," or "edits to" that pleading.  (*See* Ackman Decl., Ex. A, (time entries dated 11/11/14, 11/12/14); St. Laurent Decl., Ex. A (time entries dated 11/7/14, 11/10/14, 11/11/14, 11/12/14, 2/26/15).)

The question here is not simply whether counsel's block billing, or the vagueness of certain of their time entries, themselves warrant a reduction in their stated hours.  Standing alone, these issues might indeed justify a reduction in counsel's time (*see, e.g.*, cases cited in Def. Mem., at 13, 14), but the problem in this case is greater than mere record-keeping deficiencies. In short, *because* of the ways in which counsel kept track of their time, this Court simply cannot determine whether the model employed by Ackman to staff this case with "co-lead counsel," all of a partner level, resulted in a substantial duplication of work, and thus substantial inefficiency.

It is Plaintiffs' burden to demonstrate that their attorneys' fees were reasonably incurred, and the Court should not have to guess as to whether the work being performed by co-counsel was distinct, somewhat overlapping, or largely duplicative.

Defendants tally the hours recorded by Ackman and CHW during the period before the Complaint was filed, and assert that Ackman "is claiming 67.4 hours associated with the research, formulating, drafting and editing of the [C]omplaint," while the CHW attorneys are "also claiming 66.7 hours towards research and formulating the [C]omplaint." (Def. Mem., at 10-11.) Similarly, by Defendants' math, Ackman dedicated 72.6 hours to Defendants' motion to dismiss and Plaintiffs' summary judgment motion between October 31, 2014 and February 26, 2015, while, over the same period, St. Laurent billed 88.75 hours for "conducting similar research and seemingly having overlapping drafting responsibilities . . . ." (*Id.*, at 11.) Defendants argue from this that it is evident that Plaintiffs "utilized multiple attorneys without any serious effort to prevent overlapping duties or waste," and further argue that this warrants a significant, across-the-board percentage reduction. (*See* Def. Mem., at 12 (citing *Simmonds v. N.Y. City Dep't of Corr.*, 2008 U.S. Dist. LEXIS 74539, at *22 (S.D.N.Y. 2008) (applying 40% reduction where two firms were "heavily involved in all aspects of the litigation," such that, *inter alia*, they both engaged in "drafting and revising the pleadings," and "routinely reviewed and revised each other's work product")).)

Courts in this District have applied reductions, often between 15 to 30 percent, to account for vague time records and the resulting inability of the Court to assess the reasonableness of counsel's hours and staffing decisions. *See, e.g., Spalluto v. Trump Int'l Hotel & Tower*, No. 04cv7497 (RJS) (HBP), 2008 WL 4525372, at *9 (S.D.N.Y. Oct. 2, 2008) (applying 15% reduction for "substantial use of block-billing coupled with vague time entries" by two partners

and senior associate, and further reducing co-counsel solo practitioner's hours by 75%);

*Custodio v. Am. Chain Link & Const., Inc.*, No. 06cv7148 (GBD), 2014 WL 116147, at *16

(S.D.N.Y. Jan. 13, 2014) (applying 15% reduction for block billing and vagueness in billing

records of partner and solo practitioner working as co-counsel); *Ass'n of Holocaust Victims for*

*Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04cv3600 (SWK),

2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (applying 25% reduction for "block billing,

vagueness, and excess" across time entries of eight attorneys with same law firm); *Tucker v.*

*Mukasey*, No. 03cv3106 (LTS) (FM), 2008 WL 2544504, at *2 (S.D.N.Y. June 20, 2008)

(applying 30% reduction for "excessive, unnecessary, and/or vague" time entries where "many

entries note[d] that several lawyers billed simultaneously on a single task").  On occasion,

however, such reductions have been as high as 40 or 50 percent.  *See, e.g.*, *Carter v. Inc. Vill. of*

*Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (affirming 40% reduction in hours billed by two

assistant county attorneys whose billing records were "redundant, duplicative or unnecessary");

*Williamsburg Fair Hous. Comm, v. New York City Hous. Auth.*, No. 76cv2125 (RWS), 2007 WL

486610, at *5 (S.D.N.Y. Feb. 14, 2007) (applying reduction of "just over fifty percent" for vague

and duplicative time entries of two co-counsel).

In this instance, this Court concludes that a reduction of 30 percent of the hours recorded

for all co-lead counsel – *i.e.*, Ackman, Hacker, Cuti, and St. Laurent – would be reasonable to

address these issues.  *See, e.g.*, *Congregation Rabbinical College*, 188 F. Supp. 3d at 344

(imposing a 30% reduction of total number of hours for which fees were sought, to account for

block billing, vagueness of time entries, and duplication of effort); *Thai-Lao Lignite (Thailand)*,

2012 WL 5816878, at *10, *11 (applying 30% reduction where "vagueness of the submitted time

entries [did] not enable the Court to determine if the work performed by different timekeepers was unduly duplicative").

This Court does not find that any similar reduction would be necessary to ensure the reasonableness of the modest number of hours incurred by Charlemagne or the two HSC paralegals who worked on the case. It was not inappropriate for Charlemagne to have spent 1.25 hours to prepare a letter to the Court and to confirm the procedure for filing a stipulation between the parties. (St. Laurent Decl., Ex. A (time entries dated 12/5/14 and 12/8/14).) As to the paralegals, Defendants have argued that the five hours Francois recorded on March 6, 2015 for preparing and hand-delivering courtesy copies of materials to the Court (St. Laurent Decl., Ex. A (time entry dated 3/6/15)) were "clearly [billed] in error," based on Defendants' receipt, by email, of a copy of a letter dated several days earlier (February 27, 2015), from St. Laurent to the Court, apparently enclosing the courtesy copies in question (Def. Mem., at 19). Even if Francois billed the time on the wrong day, however, Defendants do not question that the work preparing the courtesy copies was performed, and St. Laurent's time records for February 27, 2015 actually reflect that he "review[ed] Stephan Francois['s] work on courtesy copies." (St. Laurent Decl., Ex. A (time entry dated 2/27/15).) This Court also rejects Defendants' challenge to 1.5 hours recorded by paralegal Yuan for creating a table of authorities, a table of contents, and reviewing a document (presumably Plaintiffs' summary judgment brief); this amount of time is not facially unreasonable for the work performed.

### D.   Lodestar Calculation

In light of the above, this Court calculates the lodestar for the relevant period as follows:

| Timekeeper | Position | Recommended Rate | Hours (reduced for co-lead counsel by 30% from stated hours) | | | Lodestar |
|---|---|---|---|---|---|---|
| **Daniel L. Ackman, Esq.  (*for work from 5/9/14-11/10/15*)** | | | | | | |
| Ackman | Solo practitioner | $400 per hour | x | 139.02 hours | = | $55,608.00 |
| **Cuti Hecker Wang LLP (*for work from 7/8/14-8/4/14*)** | | | | | | |
| Hecker | Partner | $450 per hour | x | 24.22 hours | = | $10,899.00 |
| Cuti | Partner | $450 per hour | x | 22.47 hours | = | $10,111.50 |
| | | | | Total CHW | | $21,010.50 |
| **Harris, St. Laurent & Chaudhry LLP (*for work from 11/4/14-11/10/15*)** | | | | | | |
| St. Laurent | Partner | $375 per hour | x | 84.35 hours | = | $31,631.25 |
| Charlemagne | Associate | $250 per hour | x | 1.25 hours | = | $312.50 |
| Yuan | Paralegal | $100 per hour | x | 1.5 hours | = | $150.00 |
| Francois | Paralegal | $100 per hour | x | 5.0 hours | = | $500.00 |
| | | | | Total HSC | | $32,593.75 |
| | | | | **TOTAL** | | **$109,212.25** |

Plaintiffs' presumptively reasonable attorneys' fees for the appeal therefore total

$109,212.25, and this Court sees no reason to diverge from the lodestar in this instance.

Accordingly, I recommend that the Court award Plaintiffs interim attorneys' fees in that amount.

### E.   Costs

The only "interim" costs that Plaintiffs seek to recover are $743.97 in expenses

purportedly incurred by HSC.  (Pl. Mem., at 7, 10; St. Laurent Decl. ¶ 13; *id.*, Ex. A, at p. 3.)

Defendants object, noting that "no explanation or supporting documentation [has] been provided

to support the alleged costs," and, further, that the billing records themselves "call into question

whether these costs even occurred before November 10, 2015." (Def. Mem., at 25.) HSC's expenses relate to four items listed with the date of November 10, 2015 on the billing records submitted by the firm. (St. Laurent Decl., Ex. A, at p. 3.) The descriptions for the items, though, appear to show that the costs were incurred subsequent to that date. (*See id*. (entries for: "4/7/16 Pacer" for $171.50; "6/10/16 Seamless" for $85.97; "7/5/16 Pacer" for $98.30; and "8/31/16 Big Apple Copy Center" for $388.20).) Defendants correctly state that "[t]he fee applicant bears the burden of adequately documenting and itemizing the costs requested" (Def. Mem., at 25 (quoting *Pennachio v. Powers*, 2011 U.S. Dist. LEXIS 79279, at *6 (E.D.N.Y. 2011)) (internal quotation marks omitted)), and, on reply, Plaintiffs have made no additional submissions to support their request for these costs. As the item descriptions themselves suggest that these costs were incurred after November 10, 2015, and as Plaintiffs have not adequately shown otherwise, I recommend that the costs be disallowed, at least at this time.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court grant Plaintiffs' interim attorneys' fees application, pursuant to 42 U.S.C. § 1988(b), as follows:

| | |
|---|---|
| Ackman | $55,608.00 |
| CHW | $21,010.50 |
| HSC | $32,593.75 |
| **Total** | **$109,212.25** |

I further recommend that Plaintiffs' request for interim costs be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie Caproni, United States

Courthouse, 40 Foley Square, Room 240, New York, New York 10007, and to the chambers of

the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York

10007.  Any requests for an extension of time for filing objections must be directed to

Judge Caproni.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL

RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.

*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated:  New York, New York
       July 20, 2017

                                    Respectfully submitted,

                                      DEBRA FREEMAN
                                      United States Magistrate Judge

Copies to:

Hon. Valerie Caproni, U.S.D.J.

All counsel (via ECF)