

HARRIS, ST. LAURENT
AND CHAUDHRY LLP

September 11, 2017

**Via ECF**
Hon. Valerie E. Caproni
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *Harrell, et al., v. City of New York, et al.*, 14-CV-7246(VEC)

Dear Judge Caproni,

I write at the Court's request to address two questions the Court put to Plaintiffs' counsel during oral argument on Plaintiffs' motion for class certification on September 8th.

The first question went to whether a person who incurred a debt or obligation arising from government action had standing to contest that action even if there was some question about the person's ownership of the property that gave rise to the obligation.

The answer to this question is unambiguously yes. In a case dispositive of this issue, *United States v. Cambio Exacto, S.A.*, the Second Circuit found that, regardless of the merits of the government's challenge to standing based on plaintiffs' ownership of certain property, those plaintiffs clearly had standing because of the liabilities flowing directly to them as a result of the government's action on that property: "Because ownership is only evidence of direct injury, we need not decide the extent to which Perusa and Pan American 'own' the money in their remittance accounts. It is clear in any event that Perusa and Pan American have produced other evidence of a 'distinct and palpable injury' sufficient to give them standing under Article III. They had a financial stake in the funds because they had a liability to their customers in an amount equal to the forfeited funds." 166 F.3d 522, 528 (2d Cir. 1999) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975) and *Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 92 n. 1 (2d Cir. 1998)). In *Cambio Exacto*, the Second Circuit added: "The injury that Pan American and Perusa assert is also the direct result of 'putatively illegal' governmental action in the form of an allegedly unlawful forfeiture. This injury would be redressed by a successful challenge to the forfeiture. Article III does not require more." *Id*. (citation omitted).

Based on *Cambio-Exacto*, every member of the proposed class has standing, even if a handful of class members ultimately prove to be "straw owners" of their vehicles, because they incurred liability to Defendants in the form of fines, as well as towing and storage fees. *Accord*

Hon. Valerie E. Caproni
September 11, 2017
Page 2 of 2

*United States v. Any And All Funds on Deposit In Account No. 12671905, Held In The Name of Landlocked Shipping Co. At Wells Fargo Brokerage Servs., LLC, All Interest And other Proceeds Traceable Thereto,* No. 09-cv-3481(HB), 2010 WL 3185688, at *6 (S.D.N.Y. Aug. 10, 2010) ("the claimant need not prove the full merits of [her] underlying claim [to have standing]," so long as she has demonstrated a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court.") (internal quotation and citation omitted); *United States v. Any & all Funds on Deposit in Account No. XXXXX-XXXXXXX at HSBC Bank PLC, 55 Corp. St., Coventry, United Kingdom,* 87 F. Supp. 3d 163, 167 (D.D.C. 2015) ("As demonstrated by prior cases, the bar to establish standing at the initial stages of a civil forfeiture proceeding is low;" alleged straw owner had standing because she would be deprived of the benefit of the use of the funds the government sought to forfeit).

The second question was whether we responded to Defense counsel's November 22, 2016 letter, which was attached to the Selvin Declaration as Exhibit L, in light of Defense counsel's representation that plaintiffs had made no response to their letter which asked for a JPPL employee handbook, and the "trip schedule" for "the 2010 Lincoln Sedan in question on 11/15/12 and 11/16/12." In fact, we did respond.

On November 28, 2016, we wrote to Ms. Selvin regarding several discovery matters, including the requests made of JPPL (framed in the response letter as "your requests for follow-up information following the . . . Alcabes [JPPL's Rule 30(b)(6) deponent] deposition[.]" That letter is attached as Exhibit A hereto. We then inquired with JPPL, but were not successful in obtaining responsive documents. But to say we did not respond to the November 22 letter is not accurate.

Finally, if the Court retains concerns about our proposed class definition, we respectfully request the opportunity to submit additional legal argument and analysis on the possibility of a "owner and operator" sub-class. As we suggested at oral argument, such a sub-class would consist, at the very least, of those persons who were drivers as well as registered owners of the vehicles at the time of the seizures. We believe this sub-class would encompass a substantial majority of the persons whose vehicles were seized in connection with the issuance of summonses for "first time" "straight plate" violations of Section 19-506 between the fall of 2011 and the fall of 2015.

Respectfully,

Andrew St. Laurent
Daniel L. Ackman

w/encl.

ANDREW ST. LAURENT | ANDREW@SC-HARRIS.COM | DIRECT 646-248-6010

SC-HARRIS.COM | TEL 212-397-3370 | FAX 212-202-6206 | 40 WALL STREET, 53RD FLOOR, NEW YORK, NY 10005