USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/15/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SUSAN CALVO, JOHN PETERS
PROFESSIONAL LIMOUSINES, INC.,
JACKLYN RESTREPO, PEDRO CAMACHO,
EAMON YUEL and YONG ZHANG individually
and on behalf of all others similarly situated,

         Plaintiffs,

-against-

CITY OF NEW YORK, MEERA JOSHI, DAVID
YASSKY, and RAYMOND SCANLON,

         Defendants.
-----------------------------------------------------------------X

14-CV-7246 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

  After the Court granted Plaintiffs partial summary judgment in this Section 1983 action, Plaintiffs requested an interim award of attorneys' fees pursuant to 42 U.S.C. § 1988(b). The Court granted that request and directed Plaintiffs to submit an application for interim attorneys' fees ("Fee Application"), supported by contemporaneous records, for work performed up to November 10, 2015. Dkt. 132 at 6–7. The Court referred Plaintiffs' Fee Application (Dkt. 139), to Magistrate Judge Freeman for a report and recommendation. Dkt. 177.

  On July 20, 2017, Magistrate Judge Freeman issued a Report and Recommendation ("R&R") recommending that, for the period up to November 10, 2015, Plaintiffs be awarded fees in the amount of $109,212.25. Dkt. 211 ("R&R"). Both Plaintiffs and Defendants filed timely objections to the R&R. Dkt. 212 ("Pls. Obj."); Dkt. 213 ("Defs. Obj."). For the following reasons, the Court ADOPTS the R&R in part and MODIFIES the R&R in part.

**BACKGROUND**

Plaintiffs' Fee Application seeks an interim award of $172,371.47 in attorneys' fees and expenses. Dkt. 142 ("Fees Mem.") 10. Plaintiffs request fees for services rendered through November 10, 2015, by: (1) Daniel L. Ackman, Esq. ("Ackman"), a solo practitioner; (2) Ackman's prior co-counsel, the law firm of Cuti Hecker Wang LLP ("CHW"); and (3) Ackman's current co-counsel, the law firm of Harris, St. Laurent & Chaudry LLP ("HSC"). R&R 3. The R&R recommended significant reductions in most of the hourly rates sought by Plaintiffs' counsel and an across the board reduction in most of the attorneys' claimed hours. R&R 36. The R&R recommended that the Court deny in its entirety Plaintiffs' request for reimbursement of costs. R&R 37.

All parties objected to the R&R. Plaintiffs objected to the R&R's reduction to the award by "nearly half of the lodestar"; the reduction in counsel's requested rates; and the across-the-board thirty percent reduction in co-lead counsel's claimed hours.[1] *See* Pls. Obj. 1–2. Defendants objected to: the award of any attorneys' fees to CHW; the R&R's rejection of a *pro rata* reduction on the basis that only two out of the five plaintiffs prevailed; and the R&R's compensation to Plaintiffs' counsel for work done in connection with Plaintiffs' permanent injunction motion. Defs. Obj. 1–3. The only portions of the R&R that no party objects to consist of: the award of the fee (both as to the rate and hours) to Charlemagne; the award of the fee (both as to the rate and hours) to the HSC paralegals; and the rejection of the claimed expenses.

---

[1] Plaintiffs also requested an evidentiary hearing on factual issues influencing the disposition of the Fee Application. *See* Pls. Obj. 1. The Court concludes that a hearing is not necessary to the Court's disposition of the Fee Application and denies Plaintiffs' request for an evidentiary hearing.

**DISCUSSION**

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The standard of review employed by the district court in reviewing an R&R depends on whether timely and specific objections to the R&R have been made. *Williams v. Phillips*, No. 03 Civ. 3319 (KMW) (FM), 2007 WL 2710416, at *1 (S.D.N.Y. Sept. 17, 2007). To accept those portions of the R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citation omitted). Where, however, specific objections to the R&R have been made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To the extent that a party's objections to the R&R "are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error." *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011).

**I.    Legal Standard for An Award of Attorneys' Fees**

42 U.S.C. § 1988(b) provides that a "prevailing party" may recover reasonable attorney's fees in connection with various civil rights actions, including a Section 1983 action. 42 U.S.C. § 1988(b). The parties do not dispute that two of the plaintiffs in this case (Restrepo and Camacho) are "prevailing parties" based on the Court's summary judgment decision in their favor. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates," *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), including the "reasonable hourly rates prevailing in the district for

similar services provided by attorneys with comparable skill and experience," *Sprint Commc'ns Co. v. Chong*, No. 13 CIV. 3846(RA), 2014 WL 6611484, at *6 (S.D.N.Y. Nov. 21, 2014).

In determining the "presumptively reasonable fee" for an attorney's services, courts examine "what a reasonable paying client would be willing to pay." *Id*. at *6 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008)). In addition, "the court takes account of claimed hours that it views as excessive, redundant, or otherwise unnecessary" and "may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours." *Finch v. N.Y. State Office of Children & Family Servs.*, 861 F. Supp. 2d 145, 150 (S.D.N.Y. 2012) (citations and internal quotation marks omitted).

In general, district courts have broad discretion to determine whether attorneys' fees are reasonable. *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing *Hensley*, 461 U.S. at 437); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). And in examining the reasonableness of the attorneys' claimed hours and rates, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Finch*, 861 F. Supp. 2d at 150.

## II. The Court Disallows Fees to Hecker and Cuti.

Defendants object to the award of any fees to Hecker and Cuti, arguing that there is no evidence that Plaintiffs retained the services of CHW or even knew of CHW's work on the case. Defs. Obj. 4–6. In recommending a fee award for hours claimed by Hecker and Cuti, the R&R concluded that "there is no reason to believe that CHW did not, in fact, perform legal services that contributed meaningfully to the preparation of the Complaint in this action." R&R 8. The Court agrees with Defendants that Hecker and Cuti should not be awarded any fees.

Plaintiffs bear the burden of establishing their entitlement to an award for the services performed by Hecker and Cuti. *See Cruz*, 34 F.3d at 1160. In determining a "presumptively reasonable fee" for attorneys' services, the court considers the amount "a reasonable, paying client would be willing to pay." *Sprint Commc'ns*, 2014 WL 6611484, at *6 (quoting *Arbor Hill*, 522 F.3d at 184). Here, Plaintiffs have not satisfied their burden of showing that a reasonable, paying client would be willing to pay Hecker and Cuti for their services in connection with this litigation. Plaintiffs adduce *no* evidence that Plaintiffs even knew that Hecker and Cuti were working on their behalf, let alone that Plaintiffs would have agreed to pay them for whatever work they did.

The only "argument" Plaintiffs made in support of fees for Hecker and Cuti was a single sentence, without citation, that "Mr. Cuti and Mr. Hecker certainly performed services that benefited plaintiffs and the putative plaintiff class." Fees Reply (Dkt. 162) 1. Hecker's declaration in support of the Fee Application asserts that they "played a very important role in developing the theory on which the prevailing Plaintiffs prevailed. . . . [W]e performed significant legal research, including analyzing the extensive legislative history and complicated case law, and we contributed very significantly to the development of the legal theory that was presented to the Court  We drafted much of the complaint. Although we did not appear in the action itself, it is appropriate to compensate our firm for the very important work it performed prior to filing." Hecker Decl. (Dkt. 143) ¶ 12.

It is conceivable that Plaintiffs benefited from work done by Cuti and Hecker, and the Court does not find that the absence of a formal notice of appearance necessarily precludes a fee award. Plaintiffs, however, have not shown, as is their burden, that a reasonable client would have paid Hecker and Cuti for their work, which appeared to be mostly prefatory and without the knowledge or consent of Plaintiffs. In none of the cases cited by Hecker in his declaration did

the court award fees in circumstances analogous to those here. *See Ramos Padro v. Commonwealth of Puerto Rico*, 100 F. Supp. 2d 99, 106 (D.P.R. 2000), *aff'd as modified sub nom. Gay Officers Action League v. Puerto Rico*, 247 F.3d 288 (1st Cir. 2001) (failure to file a formal appearance in the case not a basis to disallow fees); *see also Invision Media Servs., Inc. v. Glen J. Lerner*, 175 F. App'x 904, 907 (9th Cir. 2006) (same) (awarding fees under the Lanham and Copyright Act); *Watson v. E.S. Sutton, Inc.*, No. 02 CIV. 02739 (KMW) (THK), 2006 WL 6570643, at *4 (S.D.N.Y. Aug. 11, 2006), *report and recommendation adopted as modified,* No. 02 CV 2739 (KMW) (THK), 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007) (awarding fees for drafting a complaint when the plaintiff had retained the attorney before the attorney drafted the complaint).

Because Plaintiffs have not made any arguments or adduced any evidence showing that a reasonable client would pay Hecker and Cuti for the work that they performed, Plaintiffs have failed to meet their burden of establishing their entitlement to an award for Hecker and Cuti.[2] Therefore, the Court DECLINES to adopt the R&R's award of fees to Hecker and Cuti and DENIES the Fee Application's request for an award for work performed by Hecker and Cuti.

### III. The Court Awards an Hourly Rate of $450 to Ackman and St. Laurent.

The R&R recommended that the Court award an hourly rate of $400 (rather than Plaintiffs' requested $525) to Ackman and an hourly rate of $375 (rather than Plaintiffs' requested $550) to St. Laurent. R&R 10, 21, 36. Plaintiffs object to the R&R's proposed "sharp

---

[2] Plaintiffs' failure to satisfy their burden relative to Hecker and Cuti might be explained by Plaintiffs' failure to initially move for a fee award for work done by Hecker and Cuti. Plaintiffs' opening brief made no mention of any request for fees for Hecker and Cuti; the opening brief identified other counsel, which did not include Hecker and Cuti, for which Plaintiffs were seeking fees. *See* Fees Mem. 5–7, 10. Plaintiffs, however, filed declarations from Hecker and Cuti in support of Plaintiffs' Fee Application contemporaneously with their opening brief, and in response to Defendants' argument that Hecker and Cuti should not get fees, Plaintiffs stated in one sentence in their reply brief that Cuti and Hecker's services benefited Plaintiffs. *See* Fees Reply 1.

6

reductions to these rates." Pls. Obj. 7. The Court awards an hourly rate of $450 to both Ackman and St. Laurent.

### A. *Ackman*

The R&R recommended that Ackman be awarded an hourly rate of $400 because, *inter alia*: Ackman's experience reflects that he has previously served only as co-lead counsel in class action matters (rather than lead counsel as he represented); he failed to adduce evidence of the rate that he customarily charges his clients, let alone the rate that his paying clients are willing to pay; he is at a small firm; and he did not show what other solo practitioners, of comparable levels of skill and experience in the civil rights field, typically charged in this market during the relevant period. R&R 12–17.

Although Plaintiffs acknowledge that the R&R's recommended $400 hourly rate for Ackman is within the spectrum of rates generally approved in this District, Plaintiffs argue that the reduction in Ackman's requested rate was "in part based on false premises, questioning Ackman's experience and skill without meaningful fact-finding." Pls. Obj. 11. Among other things, Plaintiffs note that Ackman has experience as sole counsel in some cases, that Ackman does not typically charge hourly rates and therefore cannot state the hourly rate he customarily charges, and that the R&R wrongly suggested that the amount of legal research Ackman conducted was disproportionate to his purported experience. Pls. Obj. 11–13. Plaintiffs reiterate their request that Ackman be awarded fees at the rate of $525 per hour. Pls. Obj. 13.

The Court modifies the R&R's recommendation and awards Ackman fees at the rate of $450 per hour. Plaintiffs have failed to produce satisfactory evidence showing that his requested rate of $525 is in line with "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006). Ackman

can provide no evidence of the rate that he would customarily charge his paying clients because he does not typically bill by the hour; thus, all Ackman avers, without citation to any cases, is: "In light of my experience and contributions, I submit that an award of $525 per hour, which is in the middle of the range of rates awarded to peer counsel in similar cases in recent years, is appropriate." Ackman Decl. (Dkt. 140-1) ¶ 6. The fact that Ackman does not typically charge hourly rates is neither here nor there: as the fee applicant, Plaintiffs bear the burden of adducing evidence that Ackman's requested $525 hourly fee is in line with the prevailing market rates for attorneys of comparable skill, experience, and reputation. They have not shown that here.

After careful consideration, including of Plaintiffs' failure to adduce evidence supporting Ackman's requested fee and this Court's own familiarity with rates customarily approved in this market, the Court concludes that an hourly rate of $450 to Ackman is reasonable. *See, e.g.*, *Thomas v. City of N.Y.*, No. 1:09-CV-3162 (ALC), 2016 WL 319982, at *7 (S.D.N.Y. Jan. 26, 2016), *aff'd sub nom. Thomas v. McAullife*, No. 16-1014-CV, 2017 WL 2382430 (2d Cir. June 1, 2017) (awarding hourly rates of $400 and $450); *Spencer v. City of N.Y.*, No. 06 CIV. 2852 (KMW), 2013 WL 6008240, at *5 (S.D.N.Y. Nov. 13, 2013) (awarding hourly rate of $400) (collecting cases).[3] The Court awards Ackman a rate at the upper end of the range typically awarded to solo or small-firm attorneys in light of his tenure as an attorney (he graduated from law school in 1988), the fact that he served as co-lead counsel in this case, that he achieved a summary judgment victory that halted an unconstitutional practice by the City, and his experience as lead or co-lead counsel in other putative class actions and civil rights litigation.

---

[3] Although "district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate," the Second Circuit has made clear that the relevant inquiry is into the "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation," and "[w]orking as a solo practitioner may be relevant to defining the market." *McDonald*, 450 F.3d at 98 n.6 (citations omitted).

8

For the foregoing reasons, the Court MODIFIES the R&R to award Ackman an hourly rate of $450.

B. *St. Laurent*

The R&R recommended that St. Laurent be awarded an hourly fee rate of $375, reduced from Plaintiffs' requested $550 hourly rate. R&R 36. Magistrate Judge Freeman reasoned that a reduction in St. Laurent's rate was warranted because St. Laurent had not demonstrated significant experience in civil rights litigation, and St. Laurent's time records reflected that he was primarily engaged in tasks more appropriate for junior-level work. R&R 23–24. Plaintiffs object, arguing that St. Laurent's criminal defense experience was highly relevant to this case, that St. Laurent was co-lead counsel in this case, and that the R&R incorrectly found that St. Laurent frequently did not do partner-level work. Pls. Obj. 8–9.

The Court rejects Plaintiffs' request for a $550 hourly rate for St. Laurent. Plaintiffs' request appears to be based entirely on the fact that Judge Sullivan awarded St. Laurent's partner that rate in another Section 1983 case, *Abdell v. City of New York*, No. 05-CV-8453 RJS, 2015 WL 898974 (S.D.N.Y. Mar. 2, 2015). But that case was different from the one here, and Plaintiffs have made no showing that the experience and skill of St. Laurent's partner relative to the issues in *Abdell* is comparable to the experience and skill of St. Laurent relative to the issues in this case. In addition, although courts in this District have approved hourly rates in the ballpark of Plaintiffs' request, *see, e.g.*, *Coakley*, 2016 WL 1047079, at *6 (awarding $575 hourly rate to attorneys with over forty years' experience specializing in civil rights law), those attorneys had exceptional experience litigating civil rights matters, which St. Laurent does not.

Nevertheless, the Court concurs with Plaintiffs that an hourly rate greater than the R&R's recommended $375 is reasonable. As noted by Plaintiffs, St. Laurent's criminal experience was relevant to the issues in this case, and St. Laurent spent a minimal amount of time relative to his

9

overall claimed hours on items that the R&R concluded was not partner-level work. After careful consideration, the Court finds that in light of St. Laurent's experience, skill, and his work as co-lead counsel on this case, an hourly rate of $450 is also reasonable for St. Laurent. Therefore, the Court MODIFIES the R&R to award fees to St. Laurent at an hourly rate of $450.

## IV.   Claimed Hours

The R&R recommended a thirty percent across-the-board reduction in co-lead counsel's hours, but did not exclude the hours Plaintiffs' counsel spent on the permanent injunction motion. The Court modifies these portions of the R&R for the reasons discussed below. In addition, the Court adopts the R&R's recommendation to not reduce Plaintiffs' counsel's hours *pro rata* on the basis that only two out of the five Plaintiffs were "prevailing plaintiffs."

### A.  Fee Award for Permanent Injunction Motion

The R&R rejected Defendants' argument that counsel's hours should be reduced by the time counsel spent working on the permanent injunction motion. R&R 26. Defendants object, arguing that the Court should disallow these hours because "there were no legitimate grounds for the filing of the permanent injunction motion." Defs. Obj. 9.

The Court agrees with Defendants and reduces Plaintiffs' counsel's hours by the time spent on the motion. The permanent injunction motion was filed *after* the Court decided, in response to Plaintiffs' motion for summary judgment that vehicle seizures associated with first-time violations of Section 19-506(b)(1) were unconstitutional, and it was filed *after* Defendants represented to the Court that they were complying with the summary judgment decision. Dkt. 59 at 2. Plaintiffs nevertheless filed their motion for a permanent injunction. Dkt. 65. They withdrew the motion only after Defendants, in their opposition brief, again represented that they were complying with the Court's decision and had ceased seizing suspected first-time violators' vehicles, Dkt. 72 at 3, Dkt. 83 at 1, and after the Court strongly suggested that it was not

10

meritorious because the Plaintiffs lacked standing to seek an injunction because none had a reasonable fear of again being subjected to a first time seizure, Tr. 24–27 (Dkt. 91).

Plaintiffs' motion was a waste of time and resources in light of the summary judgment decision, and Defendants' representation that had ceased seizing suspected first-time violators' vehicles. The R&R incorrectly assumed that the Undersigned's granting Plaintiffs leave to withdraw the motion without prejudice to renew "if appropriate, at a later stage of the case" meant that the Undersigned had found Plaintiffs' filing of the motion to be a worthwhile step in the litigation. R&R 26. At the time that it was filed, Plaintiffs' motion was *not* appropriate, and it wasted resources.

Plaintiffs' billing records reflect that Ackman spent nine hours and St. Laurent spent seven hours on tasks associated with the permanent injunction motion. Ackman Decl., Ex. A at 2;[4] St. Laurent Decl., Ex. A (Dkt. 141-1) at 2. The Court MODIFIES the R&R to exclude these sixteen hours from Plaintiffs' fee award.

### B. The Court Reduces St. Laurent and Ackman's Claimed Hours by 25%.

The R&R also recommended an across-the-board reduction in thirty percent of the hours claimed for work performed by co-lead counsel (Ackman, St. Laurent, Cuti, and Hecker) because of the vagueness in Plaintiffs' counsel's time records and their seeming duplication of effort. R&R 29–35. Magistrate Judge Freeman found that "*because* of the ways in which counsel kept track of their time, this Court simply cannot determine whether the model employed

---

[4] Ackman's billing entry reflects 2.4 hours on 11/3/15 for "legal research re injunction motion and irreparable harm; confre [sic] w/ ASL on opposition to reargument brief and edit brief" and 3.3 hours on 11/2/15 for "additional legal research re grounds for prel. Inj and in opposition to motion to reconsider; revise oppos. Brief re motion to reconsider." Ackman Decl, Ex. A at 2. Those entries do not break out how many hours were spent on the permanent injunction motion versus the motion for reconsideration. The Court disallows these hours in their entirety; Ackman should have kept better time-keeping practices if he expected to be awarded fees for his work. If Plaintiffs' counsel can provide documentation supporting how many hours were spent on the permanent injunction motion (rather than on the motion for reconsideration), then the Court will reconsider the exclusion of these hours from Plaintiffs' fee award.

by Ackman to staff this case with 'co-lead counsel,' all of a partner level, resulted in a substantial duplication of work, and thus substantial inefficiency." R&R 32. Plaintiffs object that the thirty percent reduction is excessive. Pls. Obj. 15.

"Courts frequently respond to vague and difficult-to-decipher billing statements with an across-the-board percentage reduction in the fees claimed, often in the range of 20–30 percent," *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 CIV. 05256 (KMW) (DF), 2012 WL 5816878, at *11 (S.D.N.Y. Nov. 14, 2012) (collecting cases), though some courts have made reductions as low as fifteen percent, *Custodio v. Am. Chain Link & Constr., Inc.*, No. 06 CIV. 7148 (GBD), 2014 WL 116147, at *3, *16 (S.D.N.Y. Jan. 13, 2014), and at least one court has applied a reduction as high as over fifty percent, *Williamsburg Fair Hous. Comm. v. N.Y.C. Hous. Auth.*, No. 76 Civ. 2125 (RWS), 2007 WL 486610, at *5 (S.D.N.Y. Feb. 14, 2007). This is because "[e]ntries consisting of vague descriptions of work performed do not provide courts with an adequate basis upon which to determine the reasonableness of the services and hours expended on a particular matter." *Tucker v. Mukasey*, No. 03 Civ. 3106 (LTS) (FM), 2008 WL 2544504, at *1 (S.D.N.Y. June 20, 2008).

Plaintiffs do not appear to dispute that their billing entries are vague. *See* Pls. Obj. 16–17. Rather, Plaintiffs object that they "have found only one Section 1983 attorney fee decision issued in this district in the last three years that ordered a 30% or more across-the-board reduction." Pls. Obj. 19 (citing *Schoolcraft v. City of N.Y.*, No. 10 CIV. 6005 (RWS), 2016 WL 4626568, at *9 (S.D.N.Y. Sept. 6, 2016), *modified on reconsideration,* No. 10 CIV. 6005, 2017 WL 1194703 (S.D.N.Y. Mar. 31, 2017)).[5] Plaintiffs argue that across-the-board reductions for

---

[5] Plaintiffs cited *Schoolcraft* to say that the court reduced hours billed by 35% across-the-board because the plaintiff cycled through four different law firms. 2016 WL 4626568, at *9. Plaintiffs' representation of that case is incorrect. Although the court did initially impose a 35% reduction, its basis for the reduction was the large litigation team (eight attorneys) on the case. *Id*. The fact that the plaintiff cycled through four different law firms was the justification for the court's imposition of an additional two percent reduction. *Id*. On reconsideration, the court

vague billing entries "are hardly common," R&R 18, but the cases that Plaintiffs cite are not analogous to the circumstances here. *See Berrian v. City of N.Y.*, No. 13-cv-1719 (DLC), 2014 WL 6604641, at *5 (S.D.N.Y. Nov. 21, 2014) (City requested that Plaintiff's counsel's hours be reduced not because of vague billing entries but because counsel's hours on various tasks were excessive and Plaintiff's success was limited); *Thomas v. City of N.Y.*, No. 09-cv-3162 (ALC), 2016 WL 319982, at *8 (S.D.N.Y. Jan. 26, 2016) (billing entries were not vague when viewed in context); *Coakley*, 2016 WL 1047079, at *7 (same). Furthermore, Plaintiffs do not explain why the across-the-board reductions for vague entries in other civil rights cases in this District are not applicable to Section 1983 cases.

Here, many of Plaintiffs' counsel's time entries are exceedingly vague, leaving the Court without any way of determining whether the hours expended by counsel were reasonable. *See, e.g.*, Ackman Decl., Ex. A (1/4/15 "revise and edit summary judgment brief"; 12/23/14 "draft summary judgment brief"; 12/19/14 "legal res. And draft summary judgment brief"); St. Laurent Decl., Ex. A (12/26/2014 & 12/27/2014 "Legal research & drafting on motion for summary judgment."; 12/28/2014 "Drafting & legal research on motion for summary judgment"; 12/19/2014 "Legal research for memorandum of law"). Although St. Laurent's and Ackman's work may have been duplicative, R&R 32–33, the fact that St. Laurent and Ackman both billed hours to the same tasks at around the same time is also reflective of the fact that there were two attorneys working on the motions and may not demonstrate actual duplication of efforts. Nevertheless, the Court concludes that some across-the-board reduction in St. Laurent and Ackman's claimed hours is appropriate because the vagueness of their entries does not provide the Court with a basis to determine the reasonableness of their hours or to exclude duplication of

---

modified the percentage reduction to 25%, although it did not explain its rationale for the downward modification. 2017 WL 1194703, at *2.

effort. *See Tucker*, 2008 WL 2544504, at *1. After careful consideration, the Court concludes that a reduction of twenty-five percent is more appropriate in this case.

For the foregoing reasons, the Court MODIFIES the R&R's recommendation and applies a twenty-five percent across-the-board reduction to St. Laurent and Ackman's claimed hours.[6]

### C. **No Reduction Is Appropriate Even Though Only Two Plaintiffs Obtained Summary Judgment**

The R&R recommended that Plaintiffs' counsel's time should not be reduced *pro rata* in proportion to the number of prevailing plaintiffs, in part because Magistrate Judge Freeman found that the work performed for different plaintiffs was not readily divisible. R&R 27–29. Defendants object that compensating Plaintiffs for their work relative to Susan Calvo, John Peters Professional Limousines ("JPPL"), and Michael Harrell "would be rewarding plaintiffs and their counsel for prosecuting incorrect vehicle seizure incidents for plaintiffs Calvo and JPPL" and for "prosecuting the claims of a fraudulent lead plaintiff Michael Harrell" in light of Defendants' circumstantial evidence indicating that Harrell was a fraudulent straw buyer of the car that was seized. Defs. Obj. 8.[7] The Court finds that a reduction in co-lead counsel's hours is not appropriate even though only two out of the five plaintiffs (Restrepo and Camacho) were "prevailing" plaintiffs.

In assessing the reasonableness of a fee, "where . . . the plaintiff's claims 'involve a common core of facts or [are] based on related legal theories,' and are therefore not severable, '[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones.'" *Green v.*

---

[6] Although the R&R also applied the across-the-board reduction to Cuti and Hecker's claimed hours, the Court disallows Cuti and Hecker's hours in their entirety for the reasons discussed *supra*. The R&R also did not apply the across-the-board reduction to the hours claimed by Charlemagne or the HSC paralegals. Neither party objected to the R&R's recommendation to exclude Charlemagne and the paralegals from the across-the-board reduction, and the Court finds no clear error in that recommendation.

[7] Although the Court ultimately rejects Defendants' arguments, as noted *infra*, Plaintiffs' counsel did a poor job in identifying appropriate plaintiffs for a putative class action.

*Torres*, 361 F.3d 96, 98 (2d Cir. 2004) (citations omitted). This is because if "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories[,] . . . much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435. Courts, however, "may exclude any hours spent on severable unsuccessful claims." *Green*, 361 F.3d at 98. In addition, "[w]hile the degree of the plaintiff's success is the most critical factor in determining the reasonableness of a fee award, [the Second Circuit] consistently ha[s] resisted a strict proportionality requirement in civil rights cases," and the determination of whether to adjust the lodestar is at the discretion of the district court. *Lunday v. City of Albany*, 42 F.3d 131, 134–35 (2d Cir. 1994) (internal quotation marks and citation omitted).

After careful consideration, the Court finds that an across-the-board *pro rata* reduction on the basis that only two out of the five Plaintiffs were prevailing plaintiffs is inappropriate in this case. At summary judgment, Plaintiffs' arguments were made in such a way that there was no distinction between Plaintiffs' counsel's efforts on behalf of one named plaintiff as opposed to another named plaintiff or on behalf of the entire putative class. This is because the issue at summary judgment was whether the City's policy of seizing cars was unconstitutional; individual distinctions between the named plaintiffs were not material to the Court's decision at that time.

Although Plaintiffs made plaintiff-specific arguments in connection with the motion to reconsider, those arguments were not a substantial portion of Plaintiffs' opposition brief: one sentence that did not distinguish between Restrepo (a prevailing plaintiff) and JPPL and Calvo (non-prevailing plaintiffs); and one paragraph as to Harrell that rebutted Defendants' ownership

fraud argument.[8]  In addition, the vast majority of Plaintiffs' billing records does not distinguish work done for particular plaintiffs (as might be expected, given the overall vagueness of the time entries), although Ackman's records do reflect four hours spent on reviewing Calvo's declaration.  Ackman Decl, Ex. A at 3 (12/31/14 "review Calvo declaration").  The Court finds that Plaintiffs' claims were not severable and ADOPTS the R&R's recommendation to eschew an across-the-board *pro rata* reduction in Plaintiffs' counsel's claimed hours because there were only two prevailing plaintiffs.

V. **There is No Clear Error in the Remaining Portions of the R&R**.

The parties did not object to the remainder of the R&R: (1) the R&R's recommended fee award for services performed by Charlemagne, an associate at HSC, and two HSC paralegals; and (2) the R&R's denial of Plaintiffs' request for reimbursement of expenses.  Because the parties did not object to these recommendations, the Court reviews those portions of the R&R for clear error.  *See King*, 2009 WL 2001439, at *4 (citation omitted).  Upon careful consideration, the Court finds no clear error in these recommendations.

    *A. Charlemagne and Paralegals*

Plaintiffs requested an hourly rate of: $350 per hour for Charlemagne, a mid-level associate, and $100 per hour for Yuan and Francois, two paralegals.  Fees Mem. 10.  The R&R recommended that the Court award $250 per hour for Charlemagne because she was "acting as a

---

[8]  In making their plaintiff-specific arguments, Plaintiffs did not distinguish between Calvo and JPPL (non-prevailing plaintiffs) and Restrepo (prevailing plaintiff).  Pls. Recons. Opp. (Dkt. 64) 3 ("While the TLC seized cars owned by Calvo, Restrepo and [JPPL] more than once, each of them indisputably suffered a seizure on a first alleged violation during the class period (even if the initial seizure was not the one that [was] highlighted in the complaint).").  Plaintiffs did make an argument specific to Harrell: in response to Defendants' argument that Harrell was not the true "owner" of the car because Harrell was in fact a straw purchaser, Plaintiffs argued (albeit in one paragraph only) that Defendants' counter-Rule 56.1 statement conceded Harrell's ownership of the challenged vehicle.  Pls. Recons. Opp. 4–5.

16

junior associate here" and that the Court grant Plaintiffs' request for a $100 hourly rate to the paralegals. R&R 25.

After careful consideration, the Court finds no clear error in the R&R's recommendation to award $250 per hour to Charlemagne, as to which there was no objection. Plaintiffs based their request for $350 on the *Abdell* case, in which Judge Sullivan awarded her $350 per hour. Fees Mem. 7. The Court finds no clear error in the R&R's recommendation to award $250 in light of the fact that Charlemagne is a third-year associate and that the 1.25 hours that she billed to this case were for junior-level tasks: "Procedure for filing Stip and draft letter to Judge" and drafting a letter for an extension of time. *See* St. Laurent Decl., Ex. A at 2; *see also* R&R 22, 24–25. The Court also finds no clear error in the R&R's recommendation to award Plaintiffs' requested $100 hourly rate to the HSC paralegals. As noted in the R&R, a $100 hourly rate for paralegal work falls within the range, and is even on the low end, of what courts in this District award for similar litigation work. *See, e.g.*, *Tatum v. City of N.Y.*, No. 06-cv-4290 (PGG) (GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (awarding $125 hourly rate for paralegal work in Section 1983 action). The Court also finds no clear error in the R&R's determination that the 1.25 hours that Charlemagne expended and the 6.5 hours that the paralegals expended were reasonable.

### B. Costs

The R&R recommended that the costs be disallowed because Plaintiffs have not provided explanation or supporting documentation for those costs, and the billing records themselves suggest that the costs for the claimed items were incurred after November 10, 2015. R&R 36–37. The Court agrees. The billing records for the claimed expenses all reference dates that occurred *after* November 10, 2015. St. Laurent Decl., Ex. A at 3. For example, the claimed expenses include "4/7/16 Pacer" and "6/10/16 Seamless." St. Laurent Decl., Ex. A at 3. There is

no clear error in the R&R's recommendation to deny Plaintiffs' request for reimbursement of costs.

## CONCLUSION

For the foregoing reasons, the R&R is ADOPTED in part and MODIFIED in part. The Court's adjustments result in a total award of **$103,258.75** in attorneys' fees to Plaintiffs, as set forth in the table below.[9]

|  | *Reasonable Rate* | *Reasonable Hours* | *Lodestar* |
|---|---|---|---|
| Ackman | $450.00 | 142.2 | $63,990.00 |
| St. Laurent | $450.00 | 85.125 | $38,306.25 |
| Charlemagne | $250.00 | 1.25 | $312.50 |
| Yuan | $100.00 | 1.5 | $150.00 |
| Francois | $100.00 | 5.0 | $500.00 |
| **Total** | | | **$ 103,258.75** |

The Clerk of Court is respectfully directed to terminate Docket Entry No. 139.

**SO ORDERED.**

Date: September 15, 2017
New York, New York

VALERIE CAPRONI
United States District Judge

---

[9] Plaintiffs objected that the R&R's recommended fee award ($109,212.15) resulted in a nearly 50% reduction in their requested fees. Pls. Obj. 2–7. Plaintiffs asserted in their objections that they requested $211,526.47 in attorneys' fees, Pls. Obj. 1, but their Fee Application actually was for $171,627.50 in attorneys' fees and $743.97 in expenses, Fees Mem. 10. The Court's fee award, after the modifications discussed *supra*, grants Plaintiffs approximately 60% of their requested fees.

After careful consideration, the Court finds Plaintiffs' ultimate fee award ($103,258.75) to be reasonable. Although "the degree of the plaintiff's success in the litigation [is] a factor affecting the size of the fee to be awarded," *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005), the Court notes that while Plaintiffs achieved a judgment that halted an unconstitutional practice, an undoubtedly good result, it did so despite a poor selection of putative class plaintiffs and despite a Complaint that contained significant factual errors that unduly complicated the litigation. Plaintiffs' briefs in connection with the motion for summary judgment and the motion for reconsideration were not particularly well drafted, which additionally made this matter more onerous for the Court. Moreover, the Court finds for the reasons discussed *supra* that a number of Plaintiffs' counsel's claimed hours and Plaintiffs' requested rates for co-lead counsel—which led to Plaintiffs' calculation of their "lodestar"—were not reasonable. The Court overrules Plaintiffs' objection.

18