UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SUSAN CALVO, JOHN PETERS PROFESSIONAL LIMOUSINES, INC., JACKLYN RESTREPO, PEDRO CAMACHO, EAMON YUEL and YONG ZHANG individually and on behalf of all others similarly situated, | : : : : : : : | |
| *Plaintiffs*, | : : | No. 14 Civ 7246 (VEC) |
| v. | : : | |
| THE CITY OF NEW YORK, MEERA JOSHI, DAVID YASSKY and RAYMOND SCANLON, | : : : : | |
| *Defendants*. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
SECOND MOTION FOR CLASS CERTIFICATION**

DANIEL L. ACKMAN
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178

HARRIS, ST. LAURENT & CHAUDHRY LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T. (212) 397-3370
F. (212) 202-6206

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

CLASS ACTION ALLEGATIONS ................................................................................ 3

  I.   DEFINITION OF THE PROPOSED CLASS ................................................. 3

  II.  PROPOSED CLASS REPRESENTATIVES ................................................... 5

      A.   Pedro Camacho ......................................................................... 5

      B.   Jacklyn Restrepo ........................................................................ 6

      C.   Eamon Yuel ................................................................................ 7

      D.   Susan Calvo ............................................................................... 7

      E.   John Peters Professional Limousines, Inc. .............................. 8

      F.   Yong Zhang ............................................................................... 8

ARGUMENT FOR CERTIFICATION ........................................................................ 9

  I.   ALL MEMBERS OF THE PROPOSED CLASS POSSESS ARTICLE III STANDING. 9

  II.  THE PROPOSED CLASS SATISFIES RULE 23(a). ................................... 11

      A.   The Proposed Class is Sufficiently Numerous – Rule 23(a)(1) ....................... 11

      B.   Claims are Common Across Class Members – Rule 23(a)(2) ........................ 12

      C.   The Claims of the Proposed Class Representatives are Typical for the Class – Rule 23(a)(3) ............................................................. 14

      D.   Adequacy of Representation – Rule 23(a)(4) ................................ 14

  III. THE PROPOSED CLASS SATISFIES RULE 23(b)(3). ............................. 17

      A.   Common Legal and Factual Issues Predominate ............................... 17

      B.   A Class Action is Superior to Other Methods of Adjudication ..................... 21

      C.   The Class is Sufficiently Definite ................................................ 22

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

### Cases

*Abdell v. City of New York*,
    05-CV-8453 (SDNY) (RJS)................................................................ 16

*Ackman v. Giuliani*,
    Index No. 101652/00, N.Y.L.J. Mar. 17, 2000 ................................... 17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S.Ct. 1184 (2013).................................................................. 13, 18

*Betances v. Fischer*,
    304 F.R.D. 416 (S.D.N.Y. 2015) ...................................... 12, 14, 22, 23

*Brown v. Kelly*,
    2007 WL 1138877 (S.D.N.Y. Apr. 16, 2007)..................................... 15

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)........................................................ 14, 22

*Casale v. Kelly*,
    257 F.R.D. 396 (S.D.N.Y. 2009) ........................................................ 22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007)............................................................... 11

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)...................................................................... 20

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................ 11

*Daniels v. City of New York*,
    198 F.R.D. 409 (S.D.N.Y. 2001) ...................................................... 13

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)................................................................. 9

*Duncan Living Trust et al. v. O'Connor, Davies, Munn & Dobbins, LLP*,
    BC494236 (Ca. Sup. Ct., L.A. Cty. 2012) .......................................... 16

*El-Nahal v. Yassky*,
    835 F.3d 248 (2d Cir. 2016)............................................................... 11

*G.M. Leasing Corp. v. U.S.*,
429 U.S. 338 (1977) ............................................................. 11

*Hartley et al. v. Wells Fargo & Co., et al.,*
14-cv-05169 (EDNY) (JMA) ............................................... 16

*Hirschfeld v. Stone*,
193 F.R.D. 175 (S.D.N.Y. 2000) ......................................... 16

*In re Elec. Books Antitrust Litig.*,
2014 WL 1641699 (S.D.N.Y. Apr. 24, 2014) ...................... 10

*In re Fosamax Products Liab. Litig.*,
248 F.R.D. 389, 395 (S.D.N.Y. 2008) ................................. 22

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) ................................................ 15

*In re MF Glob. Holdings Ltd. Inv. Litig.,*
2015 WL 4610874 (S.D.N.Y. July 20, 2015) ...................... 13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y. 1996) ......................................... 16

*In re Nassau Cty. Strip Search Cases*,
2008 WL 850268 (E.D.N.Y. Mar. 27, 2008) ....................... 13

*In re Nassau Cty. Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006) ................................................ 18

*In re Petrobras Sec. Litig.*,
862 F.3d 250 (2d Cir. 2017) ...................................... 4, 19, 22

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ................................................ 17

*In re Visa Check*,
280 F.3d 124 (2d. Cir. 2001) ............................................... 21

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015) ................................................ 17

*Kline v. Wolf*,
88 F.R.D. 696 (S.D.N.Y. 1981), *aff'd* 702 F.2d 400 (2d Cir.1983) ......................................... 15

iv

*Kurtz v. Kimberly-Clark Corp.*,
    2017 WL 1155398 (E.D.N.Y. Mar. 27, 2017) ........................................................ 19

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................... 14

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)...................................................................... 12, 13, 14

*McDaniel v. City. of Schenectady*,
    2005 WL 1745566 (N.D.N.Y. July 21, 2005) ........................................................ 15

*Mony Life Ins. Co. v. Monie Fashions, Inc.*,
    2004 WL 875929 (S.D.N.Y. Apr. 22, 2004) .......................................................... 10

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ................................................................................... 4

*Padberg v. McGrath-McKechnie*,
    203 F. Supp. 2d 261 (E.D.N.Y. 2002) ................................................................... 17

*Ray M. v. Bd. of Educ.*,
    884 F. Supp. 696 (E.D.N.Y. 1995) ........................................................................ 13

*Rios v. Marshall*,
    100 F.R.D. 395 (S.D.N.Y.1983) ............................................................................ 22

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir.2015) ............................................................................. 20, 21

*Rodolico v. Unisys Corp.*,
    199 F.R.D. 468 (E.D.N.Y. 2001) ........................................................................... 21

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ........................................................................... 12

*Rothenberg v. Daus*,
    2012 WL 1970438 (2d Cir. 2012) ......................................................................... 17

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ............................................................................. 15

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).......................................................................................... 10

*Stern v. Shammas*,
  12-CV-5210 (EDNY) (NGG) ............................................................................ 17

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) ..................................................... 12, 15, 21, 22

*Sykes v. Mel S. Harris & Associates LLC*,
  780 F.3d 70 (2d Cir. 2015) ............................................................................ 18

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008) ........................................................................... 10

*United States v. $829,422.42, Currency*,
  561 F. App'x 100 (2d Cir. 2014) .................................................................... 10

*United States v. Cambio Exacto, S.A.*,
  166 F.3d 522 (2d Cir. 1999) ........................................................................... 11

*United States v. 500 Delaware St.*,
  113 F.3d 310 (2d Cir. 1997) ........................................................................... 11

*Vincent v. Money Store*,
  304 F.R.D. 446 (S.D.N.Y. 215) ..................................................................... 14

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
  208 F.3d 288 (1st Cir. 2000) .......................................................................... 18

**Statutes**

42 U.S.C. § 1983 ............................................................................................................. 2

Fed. R. Civ. P. 23 ................................................................................................... passim

New York City Administrative Code Section 19-506 .......................................... passim

**Other Authority**

7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*
  § 1764 (3d ed. 2008) .................................................................................... 23

## PRELIMINARY STATEMENT

This Court has already found that New York City's practice of seizing vehicles without a warrant for suspected first-time violations of New York City Administrative Code Section 19-506, which bars unlicensed taxi cab service, is unconstitutional. Plaintiffs previously moved to certify a class, but the Court denied that motion, stating, "Plaintiffs ha[d] failed to propose a class that is defined in such a way that everyone within it has standing" because the proposed class could include "'straw' owners who did not suffer any injury in fact from the City's unconstitutional practice of seizing vehicles." (Dkt. 223 at 13).

Plaintiffs now ask the Court to certify a plaintiff class based on a revised class definition set forth below. This definition excludes "straw owners" and extends only to owners of "straight plate" vehicles with Article III standing to sue. Each proposed class member was a victim of the City's Taxi and Limousine Commission's uniform policy of seizing vehicles believed to be in violation of Section 19-506. Each suffered damages as a result of the seizure of their vehicles. None can be regarded as a straw owner. With all the Rule 23 requirements having been satisfied, the fairest and most efficient way to provide relief to all victims of the City's unconstitutional acts is to adjudicate and award damages on a class-wide basis.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

From the beginning of the proposed class period and for years before, New York City has seized vehicles it suspected were being used as unlicensed taxicabs. New York City Administrative Code Section 19-506(h)(2) permits the City to forfeit vehicles owned or operated by individuals who violate Section 19-506 multiple times within a 36-month period. Subsection (h)(1) empowers

---

[1] In light of the parties' previous submissions, we have included only the most critical facts to provide context for the court. For a more complete record of the facts, please refer to the Corrected Second Amended Complaint (Dkt. 101) and the parties' briefing on their dismissal and summary judgment motions.

1

the TLC to "seize any vehicle which [it] has probable cause to believe" is in violation of subsection (b)(1), including vehicles not subject to forfeiture. No part of Section 19-506, however, authorizes the City to forfeit the vehicles of first-time violators. *See* Corrected September 30, 2015 Opinion and Order ("Liability Opinion") at 3 (Dkt. 52).

Typically, the City would seize and hold a vehicle until the owner either (i) pled or was found guilty and paid a fine, or (ii) posted a cash bond exceeding the maximum fine pending adjudication of the matter. *See* Section 19-506(h)(1); Liability Opinion at 4. As a result, the City deprived the owners and operators of the use of their vehicles prior to any adjudication of the merits of their case and required them to spend time to recover their vehicles. After adjudication, if an owner or operator was found guilty, he was also forced to pay towing and storage charges. This seizure process caused meaningful emotional harm to the affected owners and operators.

On September 8, 2014, Plaintiffs, all of whom had their vehicles seized by the City in violation of the Fourth and Fourteenth Amendments, filed a civil rights class action complaint under 42 U.S.C. § 1983 against the City of New York, Meera Joshi and David Yassky (the current and former chairs of the TLC), and Raymond Scanlon (deputy commissioner of the TLC). Defendants moved to dismiss the complaint on October 31. On November 13, Plaintiffs filed an amended complaint, bolstering their constitutional arguments and adding a claim for violations of the City's Administrative Procedures Act.

On December 1, 2014 Defendants moved to dismiss the amended complaint. On January 7, 2015, Plaintiffs cross-moved for summary judgment as to liability. After oral argument on both motions, and by an order dated September 30, 2015 (as corrected on November 10, 2015 (Dkt. 52)), the court granted summary judgment for Plaintiffs on their federal constitutional claims, finding that "[w]hatever the due process clause might mean in more complicated scenarios, surely

it means the government cannot summarily seize property because a fine *might* be imposed at some point in the future by a neutral judicial officer." (Liability Opinion at 17).

On reconsideration, by order dated December 18, 2015, the Court denied summary judgment as to Plaintiffs Susan Calvo and John Peters Professional Limousines, Inc. ("JPPL") owing to questions of fact presented by Defendants as to whether they had pled the "first seizure" of a vehicle. (Dkt. 74). The Court, however, maintained summary judgment in favor of Plaintiffs Jacklyn Restrepo, Pedro Camacho, and Michael Harrell. Plaintiffs, with leave of the court, thereafter filed a corrected second amended complaint on April 8, 2016 (Dkt. 101), alleging the appropriate "first seizure" for each Plaintiff.[2]

On December 1, 2016, plaintiffs moved to certify a class of registered owners of straight plate vehicles who had no prior Section 19-506 violations within a three-year period. Defendants opposed based on asserted evidence suggesting that some members of the potential class could be "straw owners" who may not have been injured by the seizure of their vehicles. By an Opinion and Order dated September 21, 2017 (Dkt. 223), the Court denied the motion for class certification, without prejudice. The Court invited plaintiffs to move again for class certification with a re-defined class, which we do here.

## CLASS ACTION ALLEGATIONS

## I.    DEFINITION OF THE PROPOSED CLASS

The proposed plaintiff class (the "Proposed Class") shall include "**all registered owners of straight plate vehicles seized for alleged first-time violations of New York City**

---

[2] Plaintiff Michael Harrell's claims were dismissed and the award of summary judgment in his favor vacated for failure to comply with discovery. (Dkt. 160). The Court has since removed Mr. Harrell's name from the caption and we do so here.

**Administrative Code Section 19-506 from September 8, 2011 to the present who were operating the vehicle at the time of the seizure, or who retrieved the vehicle personally or through an agent by paying towing and storage fees.**" (the "Class Definition").[3] The Class Definition is based on the Court's observation that "[a] class consisting of registered owners who were either operating the vehicles at the time that they were seized or who retrieved the vehicles from the TLC might be sufficient to narrow the class to those who have Article III standing." (Dkt. 223 at 13-14). It would also exclude any owner who elected not to recover their vehicle, as well as "straw" owners who arguably suffered no cognizable injury.

Membership in this Proposed Class is readily ascertainable. For natural persons who were operating the vehicle at the time of the seizure or who retrieved the vehicles themselves, no additional proof beyond the records already maintained by the City shall be necessary. Corporate owners would need to provide (if not already in the City's files) either proof that the seized vehicle was being driven by an employee or agent at the time of the seizure, or a corporate authorization permitting their agent to retrieve the vehicle. Finally, individual owners who did not retrieve the vehicle themselves would be required to provide evidence, via affidavit or financial records, that they, in fact, paid the towing and storage fees. *See In re Petrobras Sec. Litig.*, 862 F.3d 250, 269 (2d Cir. 2017) (holding that a class is ascertainable if it can be defined "using objective criteria that establish a membership with definite boundaries."); *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) (*cited by In re Petrobras Sec. Litig.*, 862 F.3d at 265, 268 (2d. Cir. 2017))

---

[3] Notwithstanding that our motion seeks to certify a class as defined based on the Court's observation, we note that a broader class that included registered owners who paid to purchase or insure the seized vehicle and who maintained possession and control of the seized vehicle on a regular basis could also be ascertainable where all of its members possessed Article III standing.

(holding that district courts have discretion "to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed").

All members of the Proposed Class were harmed by the City's unconstitutional seizures. All lost use of their vehicles and suffered additional economic losses, such as the payment of towing and storage fees, lost income, and lost time spent retrieving the seized vehicle.[4] For example, in the case of Plaintiff JPPL, a New Jersey-based limousine company, such damages would include the income the company would have generated by legally operating the seized vehicle for hire in New Jersey. Some Proposed Class members lost wages resulting from missed hours of work due to lack of transportation or time spent retrieving their cars.

## II.    PROPOSED CLASS REPRESENTATIVES

The named Plaintiffs here ask to be appointed class representatives to represent the roughly ten thousand similarly-situated victims of the City's unconstitutional seizure policy. A class action represents the best mechanism for vindicating their rights.

### A.    Pedro Camacho

On January 9, 2014, Pedro Camacho drove to JFK Airport to drop off his niece, who had stayed with him and his family during the holidays. Gallagher Decl.[5] Ex. 6 (Camacho Dep.), at 16:4-19.  He was the registered owner of the Buick Verano he was driving and also made finance payments on the vehicle. *Id.* at 7:12-8:23. Upon their arrival at the airport, Mr. Camacho was stopped by a TLC inspector, who proceeded to issue him a summons and seize his car without a warrant. *Id.* at 20:11-21:19; Gallagher Decl. Ex. 7 (Camacho Seizure and Summons). As a result,

---

[4] Plaintiffs have also alleged the right to recover for fines paid as a result of guilty pleas induced by the seizure of their vehicles, but this Court has held that fines are not recoverable on a class basis. (Dkt. 120)

[5] Citations to the "Gallagher Decl." refer to the Declaration of Joseph T. Gallagher dated November 1, 2017 and filed in support of this motion.

Mr. Camacho was without the use of his car for 12 days. When he appeared for a hearing, a TLC inspector tried in vain to convince Mr. Camacho to pay $600 and plead guilty in order to easily dispose of the matter. Gallagher Decl. Ex. 6 at 26:4-13. Mr. Camacho refused to plead guilty to an offense he did not commit. At the hearing itself, the TLC withdrew the charges, after which Mr. Camacho's car was released. *Id*. at 34:9-16; Gallagher Decl. Ex. 8 (Camacho Notice of Decision). Mr. Camacho suffered from the loss of use of his vehicle, from the time spent retrieving it, and from emotional harm.

### B.    Jacklyn Restrepo

#### 1.    First Incident

On September 9, 2013, Jacklyn Restrepo's boyfriend, Jason Calvo, was driving a Chevrolet Suburban SUV registered to her, and for which she paid all finance charges towards its purchase. Gallagher Decl. Ex. 9 (Restrepo Dep.), at 41:22-42:15, 49:25-50:11, 59:3-13. Alleging violations of Section 19-506(b)(1), TLC inspectors stopped and seized the vehicle. *Id*. at 58:1-24. She paid a $2000 bond and paid towing and storage charges to retrieve the vehicle. *Id.* at 62:9-63:11, 99:12-19, 100:16-17.

Both Ms. Restrepo and Mr. Calvo were given summonses. *Id.* at 65:23-25, 70:3-13. Later, both were found not guilty. *Id.* at 70:18-25; Gallagher Decl. Ex. 10 (Restrepo Notice of Decision dated Sept. 18, 2013). Ms. Restrepo suffered the loss of use of her vehicle and emotional harm. Gallagher Decl. Ex. 9 at 99:12-19, 109:2-12.

#### 2.    Second Incident

On July 23, 2014, while Ms. Restrepo's boyfriend was driving the same Chevrolet Suburban SUV on Ditmars Boulevard in Queens, TLC inspectors again stopped and seized her vehicle. Gallagher Decl. Ex. 9 at 81:14-24; Gallagher Decl. Ex. 11 (Restrepo and J. Calvo Summonses). Both Ms. Restrepo and Mr. Calvo were issued summonses. Gallagher Decl. Ex. 9 at

6

90:6-12; Gallagher Decl. Ex. 11. She posted a bond and paid towing and storage fees to retrieve the vehicle. Gallagher Decl. Ex. 9 at 86:13-24, 99:12-19, 100:9-101:11. The TLC court found Ms. Restrepo guilty on August 8, 2014 based on a "presumption" that the she allowed her boyfriend to use the vehicle for for-hire activity, even as the same tribunal later found Mr. Calvo not guilty of such activity. Gallagher Decl. Ex. 12 (Restrepo Notices of Decision dated August 4, 2014 and August 18, 2014). Ms. Restrepo paid towing and storage fees; suffered from the loss of use of the vehicle and for time taken off from work, and from emotional harm. Gallagher Decl. Ex. 9 at 99:12-19, 109:2-12, 111:10-112:13.

### C.    Eamon Yuel

On August 23, 2014, on Northern Boulevard in Queens, TLC inspectors seized Eamon Yuel's Honda minivan without a warrant citing a violation of Section 19-506. Gallagher Decl. Ex. 13 (Yuel Seizure and Summons). The vehicle was registered to Mr. Yuel, and he was driving it when it was seized. Mr. Yuel retrieved the vehicle on August 25 by paying a $2,000 cash bond and separate towing and storage fees. Gallagher Decl. Ex. 14 (Yuel Dep.) at 41:21-42:5. On September 3, Mr. Yuel appeared for a hearing at the TLC tribunal where the ALJ dismissed the violation on the grounds that the investigator lacked reasonable grounds to stop him. Gallagher Decl. Ex. 15 (Yuel Notice of Decision). Mr. Yuel's injuries include the loss of use of his vehicle (for which he paid to rent an alternative vehicle), a payment to cover a portion of the hotel fees incurred by his passengers as a result of the seizure, and emotional damages. Gallagher Decl. Ex. 14 at 58:25-59:4, 60:3-9, 61:6-24, 65:18-25, 69:13-22.

### D.    Susan Calvo

On June 21, 2012, Susan Calvo's son, Jason, was driving Ms. Calvo's GMC SUV to LaGuardia Airport. Gallagher Decl. Ex. 16 (Calvo Summons and Seizure); Gallagher Decl. Ex. 17 (Calvo Dep.) at 67:17-23. The vehicle was registered to Ms. Calvo. Gallagher Decl. Ex. 16. She

also paid the finance charges towards its purchase. Gallagher Decl. Ex. 17 at 18:4-6; 58:4-11.
Along the way, a TLC inspector stopped Jason and charged him with operating a vehicle for hire.
Gallagher Decl. Ex. 16. The TLC inspector seized the vehicle without a warrant. Gallagher Decl.
Ex. 17 at 80:23-81:3. On June 22, Ms. Calvo pleaded guilty and agreed to pay a $200 fine. *Id.* at
78:24-79:1; Gallagher Decl. Ex. 18 (Vehicle Release); Gallagher Decl. Ex. 19 (Calvo Fine,
Towing, and Storage Receipts). The vehicle was impounded and released only after Ms. Calvo
paid towing and storage fees. Gallagher Decl. Ex. 17 at 79:2-11; Gallagher Decl. Ex. 19. Ms. Calvo
suffered from the payment of towing and storage fees, from the loss of use of the vehicle while it
was impounded, and from emotional harm.

### E.  John Peters Professional Limousines, Inc.

On November 15, 2012, TLC inspectors effected a warrantless seizure of a Lincoln Sedan
registered to JPPL, a New Jersey-based car service company, for violating Section 19-506.
Gallagher Decl. Ex. 20 (JPPL Seizure and Summons). This was JPPL's first citation. Gallagher
Decl. Ex. 21 (Alcabes Dep.) at 51:18-24. At the time of the seizure, the vehicle was being driven
by Arthur Fleischer, a part-time employee of JPPL. *Id.* at 20:22-21:4, 36:23-37:4. JPPL also made
payments to purchase the vehicle over time. *Id.* at 22:19-23:12, 24:18-21. On November 16, 2012,
JPPL pleaded guilty to the violation and agreed to pay a fine of $500. St. Laurent Decl. Ex. 22
(JPPL Plea and Stipulation). The vehicle was impounded and released upon the signing of a guilty
plea and payment of towing and storage charges. St. Laurent Decl. Ex. 21 at 48:24-50:3. JPPL
suffered damages from paying towing and storage fees, and from lost income that could have been
generated by operating the seized vehicle while it was impounded.

### F.  Yong Zhang

On January 2, 2013, near the South Street Seaport in Manhattan, TLC inspectors seized
Yong Zhang's minivan without a warrant and cited him for violating Section 19-506. Gallagher

Decl. Ex. 23 (Zhang Summons); Gallagher Decl. Ex. 24 (Zhang Plea and Stipulation). The vehicle was registered to Mr. Zhang and he was driving it when it was seized. Gallagher Decl. Ex. 25 (Zhang Dep.) at 13:7-12, 31:15-19. The next day, Mr. Zhang pleaded guilty to the violation and agreed to pay a fine of $500. *Id.* at 57:22-58:10, 59:4-8. In order to retrieve his vehicle, Mr. Zhang paid an additional $205 in towing and storage fees. Gallagher Decl. Ex. 26 (Zhang Towing and Storage Receipts). Mr. Zhang suffered from the payment of towing and storage fees, from the loss of use of the vehicle, and from emotional harm.

## ARGUMENT FOR CERTIFICATION

Plaintiffs seek to certify and represent the Proposed Class pursuant to Fed. R. Civ. P. 23(b)(3). Each member of the Proposed Class has standing. The Proposed Class also satisfies the prerequisites of Rule 23(a) in that: the Proposed Class is sufficiently numerous; claims are common across members of the Proposed Class; the proposed class representatives are typical of the Proposed Class members; plaintiffs' representation is adequate; membership in the Proposed Class is readily ascertainable; questions of law or fact common to the members of the Proposed Class predominate over any questions affecting only individual members; and a class action is superior to other available methods for adjudication of the controversy. *See* Fed. R. Civ. P. 23(a)(1)–(4).

## I.   ALL MEMBERS OF THE PROPOSED CLASS POSSESS ARTICLE III STANDING.

As a prerequisite to certification, a proposed class must "be defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (internal citations omitted). Article III standing is established by demonstrating that a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision." Dkt. 223 at 3-4

(citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). At class certification, standing must be demonstrated by a preponderance of the evidence. Dkt. 223 at 4 (*citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

The Court had previously expressed concern that plaintiffs' initial class definition might not exclude "straw owners" of vehicles – individuals who, despite being registered owners, never operated or had an actual, cognizable interest in the vehicle, and therefore suffered no injury-in-fact from its seizure. The revised Class Definition addresses this concern. Each member of the Proposed Class possesses "indicia of reliability or substance to claims of ownership" in order to demonstrate sufficient injury-in-fact as to confer standing to sue because, in addition to being the registered owner of the vehicle, they either operated the vehicle at the time of the seizure, or paid the required towing and storage costs to recover it. Dkt. 223 at 6 (*citing United States v. $829,422.42, Currency*, 561 F. App'x 100, 100 (2d Cir. 2014).); *In re Elec. Books Antitrust Litig.*, 2014 WL 1641699, at *8-9 (S.D.N.Y. Apr. 24, 2014) (certifying class of e-book purchasers where plaintiffs adduced evidence that 99.8% of potential class members had purchased e-books from defendants).

With respect to owner/operators, the City's interference with their use of the vehicle at the time of seizure readily establishes indicia of ownership and an injury in fact sufficient to confer standing. The fact that each owner was operating the vehicle at the time of the seizure immediately negates the argument that he was a straw owner, as a straw owner, by definition, lacks any beneficial interest in the property.[6] *See United States v. 500 Delaware St.*, 113 F.3d 310, 312 (2d

---

[6] A vehicle may, of course, have more than one owner. The New York Vehicle and Traffic Law expressly contemplates such a scenario. *See* N.Y. Veh. & Traf. Law § 388. In such a case, each of the owners would have standing so long as they suffered cognizable injury in connection with the seizure. *Mony Life Ins. Co. v. Monie Fashions, Inc.*, 2004 WL 875929, at *1 (S.D.N.Y. Apr. 22, 2004) (the fact that there is "more than one owner does not negate the standing of one of the owners to bring suit").

Cir. 1997). This is true regardless of whether the owner/operator was a natural person, or a corporate entity whose agent was operating the vehicle, as a corporate entity may only act through its agents. *See G.M. Leasing Corp. v. U.S.*, 429 U.S. 338 (1977); *see also El-Nahal v. Yassky*, 835 F.3d 248, 259 (2d Cir. 2016) (Pooler, J., concurring in part and dissenting in part). Any additional damages suffered by owner/operators (such as payment of towing and storage, lost profits, or emotional damages) constitute additional, cognizable injuries-in-fact.

Likewise, owners who paid towing and storage charges (directly or through an agent) have demonstrated an actual financial interest in the vehicle, and therefore suffered a cognizable monetary injury while acting to enforce that ownership interest. Such monetary injury confers standing separate and apart from their interest in the vehicle. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527-28 (2d Cir. 1999).

## II.       THE PROPOSED CLASS SATISFIES RULE 23(a).

### A.       The Proposed Class is Sufficiently Numerous – Rule 23(a)(1)

A class action is appropriate here because the proposed class is so large that joinder of all individual class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC,* 504 F.3d 229, 244–45 (2d Cir. 2007). Where, as here, a case involves a class numbering in the thousands, the numerosity requirement of Rule 23(a)(1) is satisfied. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that "numerosity is presumed at a level of 40 members").

In discovery, the City provided lists of registered owners whose vehicles were seized for first-time violations of Section 19-506 in the class period, with the names of the owners redacted.

*See* Gallagher Decl. Exhs. 1-5. These lists record well over 10,000 seizures. Based on a review of the 345 "unredacted" seizure files that defendants produced during discovery (showing complete data for one-fifth of the first-time seizures that took place in 2015), it appears that more than half of the seizures (55%) were suffered by owner/operators. Declaration of Kristin E. Olson, dated November 1, 2017, at ¶ 6. Another 13% of the seized vehicles were registered to corporate owners. *Id.* Our review also indicates that 68% of the registered owners paid towing and storage charges to retrieve their vehicles or paid the fines assessed on the § 19-506 violation. *Id.* Assuming that these unredacted 2015 files are a representative sample of the total number of first-time seizures effected during the class period, it appears that the Proposed Class comprises at least 5,000 people, readily satisfying the numerosity requirement.

### B.    Claims are Common Across Class Members – Rule 23(a)(2)

Commonality does not require that each class member have identical claims, only that all plaintiffs share at least one question of law or one fact. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Rodriguez v. It's Just Lunch, Int'l,* 300 F.R.D. 125, 132 (S.D.N.Y. 2014). A question of law or fact is common to the class if the question is capable of class-wide resolution. *E.g.*, *Stinson v. City of New York*, 282 F.R.D. 360, 370 (S.D.N.Y. 2012) (internal citation omitted).

In this case, each member of the Proposed Class is an owner of a "straight plate" vehicle which was seized in violation of the owner's Fourth and Fourteenth Amendment rights. Accordingly, "[b]ased on the very definition of the class, all putative class members have suffered injuries from the [City's] general policy" of improperly seizing the vehicles of first-time violators. *See Betances v. Fische*r, 304 F.R.D. 416, 427 (S.D.N.Y. 2015). As such, the proposed class members' putative claims turn on the answers to common questions of law and fact. All members of the Proposed Class have suffered seizures of their vehicles based on a general TLC policy. All have suffered damages, even if not all have suffered the same types of damages. While the

proponent of class certification need not show that the common "questions will be answered, on the merits, in favor of the class," *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1191 (2013), this Court has already determined that the City's policies have been deemed unconstitutional as a matter of law on motion for summary judgment.

Finally, the amount of damages owed each member of the Proposed Class is ascertainable. Most members of the class have un-reimbursed towing and storage costs in amounts already calculated by Defendants. The other principal measure of damages, loss of use of seized vehicles, is readily ascertainable because defendants' records reflect the number of days of each vehicle seizure as well as the make, year and model of the vehicle seized. Courts have previously certified classes seeking similar categories of damages. *See* e.g. *In re MF Glob. Holdings Ltd. Inv. Litig.,* 2015 WL 4610874, at *6 (S.D.N.Y. July 20, 2015) (certifying class seeking damages including lost opportunity costs). Damages for garden variety pain and suffering may also be addressed on a class basis. *See In re Nassau Cty. Strip Search Cases*, 2008 WL 850268, at *6 (E.D.N.Y. Mar. 27, 2008) (extending previously certified class to include issues of damages, which included general damages for loss of human dignity).

The commonality requirement is therefore satisfied because "the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001); *see also Marisol A*., 126 F.3d at 376-77; *see also Ray M. v. Bd. of Educ*., 884 F. Supp. 696, 699 (E.D.N.Y. 1995) (commonality requirement met where plaintiffs "are challenging a practice of defendants," and not merely defendants' "conduct with respect to the individual plaintiff[s]").

### C.    The Claims of the Proposed Class Representatives are Typical for the Class – Rule 23(a)(3)

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) *citing Marisol A.,* 126 F.3d at 376 (internal quotation marks omitted). Typicality does not require that the representative claims be identical to those of the class members, and minor factual variations among plaintiffs will not defeat certification. *See Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 175 (S.D.N.Y. 2008); *see also Vincent v. Money Store*, 304 F.R.D. 446, 455 (S.D.N.Y. 215) ("[I]t is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification.") (citations omitted). "The typicality requirement may satisfied where "injuries derive from a unitary course of conduct by a single system." *Betances v. Fischer*, 304 F.R.D. at 425, *Marisol A.,* 126 F.3d at 377.

The proposed class representatives' claims are typical because they arise from the uniform policy: the unconstitutional practice of seizing vehicles without a warrant for first-time violations of Section 19-506. *See Betances*, 304 F.R.D. at 425 *citing Marisol A.*, 126 F.3d at 377 (typicality satisfied where the "injuries derive from a unitary course of conduct by a single system."). While there may be factual differences between the circumstances surrounding each seizure, all members of the Proposed Class had their vehicles seized without due process and without a warrant. Meanwhile, the categories of damages available to the class representatives are typical of those of the entire Proposed Class even if not every class member suffered each category of damage.

### D.    Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) requires that movants demonstrate that "the representative parties will fairly

and adequately protect the interests of the class." Class counsel must also be qualified and experienced to conduct the litigation, pursuant to Fed. R. Civ. P. 23(g)(1).

       1.   The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The "[a]dequacy [requirement] is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (internal quotation marks and citation omitted). Class representatives are fiduciaries for the remainder of the class. *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981), *aff'd* 702 F.2d 400 (2d Cir.1983) (class representative serves as fiduciary to advance and protect interests of those whom he purports to represent).

Courts are to "carefully scrutinize the adequacy of representation in all class actions," but they "do not require the representative plaintiff to be the best of all possible plaintiffs." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 95 (S.D.N.Y. 2010) (citations and quotation marks omitted). In order to determine if the class representative will discharge his or her fiduciary obligations faithfully, "a court must examine various factors such as credibility, reliability, and potential conflicts." *McDaniel v. City of Schenectady*, 2005 WL 1745566, at *2 (N.D.N.Y. July 21, 2005). A potential class representative may be found adequate even if they engaged in "unsavory" or illegal behavior. *See Stinson*, 282 F.R.D. at 373 ("[M]ost courts have rejected challenges to adequacy based on allegations that plaintiffs' backgrounds . . . include[d] unrelated unsavory, unethical or even illegal conduct.") (internal quotation omitted); *Brown v. Kelly*, 2007 WL 1138877, at *2 (S.D.N.Y. Apr. 16, 2007) ("If the courts prevent persons with questionable moral characters from acting as class representatives, [classes of] prisoners, mental patients, juvenile offenders, or others capable of socially deviant behavior could never . . . be certified. This is an

15

unacceptable result.").

Here, each of the named plaintiffs is an adequate representative of the Proposed Class because they were subjected to the same unlawful conduct as the class members and suffered the same injuries that the action seeks to remedy. *See Hirschfeld v. Stone*, 193 F.R.D. 175, 183 (S.D.N.Y. 2000). Additionally, there are no actual or potential conflicts of interest between the named plaintiffs and the Proposed Class. To the extent that differences regarding proof and amount of damages exist between class members, such differences do not give rise to a conflict. *See e.g. In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996). Each of the named plaintiffs has testified at depositions when called to do so, and cooperated in the production of documents.

### 2.   Proposed Class Counsel is Adequate.

Meanwhile, Plaintiffs have retained counsel with extensive experience representing plaintiffs in Section 1983 cases and in class actions, as well as the unique experience of litigating against the TLC. These counsel have already achieved a summary judgment award and a determination that plaintiffs are prevailing parties in this litigation. (Dkt. 132).

Harris, St. Laurent and Chaudhry LLP ("HSC") represented investors in a securities class action from 2012 to 2015, *Duncan Living Trust et al. v. O'Connor, Davies, Munn & Dobbins, LLP*, BC494236 (Ca. Sup. Ct., L.A. Cty. 2012), and served as co-counsel in a New York class action premised on wage and hour violations, which recently settled on a class basis. *Hartley et al. v. Wells Fargo & Co., et al.,* 14-cv-05169 (EDNY) (JMA). (Declaration of Andrew M. St. Laurent, dated November 1, 2017, at ¶ 12). HSC has significant experience in representing plaintiffs in Section 1983 cases. *See, e.g., Abdell v. City of New York*, 05-CV-8453 (SDNY) (RJS) (mass false-arrest action as to which four plaintiffs ultimately went to trial on their individual claims in the

Spring of 2014); *Stern v. Shammas*, 12-CV-5210 (EDNY) (NGG) (Section 1983 individual action that was tried to jury verdict in the spring of 2015). (Dkt. 141).

Additionally, Daniel Ackman has litigated against the TLC on numerous occasions. *See, e.g., Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 267-68 (E.D.N.Y. 2002) (summary judgment on due process claim against TLC); *Rothenberg v. Daus*, 2012 WL 1970438 (2d Cir. 2012) (reinstating federal claims, which later resulted in partial summary judgment and settlement); *Ackman v. Giuliani*, Index No. 101652/00, N.Y.L.J. Mar. 17, 2000 (Article 78 Action that resulted in a ruling opening the TLC tribunal, which for years had been closed to the public). (Dkt. 140; Declaration of Daniel L. Ackman, dated November 1, 2017, at ¶¶ 10-12). Counsel will continue to litigate in the best interests of the plaintiffs and the Proposed Class, and are thus appropriate class counsel pursuant to Fed. R. Civ. P. 23(g)(1).

## III.    THE PROPOSED CLASS SATISFIES RULE 23(b)(3).

Having satisfied the requirements of Rule 23(a), class certification is appropriate because common legal or factual issues predominate over individual issues, because a class action is superior to other methods of adjudication to resolve this dispute, and because the Proposed Class is sufficiently definite.

### A.    Common Legal and Factual Issues Predominate

The primary questions for certifying a Rule 23(b)(3) class is whether "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof and whether these particular issues are more substantial than the issues subject only to individualized proof." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 139 (2d Cir. 2015) *citing In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted). The mere presence of individual questions will not defeat class certification. *See Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 81 (2d Cir.

2015) ("the Supreme Court has also instructed that Rule 23(b)(3) does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof."), *citing Amgen,* 133 S.Ct. at 1196.

Common issues of law and fact predominate over any individualized issues that may exist. The primary issue here—whether the City's seizures of straight plate vehicles owned by first-time violators of Section 19-506 is unconstitutional—is common to the entire class and has already been found in plaintiffs' favor. "Even resolved questions continue to implicate the 'common nucleus of operative facts and issues' with which the predominance inquiry is concerned." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) (internal quotations omitted), *citing Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000). A judgment of liability can be entered against Defendants vis-à-vis every single member of the class based solely on the City's uniform unconstitutional practice.

Meanwhile, Plaintiffs have used common proof to establish Defendants' liability for the violations of individual class members' constitutional rights. The identification of class members is simple: as noted above, Defendants have provided plaintiffs with spreadsheets listing all of the individuals suspected of first time violations of § 19-506 who had their vehicles seized by the City of New York from partway through 2011 up to 2015. Gallagher Decl. Exhs. 1-5. From these lists, and the files maintained by the City (a portion of which were provided to plaintiffs' counsel in the "unredacted" production), membership in the Proposed Class is readily ascertainable. Courts routinely certify classes based on similar evidence of liability. *See e.g. In re Nassau Cty. Strip Search Cases*, 461 F.3d at 229 ("[s]ince defendants possess records of misdemeanor detainees strip searched during the policy period, determining class membership would be simple."). For most members of the Proposed Class, the documents necessary to identify them already exist in the

18

Defendants' files.

Moreover, even for those members of the Proposed Class as to whom some additional indicia of membership may be required (specifically those registered owners attesting to the authorization of another to transmit towing and storage fees on their behalf and to retrieve vehicles), an affidavit should in almost every case be sufficient. Courts in this Circuit have routinely found such offerings to be sufficient to satisfy the "ascertainability" requirement. *See Kurtz v. Kimberly-Clark Corp.*, 2017 WL 1155398, at *45 (E.D.N.Y. Mar. 27, 2017) ("plaintiff may rely on affidavits" to identify class members). In this case, of course, the identify of such class members would be buttressed by their place on the lists of registered owners whose vehicles had been seized by Defendants. Therefore, class members may be identified by reference to clear and objective criteria, satisfying the ascertainability requirements set forth by the Second Circuit.

In addition and in the alternative, the Second Circuit has recently made clear that questions about the administrative feasibility of a class definition need not be addressed at the certification stage. In *In re Petrobras Securities Litigation*, the Second Circuit clarified that its previous ruling in *Brecher* required only "asking whether the class was defined by objective criteria that made the class's membership sufficiently definite, not whether the class was administratively feasible." 862 F.3d at 266. The Second Circuit said that *Brecher*'s statement "about 'administrative feasibility' and 'mini-hearings' was not strictly part of the holding, and was not intended to create an independent element of the ascertainability test; rather, that language conveyed the purpose underlying the operative requirements of definiteness and objectivity." *Id.* at 266. A separate administrative feasibility requirement, the court reasoned, "would be inconsistent with the careful balance struck in Rule 23," citing the predominance and superiority requirements. *Id.* at 268-269.

*Petrobras* then clarified that the ascertainability element itself is modest, requiring only that a proposed class be definable "using objective criteria that establish a membership with definite boundaries." *Id.,* at 269. The Court said:

> This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way. If there is no focused target for litigation, the class itself cannot coalesce, rendering the class action an inappropriate mechanism for adjudicating any potential underlying claims. In other words, a class should not be maintained without a clear sense of who is suing about what. Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23.

*Id*.

In this case, of course, Defendants have already identified the registered owners of the vehicles involved in 12,457 seizures, and maintain files indicating the circumstances of each seizure (including who was driving the vehicle at the time) and the payment of towing and storage fees. This data is sufficient to identify members of the Proposed Class. While Defendants have further identified a handful of seizures (less than .5% of the total) in which there is some reason to suspect that the registered owner is not the beneficial owner of the seized vehicle, those cases fall outside of the Class Definition set forth above.

With respect to damages, in order to establish predominance, Plaintiffs need only show that all class members suffer damages based on a uniform theory of liability. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 407 (2d Cir. 2015) Plaintiffs seek to be made whole for their injuries that followed from the City's warrantless seizure of their vehicles and are entitled to damages that flow from those injuries: the loss of use of their vehicles, compensation for emotional damage, compensation for time spent retrieving their vehicle, reimbursement for towing and storage costs in most cases, and, in some cases compensation for lost income.

In any event, the possibility of individualized damages determinations does not preclude a finding of predominance. *See Roach*, 778 F.3d at 408 ("[t]he Supreme Court did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations); *Sykes*, 780 F.3d at 81 ("common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.") (internal citations omitted). This case is ideally suited for class certification because it concerns the systemic implementation of a single, uniform policy, and issues concerning liability, as well as the bulk of individual damages, can be easily resolved based on defendants' own records. Certification is appropriate since "it appears that virtually every issue prior to damages is a common issue." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124,139 (2d. Cir. 2001) (internal citation and quotation omitted) (abrogated by statute on other grounds).

## B.     A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) requires that Plaintiffs demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," and it is in this case. "Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served, namely the efficient resolution of the claims … in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *Stinson*, 282 F.R.D. at 383 (*quoting Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 479 (E.D.N.Y. 2001)).

Certification of the proposed class will permit the resolution of thousands of individual claims in a single forum, at one time, promoting judicial economy, avoiding a multiplicity of repetitive lawsuits and the potential for inconsistent results. More importantly, "without class certification, it is likely that the constitutional violations Plaintiffs allege would go unadjudicated, as many of the potential class members do not possess the knowledge or resources to prosecute a lawsuit, and the relatively small amount of damages suffered by each individual plaintiff decreases

the possibility of individual lawsuits being filed." *Stinson,* 282 F.R.D. at 383, *citing Rios v. Marshall,* 100 F.R.D. 395, 409 (S.D.N.Y.1983) ("[T]he relatively small amount likely in any individual recovery … renders certification of a plaintiff class in this action particularly appropriate."). Here, Plaintiffs' claims allege a single unconstitutional practice, making class certification especially appropriate. *See Brown,* 609 F.3d at 484 ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation of the harm, this is precisely the type of situation for which the class action device is suited.") (citations omitted). As such, a class action represents a superior means of adjudicating Plaintiffs' claims.

## C.   The Class is Sufficiently Definite[7]

Finally, the proposed class must also be sufficiently definite. *See Casale v. Kelly*, 257 F.R.D. 396, 406 (S.D.N.Y. 2009) (Rule 23 contains the additional implicit requirement that an ascertainable class exists and has been properly defined). The proposed class must be defined such "that it is administratively feasible for the court to determine whether a particular individual is a member." *Betances*, 304 F.R.D. at 426 (*quoting* 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1764 (3d ed. 2008)). A class is identifiable if "its members can be ascertained by reference to objective criteria," *In re Fosamax Products Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008), and the court "must be able to determine the class membership "without having to answer numerous fact-intensive inquiries." *Id.* at 396 (internal quotation omitted).

---

[7] As noted above, *In re Petrobas*, 862 F.3d 250, 266 (2d Cir. 2017), has changed the law in this area and has meaningfully decreased this burden as to this issue on plaintiffs seeking certification. Nonetheless, Plaintiffs maintain this analysis and argument here out of an abundance of caution.

Here, the proposed class definition is unambiguous. Individual members can be identified through the Defendants' documents, including the redacted spreadsheets created by a review of data for every TLC seizure (including summonses and towing and storage fine data). Defendants produced a sample of this TLC data to Plaintiffs in the "unredacted" production. Communicating with such identified persons to obtain any other information that may be required (such as if they authorized others to retrieve their vehicles and transmitted payments through those others) would not present any substantial difficulties. Based on our review of that data, it is apparent that it satisfies, beyond any dispute, the requirement that class members be ascertainable. *See Betances* at 428-29 (class members ascertained through access to defendants' computer records).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Proposed Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

DATED:     November 1, 2017
            New York, NY

          Respectfully submitted:

                   /s/
          DANIEL L. ACKMAN
          222 Broadway, 19th Floor
          New York, NY 10038
          Tel: (917) 282-8178

          Andrew St. Laurent
          Joseph T. Gallagher
          HARRIS, ST. LAURENT & CHAUDHRY LLP
          40 Wall Street, 53rd Floor
          New York, NY 10005

          *Attorneys for Plaintiffs*