UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SUSAN CALVO, JOHN PETERS PROFESSIONAL LIMOUSINES, INC., JACKLYN RESTREPO, PEDRO CAMACHO, EAMON YUEL and YONG ZHANG individually and on behalf of all others similarly situated,

    *Plaintiffs*,

v.

THE CITY OF NEW YORK, MEERA JOSHI, DAVID YASSKY and RAYMOND SCANLON,

    *Defendants*.

No. 14 Civ 7246 (VEC)

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S CLASS CERTIFICATION DECISION

DANIEL L. ACKMAN
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178

HARRIS, ST. LAURENT & CHAUDHRY LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T. (212) 397-3370
F. (212) 202-6206

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ....................................................................................... 1

**ARGUMENT** ................................................................................................................... 1

    I.  THE CLASS LISTS IDENTIFY FIRST-TIME VIOLATORS OF SECTION 19-506, AND ARE THE CORRECT STARTING POINT IN DEFINING THE CLASS. .................................................................................................................. 1

    II.  THE OATH TRIBUNAL'S ADJUDICATIONS OF LIABILITY, AND THERFORE OWNERSHIP, ARE ENTITLED TO COLLATERAL ESTOPPEL EFFECT. .................................................................................................................. 2

    III.  CONSISTENT WITH COMMON PRACTICE IN CLASS ACTION CASES, THE COURT'S CONCERNS ABOUT CREDIBILITY AND OWNERSHIP FRAUD CAN BE RESOLVED BY ROUTINE ADMINISTRATIVE PROCEDURES. ....... 4

**CONCLUSION** ............................................................................................................. 8


# TABLE OF AUTHORITIES

**CASES**

*B & B Hardware, Inc. v. Hargis Indus., Inc.*

   135 S. Ct. 1293 (2015) ................................................................................................ 4

*Gale P. Elston, P.C. v. Dubois*

   18 A.D.3d 301 (1st Dep't 2005) ................................................................................. 4

*Gerney v. Tishman Const. Co. of N.Y.*

   518 N.Y.S.2d 564 (Sup. Ct. N.Y. Cty. 1987) ............................................................ 4

*In re Foreign Exchange Benchmark Rates Antitrust Litig.*

   No. 13-cv-7789 (S.D.N.Y.) ........................................................................................ 6

*In re Honest Mktg. Litig.*

   No. 16-cv-01125 (S.D.N.Y.) ...................................................................................... 7

*In re Petrobras Secs. Litig.*

   No. 14-cv-9662 (S.D.N.Y.) ........................................................................................ 6

*In re Takata Airbag Prod. Liab. Litig.*

   MDL No. 2599, No. 14-24009-CV (S.D. Fl.) ............................................................ 7

**STATUTES**

New York City Administrative Code §19-506 ................................................................ 1, 2, 3, 4

**PRELIMINARY STATEMENT**

Defendants make three arguments in their opposition, none of which withstand scrutiny. First, they claim that the Class Lists cannot be used to determine ownership of seized vehicles. Plaintiffs, however, did not suggest that the Court should use them for that purpose – the Class Lists merely identify first-time violators of Section 19-506 within the Class Period, which is the starting point to determine whether someone could be a class member. Second, they claim that OATH pleas are not entitled to collateral estoppel effect. This is incorrect as a matter of law. Finally, they argue that the Court has already rejected the possible administrative solutions identified in Plaintiffs' moving papers. This too is wrong, as Plaintiffs argued on the underlying motion that issues of "administrative feasibility" need not be determined at the class certification stage, and the Court did not then receive argument on the details of these solutions. Here, Plaintiffs provide a roadmap of how administrative solutions (*e.g.*, requiring an Administrator to review title or proof of insurance as a condition of class membership) would resolve the Court's concerns regarding objective classwide proof. This approach parallels how proof is typically handled in class cases, where standing, class membership, and damages are established by objective materials such as brokerage statements (in securities cases) or receipts (in consumer cases), avoiding the need for the Court or administrator to make any credibility determinations.

**ARGUMENT**

**I.  THE CLASS LISTS IDENTIFY FIRST-TIME VIOLATORS OF SECTION 19-506, AND ARE THE CORRECT STARTING POINT IN DEFINING THE CLASS.**

Each Class List includes a disclaimer providing, in relevant part, that "defendants do not attest or admit that a ***first-time violation*** of [Section 19-506] was the ***sole*** reason that a listed straight-plate vehicle was seized." Opp'n Br. at 3 (emphasis added). Defendants argue that because of the disclaimer the lists cannot be used to establish vehicle ownership. *Id*. at 3-4. Plaintiffs do

1

not argue otherwise, and rely on the Class Lists simply to identify first-time violators of Section 19-506, as found by the TLC. Moving Br. at 3.[1]

This distinction between identifying first-time seizures and proving ownership (as part of a standing or predominance inquiry) is critical: Being a first-time violator is a necessary, but not sufficient, condition of class membership. By placing an individual or entity on a Class List, the City has conceded that they were a first-time violator. It remains Plaintiffs' burden to show that the listed individuals or entities have standing to challenge the seizure of the vehicles and that they can prove ownership. Plaintiffs have already provided a class definition that the Court has assumed without deciding satisfies the standing inquiry, and in Sections II and III, *infra*, present legal argument regarding collateral estoppel and an administrative mechanism to determine class membership based on objective criteria using documents of unquestioned veracity. This way, Plaintiffs can ensure the Court need not make individualized determinations of ultimate class membership, and further that any class certified is not tainted by fraud.

II. **THE OATH TRIBUNAL'S ADJUDICATIONS OF LIABILITY, AND THERFORE OWNERSHIP, ARE ENTITLED TO COLLATERAL ESTOPPEL EFFECT.**

Defendants make three arguments as to why this Court is not bound by OATH's determination of ownership. First, they assert that Plaintiffs may not argue that OATH findings are entitled to preclusive effect because they failed to raise it in their second motion for class certification. As Plaintiffs explained in their moving brief, however, they did not argue collateral

---

[1] Defendants' attack on Plaintiffs' brief discussion of Section 19-506(h)(2) is misleading, as the forfeiture provision in that subsection is the entire basis for distinction between "first time" and "second or subsequent violators," as has been extensively discussed before this Court. *See, e.g.*, Dkt. 91 (Feb. 8, 2016 Transcript) at 6.

estoppel in their second motion (as they had in their first) because Defendants' position in opposition to the second motion was that individual issues made it too difficult to ascertain *standing*, not *ownership*, for which there had been no OATH finding that could be given preclusive effect. *See* Moving Br. at 6 n.5.[2]

Second, while conceding they may be collaterally estopped by determinations made by administrative tribunals, Defendants argue that the "issue of vehicle ownership . . . was not actually litigated" in OATH proceedings. Opp'n Br. at 5-6. This argument does not withstand scrutiny. Each person on the Class Lists was issued a so-called "owner summons" identifying them as a "registered owner." *See, e.g.,* Dkt. 236-2 (Murray Decl. Exh. B) at 2 ("The Person Described Above Is Being Charged…" and providing a space to identify the "Registered Owner(s)").[3] Ownership is also a necessary element of a Section 19-506(b) offense. N.Y.C. Admin. Code § 19-506(b)(1) ("This paragraph shall apply to the owner of such vehicle and, if different, to the operator of such vehicle."). It is therefore immaterial whether the determination came after a full hearing, or, as is more common, a plea in front of an ALJ. There can be no question that adjudicating a 19-506 matter required OATH to determine who owned the seized vehicle.

Third, Defendants argue that OATH "[p]lea agreements" are "settlements independently executed" by the respondent and OATH that "do not contain specific language regarding vehicle ownership," and are thus not preclusive on that issue. Opp'n Br. at 5-6. This too is wrong on the law and on the facts. Each Section 19-506 plea agreement contains identical language regarding what is being pled to: "Respondent pleads guilty to the violation of the violation of the New York

---

[2] As the Court previously found, ownership, registered or otherwise, and without more, is not proof of standing. Dkt. 223 at 6.

[3] The TLC summonses for violations of Section 19-506 discussed here were issued to "registered owners."

City Administrative Code §19-506 subsection as stated on the summons." Each plea is denominated as a "Guilty Plea and Stipulation" and has the legal force and effect as such. Unlike in a civil settlement, where issues of fact are *not* determined by the Court and neither side traditionally admits or denies anything, a guilty plea requires a violator to accept that the factual predicates for their crime or violation have been met. *See Gerney v. Tishman Const. Co. of N.Y.*, 518 N.Y.S.2d 564, 567 (Sup. Ct. N.Y. Cty. 1987) ("[I]f a party pleads guilty in a criminal proceeding, his plea is given the same preclusive effect under collateral estoppel, as if after extensive litigation, he was convicted by a jury."). Since Defendants argued for liability based on ownership, and obtained judgments on that basis against the persons on the Class Lists, they are bound by these determinations. *See Gale P. Elston, P.C. v. Dubois*, 18 A.D.3d 301, 303 (1st Dep't 2005).[4]

### III. CONSISTENT WITH COMMON PRACTICE IN CLASS ACTION CASES, THE COURT'S CONCERNS ABOUT CREDIBILITY AND OWNERSHIP FRAUD CAN BE RESOLVED BY ROUTINE ADMINISTRATIVE PROCEDURES.

Defendants contend this Court has already rejected Plaintiffs' argument regarding administrative solutions, and that it may not entertain them on reconsideration. This technical

---

[4] Defendants also argue that a party should not be estopped when judgment is obtained on the basis of "fraudulent or incorrect" documents. Opp'n Br. at 6. However, issue preclusion forecloses exactly these types of arguments. "[I]ssue preclusion prevent[s] relitigation of wrong decisions just as much as right ones." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1308 (2015) (internal quotation marks and citations omitted). As previously noted, when TLC agents seized vehicles, they made significant efforts to identify the registered owners of those vehicles to assign them liability under Section 19-506. This included reviewing state-issued registration documents, electronic research using law enforcement databases, and, where necessary, reviewing other documents, such as bills of sale. *See* Dkt. 194 (First Class Cert. Reply Brief) at 3 n.2.

defense does not accurately capture the prior proceedings, and would prevent the Court from using procedures typical of federal class cases. It should be rejected.

In Plaintiffs' first class certification motion, they argued that class membership could be determined administratively. In the second class certification motion, Plaintiffs again argued, under *Petrobras*, that class membership could be determined administratively, and need not be determined at the class certification stage. Defendants did not contest the timing issue. They argued only that individualized proof, such as "title documentation, copies of [leases], and evidence establishing a bailee relationship," was required at some point to show whether an individual has a protected property interest in the seized vehicle and could be a class member. Dkt. 232 at 15.

The Court rejected Plaintiffs' reading of *Petrobras*, finding that "administrative concerns regarding individual assessments of membership eligibility may be properly considered as part of a predominance analysis." Dkt. 263 (Second Class Certification Decision) at 17 n. 21 (*citing In re Petrobras Secs. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017)). However, since Defendants never contested Plaintiffs' argument regarding *when* it was proper to determine the parameters of class administration in their opposition, Plaintiffs did not address it in their reply. Nor did Plaintiffs address the follow-up question of *what* documents to rely upon. This situation left the Court with an incomplete record on which to decide this issue.[5]

---

[5] Indeed, this issue was crystallized by the Court at a conference on January 19, 2018, after the second class certification motion had been fully submitted. The Court expressed concern that, for potential class members who were not operating the car at the time of the seizure and who allowed someone else to recover the vehicle on their behalf, an affidavit attesting to ownership is "probably not going to work" to establish injury-in-fact. Dkt. 256 (Transcript) at 5:13-15. The Court further observed that if owners "actually go to the trouble to go down there to get the car and they're paying, it seems more likely that it's actually their money and their car. The . . . question is how you distinguish between [straw and legitimate] owners of cars." *Id.* at 11:16-23. Three days later, Plaintiffs requested oral argument to "address the issues raised at the conference." Dkt. 254. The Court did not grant this request.

5

Here, an Administrator need only review objective, credible documents to determine whether someone is a class member and may recover. For "owner-operators," *i.e.*, those putative class members who were operating their vehicles at the time of their seizures, their standing and class membership can be proven entirely by the Defendants' documents, such as TLC summonses and OATH records. This represents most of the class. However, should the Court prefer class members to demonstrate ownership based solely on third-party materials, Plaintiffs find themselves in agreement with Defendants as to what proof would be relevant to this inquiry. The Court may, then, condition a class member's recovery on their ability to submit title, proof of insurance, leasing agreements, or receipts from the impound lot to the Administrator or Special Master. *See* Moving Br. at 7. These documents would establish class membership without the need for individualized credibility assessments. These documents are also typical of those that administrators collect from potential class members in class cases. For example:

- In the *FX Antitrust* settlement, to recover, class members were required either to rely on the settling defendants' data or to submit bank confirmations or transaction reports, prime broker reports, or other account statements establishing that they engaged in foreign exchange transactions within the class period.[6] *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y.).

- In *Petrobras*, class members were required to submit supporting documents such as brokerage statements indicating that they bought or otherwise acquired Petrobras securities in the class period.[7] *Petrobras*, No. 14-cv-9662 (S.D.N.Y.).

---

[6] http://www.fxantitrustsettlement.com/docs/FEX%20POC_DB_4.5.18.pdf
[7] http://www.petrobrassecuritieslitigation.com//faq.php

- In the *Takata Airbag* case, class members who claimed they incurred out-of-pocket expenses in connection with the recall of cars with defective airbags were required to submit "invoices, receipts, or other documents that support the expenses" identified on the Claim Form.[8] *In re Takata Airbag Prod. Liab. Litig.*, MDL No. 2599, No. 14-24009-CV (S.D. Fl.).

- In the *Honest Marketing* case, class members who claimed to have purchased 10 or more defective products were required to attach "receipts or proof of purchase" to their claim form.[9] *In re Honest Mktg. Litig.*, No. 16-cv-01125 (S.D.N.Y.).

Using this approach, neither the Administrator nor the Court would need to determine whether any person or any document is truthful or credible. Starting with the Class Lists, which identify first-time violators and registered owners, the administrator would then require the listed individuals to submit title, proof of insurance, or a similar document to establish the protected property interest that was interfered with by the Defendants (or may, for owner-operators, simply refer to the TLC's own summonses and OATH's determinations to prove the same point). Next, the Administrator would review evidence establishing quantum of damages, which would typically take the form of receipts or other records, to the extent that such are not already in the Defendants' possession, showing, for example, that the class member paid the towing and storage fees and/or recovered the vehicle personally.[10] None of these documents would be prepared by a class member

---

[8] https://www.autoairbagsettlement.com/Content/Documents/Honda/Honda%20Claim%20Form.pdf

[9] http://www.thcmarketingsettlement.com/pdf/Honest_Marketing_Settlement_Claim_Form.pdf

[10] For at least some, and possibly most, putative class members, the Defendants maintained records showing who recovered the vehicle, and who paid the fines and towing and storage fees associated

and none are subject to manipulation. This straightforward administrative solution would resolve each of the concerns raised by the Court, and ensure that straw owners or perpetrators of fraud would be unable to recover.[11]

## CONCLUSION

For the reasons stated above and in Plaintiffs' foregoing papers, the Court should grant the motion for reconsideration and certify a plaintiff class.

DATED:   May 7, 2018
         New York, NY

Respectfully submitted:

                                                    /s/
DANIEL L. ACKMAN
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178

Andrew St. Laurent
Jonathan A. Harris
Joseph T. Gallagher
HARRIS, ST. LAURENT & CHAUDHRY LLP
40 Wall Street, 53rd Floor
New York, NY 10005

*Attorneys for Plaintiffs*

---

with the seizure of the vehicle. *See* December 20, 2017 St. Laurent Decl. at 3 and Exh. A (Dkt. 243 and 243-1).

[11] Although the City does not address the issue in their Opposition, Plaintiffs repeat their observation made in the moving brief that it would also be proper for the Court to certify only a narrow "owner-operator" class that would categorically eliminate all of the concerns raised by Defendants.